**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WASHINGTON MUTUAL BANK, | Civil Action |
| Plaintiff, | Case No. : |
| v. | |
| LAW OFFICE OF ROBERT JAY GUMENICK, P.C. and ROBERT JAY GUMENICK, | **COMPLAINT - Jury Trial Demanded** |
| Defendants. | |

08 CV 02154

RECEIVED
MAR 04 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiff, Washington Mutual Bank, by way of Complaint against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, avers as follows:

## THE PARTIES

1.      Plaintiff, Washington Mutual Bank ("WaMu"), is a federally chartered savings association with its home office located at 2273 North Green Valley Parkway, Suite 14, Henderson, Nevada 89014.

2.      Defendant, Law Office of Robert Jay Gumenick, P.C. ("Law Office") is, upon information and belief, a corporation organized and existing under the laws of the State of New York with its principal place of business located at 160 Broadway, Suite 1100, New York, NY 10038.

3.      Defendant, Robert Jay Gumenick ("Gumenick") is, upon information and belief, a resident of the State of New York with an address at 418 State St., Brooklyn, NY 11217.

4.      The Law Office and Gumenick may, at times, be referred to herein collectively as the "Defendant."

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) as the Law Office resides in this District and Gumenick is a citizens of the State of New York.

## FACTUAL BACKGROUND

7.      Gumenick is a licensed attorney and, at all times relevant hereto, was the sole attorney employed by the Law Office.

8.      The Defendant represented WaMu in connection with the closing of commercial loans, including, but not limited to, commercial loan number 714123882 (the "Norwood Loan").

9.      The terms of the Defendant's retention agreement with WaMu are set forth in a master engagement agreement (the "Agreement") dated January 24, 2006.

10.     Pursuant to the terms and conditions of the Agreement, the Defendant agreed to provide WaMu with, *inter alia* the following continuing and related legal services:

    a.      Provide WaMu with a closing protection letter from the title company issuing title insurance on each loan;

    b.      Review the loan documents for accuracy, make any changes requested or approved by WaMu and supervise the execution of such documents by the borrower;

    c.      Attend the closing and review title, survey and the ALTA policy delivered by the borrower to confirm that WaMu is in a first lien position upon recordation of the mortgage;

    d.      Prepare the necessary closing statement disbursing proceeds of the loan for execution by the borrower;

    e.      Coordinate the disbursement of all loan proceeds, lien payoff amounts and third party fees;

2

f.      Assemble the final loan documents, prepare required transmittal letters and return the original documents to WaMu together with copies of all documents sent for recording within 24 hours of disbursement;

e.      Cause all necessary documents relating to the subject loan to be recorded and/or filed, if applicable, and the title policy to be issued and delivered to WaMu.

11.     Prior to the Norwood Loan, the Defendant represented WaMu as legal counsel in connection with commercial loans (the "Dwek Loans") to New Jersey borrowers (the "Dwek Borrowers") who were represented by the law firm of Ansell, Zaro, Grimm & Aaron (the "Ansell Firm").

12.     The Norwood Loan,  in the principal amount of 1.8 million dollars, was to be evidenced by a promissory note from the borrower, 1001 Norwood, LLC (the "Norwood Borrower"), and secured by commercial property known commonly as 1001 Norwood Avenue, Long Branch, New Jersey (the "Property").

13.     At the outset of the transaction, the Norwood Borrower was represented by Jason Klein of the Ansell Firm.

14.     On or about April 4, 2006, three (3) days prior to the closing of the Norwood Loan, Defendant was told by an individual identifying himself to the Defendant over the phone as Joey Kohen ("Kohen") that an attorney named Jerome Shapiro ("Shapiro") would be representing the Norwood Borrower instead of the Ansell Firm.

15.     Defendant was further told by Kohen that a different title agency, Successful Title Agency, LLC ("Successful"), would be involved in the closing of the transaction.

16.     Defendant had no prior dealings with or knowledge of Kohen or Shapiro.

17.     Defendant did not conduct any investigation regarding the circumstances underlying the transfer of the file from the Ansell Firm to Shapiro three (3) days in advance of the date of closing or change of title agencies.

3

18.     Through the date of closing of the Norwood Loan on April 7, 2006, Defendant communicated principally with Kohen who, upon information and belief, never worked for Shapiro.

19.     On April 7, 2006, the Property was owned of record by an entity known as Dwek Properties, LLC.

20.     On April 7, 2006, the Property was subject to the following mortgage liens:

(a)     Mortgage and Security Agreement made by Dwek Properties, LLC, to Amboy National Bank, dated May 20, 2004 and recorded June 4, 2004 in OR Book 8368 page 7929, to secure the principal amount of $1,650,000 ("Amboy Mortgage");

(b)     Mortgage and Security Agreement made by the Jemar Enterprises, LLC, Corbett Holdings I, LLC, 1111 Eleventh Avenue, LLC, *Dwek Properties, LLC*, Belmar Gas, LLC, Dwek Assets, LLC, Route 33 Medical, LLC, Water View Offices, LLC, Dwek Apartments, LLC, WLB Highway, LLC, Berkeley Heights Gas, LLC, Myrtle Avenue Land, LLC and 170 Broad Street, LLC (the "Multi-Property Borrowers") to BRT Realty Trust, dated December 22, 2005 and recorded January 3, 2006 in OR Book 8530 page 708, to secure the amount of $7,000,000 ("BRT Mortgage").

21.     Defendant was fully aware of the record of title as of April 7, 2006, having reviewed numerous title documents from Successful and others.

22.     On or about April 7, 2006, Defendant received closing instructions from WaMu requiring, inter alia, the Defendant to procure a title policy evidencing fee simple title to the Property in the name of the Norwood Borrower and insuring the Mortgage as a first mortgage lien against the Property.

23.     At the time of the closing, the Amboy Mortgage and the BRT Mortgage remained liens of record against the Property (collectively, the "Senior Liens").

24.     At no point did Defendant confirm with the lenders whether the Senior Liens were in fact paid and released.

4

25.     Defendant did not obtain discharges of mortgages on the Senior Liens or letters of intent to discharge liens from the lenders or anyone else on the Senior Liens.

26.     Defendant did not obtain a deed or any other evidence of title to the Property being in the name of the Norwood Borrower as of closing.

27.     On the date of closing, Defendant received faxed wiring instructions ("Wiring Instructions") purportedly from Shapiro's law office.

28.     The Wiring Instructions were typed by an unidentified individual on a one page, unsigned document.

29.     The Wiring Instructions indicated that the closing funds were to be wired to a Wachovia Bank account in the name of "Jerome Shapiro O.M.I." ("Wachovia Account").

30.     Defendant conducted no inquiry regarding the Wachovia Account including, but not limited to, whether or not the account was in fact Shapiro's attorney trust account.

31.     Defendant did not obtain a closing service letter reflecting Shapiro as the Norwood Borrower's attorney or as a covered agent of the title insurer, Chicago Title Insurance Company, for purposes of closing the loan.

32.     On April 7, 2006, WaMu wired closing funds (the "Closing Proceeds") in the amount of $1,792,312.40 to an attorney account maintained by the Defendant with Chase Bank.

33.     At Defendant's instruction, the Closing Proceeds were then wired from Chase Bank to the Wachovia Account.

34.     Defendant made no further inquiry with Shapiro or otherwise regarding the Closing Proceeds on the Norwood Loan once they left his account.

35.     Defendant is unable to account for the disposition of the closing proceeds on the Norwood Loan subsequent to the funds leaving its account.

36.     Upon information and belief, Shapiro did not receive the Closing Proceeds.

37.    At no time did Defendant make inquiry to determine whether an insurance premium had been paid or advise WaMu that the premium had not been paid.

38.    No title insurance premium was paid in connection with the Norwood Loan.

39.    The Senior Liens were not paid in connection with the Norwood Loan but continue to remain prior liens on the Property.

40.    A mortgage ("Mortgage"), signed by the Norwood Borrower in favor of WaMu, was subsequently recorded as a third mortgage lien against the Property in the Monmouth County Clerk's Office on May 11, 2006, in Book OR8562, page 4037.

41.    Subsequent to closing, Defendant made no independent inquiry regarding the issuance of a title policy on the Norwood Loan insuring title in the name of the Norwood Borrower or the Mortgage as a first lien against the Property.

42.    Defendant took no further action on behalf of WaMu to obtain the issuance of title insurance in connection with the Norwood Loan.

43.    No title policy has been issued in connection with the Norwood Loan.

44.    Title to the Property remains vested in Dwek Properties, LLC.

45.    Defendant received attorneys fees for closing the Norwood Loan which he paid himself from the Closing Proceeds.

## FIRST COUNT - LEGAL MALPRACTICE (NEGLIGENCE)

46.    The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

47.    At all times relevant herein, the Defendant represented WaMu as its legal counsel pursuant to the Agreement.

48.    Defendant owed WaMu a duty of due care in representing the interests of WaMu as its legal counsel in connection with the Norwood Loan and otherwise.

49.    Defendant was negligent in its representation of WaMu in connection with the Norwood Loan, and otherwise, as a result of its numerous breaches of the duty of due care it owed to WaMu.

50.    Defendant's breaches of due care include, but are not limited to, the following:

(a)    Failing to obtain a deed and/or other adequate assurance that the Norwood Borrower was the title owner of the Property;

(b)    Failing to ensure that the Mortgage was a first mortgage lien against the Property;

(c)    Releasing the Closing Proceeds from an attorney account contrary to the Agreement between Defendant and WaMu and contrary to WaMu's closing instructions;

(d)    Failing to obtain a title policy insuring the Norwood Borrower as the owner of the Property and the Mortgage as a first lien against the Property;

(e)    Failing to ensure that a title policy premium was paid;

(f)    Failing to obtain and provide WaMu with a closing service letter naming Shapiro as counsel for the Norwood Borrower;

(g)    Failing to follow WaMu's closing instructions;

(h)    Failing to close the Norwood Loan in accordance with WaMu's closing instructions and the Agreement;

(i)    Taking actions, or refraining from taking actions, without permission or approval of an authorized representative of WaMu;

(j)    Failing to maintain required insurance coverage and bond coverage as required by the Agreement;

(k)    Failing to provide WaMu with competent legal advice and representation;

(l)    Providing WaMu with incorrect, inconsistent and incomplete legal advice;

(m)    Providing WaMu with advice contrary to the legal and economic interests of WaMu;

(n)    Failing to adopt and implement competent procedures as closing counsel for WaMu;

(o)    Failing to provide WaMu with competent and appropriate remedial advice to known adverse issues;

(p)     Failing to take competent and appropriate remedial actions on behalf of WaMu to known adverse issues;

(q)     Otherwise failing to provide competent legal counsel and advice in representing the interests of WaMu in connection with the Norwood Loan.

51.     As a direct and proximate result of, but not limited to, these actions, failures, breaches, and omissions of the Defendant, WaMu has sustained and continues to sustain substantial damages.

WHEREFORE, WaMu demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally and/or in the alternative for:

(a)     compensatory damages,

(b)     consequential damages,

(c)     incidental damages,

(d)     pre and post-judgment interest,

(e)     attorneys fees, costs, and

(f)     such other and further relief as the Court deems appropriate.

## SECOND COUNT - BREACH OF CONTRACT

52.     The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

53.     Defendant agreed to represent WaMu as its legal counsel in connection with the Norwood Loan.

54.     The Agreement sets forth the terms of the engagement including, but not limited to, those terms set forth in paragraph 10 of this Complaint.

55.     Defendant received compensation for his services under the Agreement.

56.     Defendant breached the terms of the Agreement as a result of, but not limited to, those breaches set forth in paragraph 50 of the First Count of this Complaint.

57.    As a direct and proximate result of the aforesaid breaches by Defendant of the Agreement, WaMu has incurred, and continues to incur substantial damages.

WHEREFORE, WaMu demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally, and/or in the alternative, for:

(a)    compensatory damages,

(b)    consequential damages,

(c)    incidental damages,

(d)    pre and post-judgment interest,

(e)    attorneys fees, costs, and

(f)    such other and further relief as the Court deems appropriate.

### THIRD COUNT- BREACH OF FIDUCIARY DUTY

58.    The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

59.    Defendant agreed to represent WaMu as its legal counsel in connection with the Norwood Loan.

60.    As legal counsel to WaMu, Defendant owed a fiduciary duty to WaMu at all times relevant to this matter.

61.    Defendant violated that fiduciary duty as a result of, but not limited to, those breaches set forth in paragraph 50 of the First Count of this Complaint.

62.    Defendant's breaches have directly and proximately caused harm to WaMu.

63.    Defendant's actions, and omissions, were careless, reckless and without regard for WaMu's rights as its client.

WHEREFORE, WaMu demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally, and/or in the alternative, for:

(a)    compensatory damages,

(b)    punitive damages,

(c)    consequential damages,

(d)    incidental damages,

(e)    pre and post-judgment interest,

(f)    attorneys fees, costs, and

(g)    such other and further relief as the Court deems appropriate.

Respectfully submitted,

ARCHER & GREINER,
A Professional Corporation
Attorneys for Plaintiff

BY:_____
STEPHEN M. PACKMAN

One Centennial Square
Haddonfield, NJ  08033
(856) 795-2121
(856) 673-7078

and

2 Penn Plaza, Suite 1500
New York, New York 10121

Dated: March 3 , 2008

3122864v1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**



08 CV 02154

| | |
|---|---|
| WASHINGTON MUTUAL BANK,<br><br>                              Plaintiff,<br><br>v.<br><br>LAW OFFICE OF ROBERT JAY<br>GUMENICK, P.C. and ROBERT JAY<br>GUMENICK,<br><br>                              Defendants. | Civil Action<br><br>Case No. :<br><br>**RECEIVED**<br>MAR 0 4 2008<br>U.S.D.C. S.D. N.Y.<br>CASHIERS<br><br>**COMPLAINT - Jury Trial Demanded** |

Plaintiff, Washington Mutual Bank, by way of Complaint against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, avers as follows:

### THE PARTIES

1.      Plaintiff, Washington Mutual Bank ("WaMu"), is a federally chartered savings association with its home office located at 2273 North Green Valley Parkway, Suite 14, Henderson, Nevada 89014.

2.      Defendant, Law Office of Robert Jay Gumenick, P.C. ("Law Office") is, upon information and belief, a corporation organized and existing under the laws of the State of New York with its principal place of business located at 160 Broadway, Suite 1100, New York, NY 10038.

3.      Defendant, Robert Jay Gumenick ("Gumenick") is, upon information and belief, a resident of the State of New York with an address at 418 State St., Brooklyn, NY 11217.

4.      The Law Office and Gumenick may, at times, be referred to herein collectively as the "Defendant."

## JURISDICTION AND VENUE

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different States.

6.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) as the Law Office resides in this District and Gumenick is a citizens of the State of New York.

## FACTUAL BACKGROUND

7.    Gumenick is a licensed attorney and, at all times relevant hereto, was the sole attorney employed by the Law Office.

8.    The Defendant represented WaMu in connection with the closing of commercial loans, including, but not limited to, commercial loan number 714123882 (the "Norwood Loan").

9.    The terms of the Defendant's retention agreement with WaMu are set forth in a master engagement agreement (the "Agreement") dated January 24, 2006.

10.    Pursuant to the terms and conditions of the Agreement, the Defendant agreed to provide WaMu with, *inter alia* the following continuing and related legal services:

a.    Provide WaMu with a closing protection letter from the title company issuing title insurance on each loan;

b.    Review the loan documents for accuracy, make any changes requested or approved by WaMu and supervise the execution of such documents by the borrower;

c.    Attend the closing and review title, survey and the ALTA policy delivered by the borrower to confirm that WaMu is in a first lien position upon recordation of the mortgage;

d.    Prepare the necessary closing statement disbursing proceeds of the loan for execution by the borrower;

e.    Coordinate the disbursement of all loan proceeds, lien payoff amounts and third party fees;

2

    f.    Assemble the final loan documents, prepare required transmittal letters and return the original documents to WaMu together with copies of all documents sent for recording within 24 hours of disbursement;

    e.    Cause all necessary documents relating to the subject loan to be recorded and/or filed, if applicable, and the title policy to be issued and delivered to WaMu.

11.    Prior to the Norwood Loan, the Defendant represented WaMu as legal counsel in connection with commercial loans (the "Dwek Loans") to New Jersey borrowers (the "Dwek Borrowers") who were represented by the law firm of Ansell, Zaro, Grimm & Aaron (the "Ansell Firm").

12.    The Norwood Loan,  in the principal amount of 1.8 million dollars, was to be evidenced by a promissory note from the borrower, 1001 Norwood, LLC (the "Norwood Borrower"), and secured by commercial property known commonly as 1001 Norwood Avenue, Long Branch, New Jersey (the "Property").

13.    At the outset of the transaction, the Norwood Borrower was represented by Jason Klein of the Ansell Firm.

14.    On or about April 4, 2006, three (3) days prior to the closing of the Norwood Loan, Defendant was told by an individual identifying himself to the Defendant over the phone as Joey Kohen ("Kohen") that an attorney named Jerome Shapiro ("Shapiro") would be representing the Norwood Borrower instead of the Ansell Firm.

15.    Defendant was further told by Kohen that a different title agency, Successful Title Agency, LLC ("Successful"), would be involved in the closing of the transaction.

16.    Defendant had no prior dealings with or knowledge of Kohen or Shapiro.

17.    Defendant did not conduct any investigation regarding the circumstances underlying the transfer of the file from the Ansell Firm to Shapiro three (3) days in advance of the date of closing or change of title agencies.

3

18.     Through the date of closing of the Norwood Loan on April 7, 2006, Defendant communicated principally with Kohen who, upon information and belief, never worked for Shapiro.

19.     On April 7, 2006, the Property was owned of record by an entity known as Dwek Properties, LLC.

20.     On April 7, 2006, the Property was subject to the following mortgage liens:

(a)     Mortgage and Security Agreement made by Dwek Properties, LLC, to Amboy National Bank, dated May 20, 2004 and recorded June 4, 2004 in OR Book 8368 page 7929, to secure the principal amount of $1,650,000 ("Amboy Mortgage");

(b)     Mortgage and Security Agreement made by the Jemar Enterprises, LLC, Corbett Holdings I, LLC, 1111 Eleventh Avenue, LLC, *Dwek Properties, LLC*, Belmar Gas, LLC, Dwek Assets, LLC, Route 33 Medical, LLC, Water View Offices, LLC, Dwek Apartments, LLC, WLB Highway, LLC, Berkeley Heights Gas, LLC, Myrtle Avenue Land, LLC and 170 Broad Street, LLC (the "Multi-Property Borrowers") to BRT Realty Trust, dated December 22, 2005 and recorded January 3, 2006 in OR Book 8530 page 708, to secure the amount of $7,000,000 ("BRT Mortgage").

21.     Defendant was fully aware of the record of title as of April 7, 2006, having reviewed numerous title documents from Successful and others.

22.     On or about April 7, 2006, Defendant received closing instructions from WaMu requiring, inter alia, the Defendant to procure a title policy evidencing fee simple title to the Property in the name of the Norwood Borrower and insuring the Mortgage as a first mortgage lien against the Property.

23.     At the time of the closing, the Amboy Mortgage and the BRT Mortgage remained liens of record against the Property (collectively, the "Senior Liens").

24.     At no point did Defendant confirm with the lenders whether the Senior Liens were in fact paid and released.

4

25.    Defendant did not obtain discharges of mortgages on the Senior Liens or letters of intent to discharge liens from the lenders or anyone else on the Senior Liens.

26.    Defendant did not obtain a deed or any other evidence of title to the Property being in the name of the Norwood Borrower as of closing.

27.    On the date of closing, Defendant received faxed wiring instructions ("Wiring Instructions") purportedly from Shapiro's law office.

28.    The Wiring Instructions were typed by an unidentified individual on a one page, unsigned document.

29.    The Wiring Instructions indicated that the closing funds were to be wired to a Wachovia Bank account in the name of "Jerome Shapiro O.M.I." ("Wachovia Account").

30.    Defendant conducted no inquiry regarding the Wachovia Account including, but not limited to, whether or not the account was in fact Shapiro's attorney trust account.

31.    Defendant did not obtain a closing service letter reflecting Shapiro as the Norwood Borrower's attorney or as a covered agent of the title insurer, Chicago Title Insurance Company, for purposes of closing the loan.

32.    On April 7, 2006, WaMu wired closing funds (the "Closing Proceeds") in the amount of $1,792,312.40 to an attorney account maintained by the Defendant with Chase Bank.

33.    At Defendant's instruction, the Closing Proceeds were then wired from Chase Bank to the Wachovia Account.

34.    Defendant made no further inquiry with Shapiro or otherwise regarding the Closing Proceeds on the Norwood Loan once they left his account.

35.    Defendant is unable to account for the disposition of the closing proceeds on the Norwood Loan subsequent to the funds leaving its account.

36.    Upon information and belief, Shapiro did not receive the Closing Proceeds.

37.    At no time did Defendant make inquiry to determine whether an insurance premium had been paid or advise WaMu that the premium had not been paid.

38.    No title insurance premium was paid in connection with the Norwood Loan.

39.    The Senior Liens were not paid in connection with the Norwood Loan but continue to remain prior liens on the Property.

40.    A mortgage ("Mortgage"), signed by the Norwood Borrower in favor of WaMu, was subsequently recorded as a third mortgage lien against the Property in the Monmouth County Clerk's Office on May 11, 2006, in Book OR8562, page 4037.

41.    Subsequent to closing, Defendant made no independent inquiry regarding the issuance of a title policy on the Norwood Loan insuring title in the name of the Norwood Borrower or the Mortgage as a first lien against the Property.

42.    Defendant took no further action on behalf of WaMu to obtain the issuance of title insurance in connection with the Norwood Loan.

43.    No title policy has been issued in connection with the Norwood Loan.

44.    Title to the Property remains vested in Dwek Properties, LLC.

45.    Defendant received attorneys fees for closing the Norwood Loan which he paid himself from the Closing Proceeds.

## FIRST COUNT - LEGAL MALPRACTICE (NEGLIGENCE)

46.    The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

47.    At all times relevant herein, the Defendant represented WaMu as its legal counsel pursuant to the Agreement.

48.    Defendant owed WaMu a duty of due care in representing the interests of WaMu as its legal counsel in connection with the Norwood Loan and otherwise.

6

49.    Defendant was negligent in its representation of WaMu in connection with the Norwood Loan, and otherwise, as a result of its numerous breaches of the duty of due care it owed to WaMu.

50.    Defendant's breaches of due care include, but are not limited to, the following:

(a)    Failing to obtain a deed and/or other adequate assurance that the Norwood Borrower was the title owner of the Property;

(b)    Failing to ensure that the Mortgage was a first mortgage lien against the Property;

(c)    Releasing the Closing Proceeds from an attorney account contrary to the Agreement between Defendant and WaMu and contrary to WaMu's closing instructions;

(d)    Failing to obtain a title policy insuring the Norwood Borrower as the owner of the Property and the Mortgage as a first lien against the Property;

(e)    Failing to ensure that a title policy premium was paid;

(f)    Failing to obtain and provide WaMu with a closing service letter naming Shapiro as counsel for the Norwood Borrower;

(g)    Failing to follow WaMu's closing instructions;

(h)    Failing to close the Norwood Loan in accordance with WaMu's closing instructions and the Agreement;

(i)    Taking actions, or refraining from taking actions, without permission or approval of an authorized representative of WaMu;

(j)    Failing to maintain required insurance coverage and bond coverage as required by the Agreement;

(k)    Failing to provide WaMu with competent legal advice and representation;

(l)    Providing WaMu with incorrect, inconsistent and incomplete legal advice;

(m)    Providing WaMu with advice contrary to the legal and economic interests of WaMu;

(n)    Failing to adopt and implement competent procedures as closing counsel for WaMu;

(o)    Failing to provide WaMu with competent and appropriate remedial advice to known adverse issues;

(p)    Failing to take competent and appropriate remedial actions on behalf of WaMu to known adverse issues;

(q)    Otherwise failing to provide competent legal counsel and advice in representing the interests of WaMu in connection with the Norwood Loan.

51.    As a direct and proximate result of, but not limited to, these actions, failures, breaches, and omissions of the Defendant, WaMu has sustained and continues to sustain substantial damages.

WHEREFORE, WaMu demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally and/or in the alternative for:

(a)    compensatory damages,

(b)    consequential damages,

(c)    incidental damages,

(d)    pre and post-judgment interest,

(e)    attorneys fees, costs, and

(f)    such other and further relief as the Court deems appropriate.

**SECOND COUNT - BREACH OF CONTRACT**

52.    The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

53.    Defendant agreed to represent WaMu as its legal counsel in connection with the Norwood Loan.

54.    The Agreement sets forth the terms of the engagement including, but not limited to, those terms set forth in paragraph 10 of this Complaint.

55.    Defendant received compensation for his services under the Agreement.

56.    Defendant breached the terms of the Agreement as a result of, but not limited to, those breaches set forth in paragraph 50 of the First Count of this Complaint.

8

57.    As a direct and proximate result of the aforesaid breaches by Defendant of the Agreement, WaMu has incurred, and continues to incur substantial damages.

WHEREFORE, WaMu demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally, and/or in the alternative, for:

      (a)    compensatory damages,

      (b)    consequential damages,

      (c)    incidental damages,

      (d)    pre and post-judgment interest,

      (e)    attorneys fees, costs, and

      (f)    such other and further relief as the Court deems appropriate.

### THIRD COUNT- BREACH OF FIDUCIARY DUTY

58.    The foregoing paragraphs are incorporated herein by reference as if fully set forth at length.

59.    Defendant agreed to represent WaMu as its legal counsel in connection with the Norwood Loan.

60.    As legal counsel to WaMu, Defendant owed a fiduciary duty to WaMu at all times relevant to this matter.

61.    Defendant violated that fiduciary duty as a result of, but not limited to, those breaches set forth in paragraph 50 of the First Count of this Complaint.

62.    Defendant's breaches have directly and proximately caused harm to WaMu.

63.    Defendant's actions, and omissions, were careless, reckless and without regard for WaMu's rights as its client.

WHEREFORE, WaMu demands judgment against the defendants, Law Office of Robert Jay Gumenick, P.C. and Robert Jay Gumenick, jointly, severally, and/or in the alternative, for:

(a)    compensatory damages,

(b)    punitive damages,

(c)    consequential damages,

(d)    incidental damages,

(e)    pre and post-judgment interest,

(f)    attorneys fees, costs, and

(g)    such other and further relief as the Court deems appropriate.

Respectfully submitted,

ARCHER & GREINER,
A Professional Corporation
Attorneys for Plaintiff

BY: _____
       STEPHEN M. PACKMAN

One Centennial Square
Haddonfield, NJ  08033
(856) 795-2121
(856) 673-7078

and

2 Penn Plaza, Suite 1500
New York, New York 10121

Dated: March 3 , 2008

3122864v1