UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WASHINGTON MUTUAL BANK, | Civil Action |
| Plaintiff, | Case No. : 08 CV 02154 (VM) (FM) |
| v. | |
| LAW OFFICE OF ROBERT JAY GUMENICK, P.C. and ROBERT JAY GUMENICK, | **DECLARATION IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR ALTERNATIVELY, TO STAY PROCEEDINGS** |
| Defendants. | |

ROBERT D. GEORGE, pursuant to 28 U.S.C. § 1746, declares the following under penalty of perjury:

1.      I am a Vice President, Special Assets Management with Washington Mutual Bank ("WaMu") and submit the following declaration based upon my review of the records and documents in the possession of WaMu relative to this matter.

2.      I submit this declaration in opposition to Defendants' Motion to Dismiss Pursuant to Fed. R.Civ.P. 12(b)(6), or Alternatively, to Stay Proceedings ("Motion").

3.      The Defendants represented WaMu in connection with the closing of commercial loan number 714123882 (the "Norwood Loan").

4.      As set forth in the Complaint in this matter, the Norwood Loan was in the principal amount of 1.8 million dollars and was to be evidenced by a promissory note from the borrower, 1001 Norwood, LLC (the "Norwood Borrower"), and secured by a *first mortgage lien* against commercial property known commonly as 1001 Norwood Avenue, Long Branch, New Jersey (the "Norwood Property").

5.      On May 1, 2007, Dwek Income, LLC, a wholly-owned Dwek entity, filed a Chapter 11 voluntary petition in the United States Bankruptcy Court for the District of New Jersey, Case No. 07-16068. The Dwek Income proceeding along with all jointly administered cases under the lead case, *In re Dwek, et al.,* United States Bankruptcy Court for the District of New Jersey, Case No. 07-11757 are collectively referred to as, the "Bankruptcy Proceeding." A true and correct copy of the Dwek Income Petition is attached hereto as Exhibit "A."

6.      Dwek Income, LLC indicated in its bankruptcy schedules that it was the owner of the Norwood Property. *See* Exhibit "A."

7.      On January 24, 2008, Amboy Bank filed a Motion for Stay Relief ("Stay Relief Motion") in order to commence foreclosure proceedings against the Norwood Property. A true and correct copy of the Stay Relief Motion is attached hereto as Exhibit "B."

8.      As of February 19, 2008, Amboy claimed that it was owed $1,843,671.57 on its first mortgage lien. *See* Exhibit "B," Certification of Peter Davis Submitted in Support of Stay Relief Motion, paragraph 20.

9.      According to Amboy, BRT's lien against the Norwood Property was in excess of $6 million. *See* Exhibit "B," Certification of Peter Davis Submitted in Support of Stay Relief Motion, paragraph 22.

10.     Amboy's appraisal report valued the Norwood Property at $2.3 million. *See* Exhibit "B," Certification of Peter Davis Submitted in Support of Stay Relief Motion, paragraph 23.

11.     Amboy's equity analysis revealed that the equity in the Property as of February 19, 2008, not including WaMu's lien against the Norwood Property, was negative

$5,588,600.40. *See* Exhibit "B," Certification of Peter Davis Submitted in Support of Stay Relief Motion, paragraph 24.

12.     The United States Bankruptcy Court granted Amboy's Stay Relief Motion on 2/25/08, thereby permitting Amboy to resume and prosecute the foreclosure proceeding against the Norwood Property . A true and correct copy of the Order is attached hereto as Exhibit "C."

13.     On March 14, 2008, Amboy filed its Amended Complaint for Foreclosure. A true and correct copy of the foreclosure complaint is attached and marked as Exhibit "D."

14.     The foreclosure action is currently pending in the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. F-9244-08.

15.     The Norwood Loan remained outstanding as of August 1, 2007, in the amount of $1,913,730.85, as follows:

| | |
|---|---|
| Principal Balance: | $1,801,440.22 |
| Interest Due (to 8/1/07): | $78,813.00 |
| Taxes Escrow: | ($5,872.87) |
| Late Charge: | $3,261.10 |
| Prepayment Fee: | $18,000.00 |
| Recapture Fee: | $18,014.00 |
| Payoff Statement Fee: | $75.00 |
| **TOTAL:** | **$1,913,730.85** |

16.     In addition, WaMu has incurred, and continues to incur, significant attorneys' fees and expenses in the various legal proceedings, including the Bankruptcy Proceeding and the Amboy foreclosure proceeding. To date, the total fees and costs incurred by WaMu total $702,988.43. A significant portion of those fees and costs are directly related to the Norwood Loan.

17.      There will be no recovery for WaMu in the foreclosure as the prior liens of Amboy and BRT against the Norwood Property exceed the value of the Norwood Property by over five million dollars.

18.      Interest and charges continue to accrue on the Norwood Loan.

19.      In addition, WaMu continues to incur substantial attorneys' fees and costs which are directly related to the Norwood Loan.

Name: Robert D. George
Title: Vice President, Special Assets
Management

Dated: May    , 2008

# EXHIBIT "A"
## PART I

5/01/07 6:46PM

Official Form 1 (4/07)

| United States Bankruptcy Court<br>District of New Jersey | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**DWEK INCOME, LLC** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all)<br>20-4322507 | Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**200 Wall Street<br>PO BOX 98<br>West Long Branch, NJ**                    ZIP Code<br>07764 | Street Address of Joint Debtor (No. and Street, City, and State):<br><br>ZIP Code |
| County of Residence or of the Principal Place of Business:<br>**Monmouth** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>**c/o Capital Management<br>167 Monmouth Road<br>Oakhurst, NJ**                    ZIP Code<br>07755 | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP Code |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | **properties in Long Branch, Englishtown, Neptune, and Bergenfield,  NJ<br>NJ** |

| Type of Debtor<br>(Form of Organization)<br>(Check one box) | Nature of Business<br>(Check one box) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>■ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities,<br>check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined<br>in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>■ Other | ☐ Chapter 7<br>☐ Chapter 9<br>■ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13      ☐ Chapter 15 Petition for Recognition<br>of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition<br>of a Foreign Nonmain Proceeding |
| | **Tax-Exempt Entity**<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization<br>under Title 26 of the United States<br>Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box)<br>☐ Debts are primarily consumer debts,<br>defined in 11 U.S.C. § 101(8) as<br>"incurred by an individual primarily for<br>a personal, family, or household purpose."       ■ Debts are primarily<br>business debts. |

| Filing Fee (Check one box) | Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>■ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D). |
|---|---|
| ■ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must<br>attach signed application for the court's consideration certifying that the debtor<br>is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must<br>attach signed application for the court's consideration. See Official Form 3B. | Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed<br>to insiders or affiliates) are less than $2,190,000.<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more<br>classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information    *** Timothy P. Neumann TN6429 *** | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ■ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid,<br>there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1000-<br>5,000 | 5001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 100,001-<br>100,000 | OVER<br>100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ■ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| ☐ $0 to<br>$10,000 | ☐ $10,001 to<br>$100,000 | ☐ $100,001 to<br>$1 million | ■ $1,000,001 to<br>$100 million | ☐ More than<br>$100 million |
|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to<br>$50,000 | ☐ $50,001 to<br>$100,000 | ☐ $100,001 to<br>$1 million | ■ $1,000,001 to<br>$100 million | ☐ More than<br>$100 million |
|---|---|---|---|---|

5/01/07 6:46PM

Official Form 1 (4/07)

FORM B1, P age 2

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **DWEK INCOME, LLC** |

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:  **- None -** | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>**Solomon Dwek** | Case Number:<br>**07-11757** | Date Filed:<br>**2/08/07** |
| District:<br>**NJ** | Relationship:<br>**Managing Member** | Judge:<br>**Kathryn C. Ferguson** |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. If urther certify that Id elivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>X _____<br>   Signature of Attorney for Debtor(s)            (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

■ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box)

■ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

■ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Statement by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)



_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

5/01/07 6:46pm

Official Form 1 (4/07)

FORM B1, Page 3

## Voluntary Petition

*(This page must be completed and filed in every case)*

Name of Debtor(s):
**DWEK INCOME, LLC**

### Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

Telephone Number (If not represented by attorney)

_____
Date

### Signature of Attorney

X **/s/ Timothy P. Neumann**
Signature of Attorney for Debtor(s)

**Timothy P. Neumann TN6429**
Printed Name of Attorney for Debtor(s)

**Broege, Neumann, Fischer & Shaver, LLC**
Firm Name

**25 Abe Voorhees Drive**
**Manasquan, NJ 08736**

_____
Address

**(732) 223-8484  Fax: (732) 223-2416**
Telephone Number

**May  1, 2007**
Date

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ Solomon Dwek**
Signature of Authorized Individual

**Solomon Dwek**
Printed Name of Authorized Individual

**Authorized Signatory**
Title of Authorized Individual

**May  1, 2007**
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11. United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person, or partner whose Social Security number is provided above.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

## RESOLUTION

Whereas on February 9, 2007, an involuntary petition (the "Petition") was filed against Solomon Dwek under Chapter 7 of Title 11 of the United States Code with the United States Bankruptcy Court for the District of New Jersey bearing Case. No. 07-11757 (KCF);

Whereas on February 13, 2007 voluntary bankruptcy petitions were filed on behalf of debtors 10 Neptune, LLC, SEM Realty Associates, LLC, and Deal Golf, LLC under Chapter 11 of Title 11 of the United States Code with the United States Bankruptcy Court for the District of New Jersey bearing Case Nos. 07-11974 (KCF), 07-11976 (KCF) and 07-11982 (KCF), respectively;

Whereas on February 22, 2007, an *Order Converting Case to Chapter 11* (Doc. No. 71) was entered by the Honorable Kathryn C. Ferguson in the Solomon Dwek bankruptcy proceeding bearing Case No. 07-11757 (KCF);

Whereas on February 22, 2007, an *Order Directing Joint Administration of Cases* (Doc. No. 73) was entered by the Honorable Kathryn C. Ferguson directing that Case Nos. 07-11974 (KCF), 07-11976 (KCF) and 07-11982 (KCF) be jointly administered with Lead Case No. 07-11757 (KCF);

Whereas on March 2, 2007, an *Order Approving the Appointment of Chapter 11 Trustee* was entered by the Honorable Kathryn C. Ferguson which approved the appointment by the United States Trustee of Charles A. Stanziale, Jr. as Chapter 11 Trustee with regard to Case Nos. 07-11757 (KCF), 07-11974 (KCF), 07-11976 (KCF), and 07-11982 (KCF) (collectively, the "Bankruptcy Cases");

Whereas Debtor LLCs hereby adopt the following resolutions which are applicable to all of the LLCs on the attached Exhibit "A", in which Solomon Dwek maintained a 100% ownership interest, and was the sole Member and Manager (the "Solomon Dwek Solely Owned LLCs);

Resolved that:

1.   Effective immediately, any and all designations of any individual or individuals or any business entities as Attorneys-In-Fact, Powers-of-Attorney or similar designation for any of the aforesaid LLCs is revoked;

2.   Effective immediately, Charles A. Stanziale, Jr., in his capacity as Chapter 11 Trustee, is designated as the sole Manager of each of the aforesaid LLCs;

3.   Effective immediately, Charles A. Stanziale, Jr. is authorized, on behalf of the Solomon Dwek Solely Owned LLCs to execute and file all pleadings,

924460_1

complaints, schedules, lists and other papers and to take any and all action necessary or proper in connection with the Bankruptcy Cases.

4.  Effective immediately, the LLC authorizes Solomon Dwek, individually, to execute the petitions, schedules and any other documents necessary to file and administer any bankruptcy case based upon his personal knowledge relating to acquisition and administration of the estate of the debtor and upon his personal knowledge of the books and records of the debtor.

5.  Effective immediately, the LLC has the authority to cause petitions to be filed for each Solomon Dwek Wholly Owned LLC in the United States Bankruptcy Court pursuant to Chapter 11 of Title 11, United States Code. The Debtor LLC's authorize the firm of Broege Neumann Fischer & Shaver LLC to file petitions for the Debtor LLC's.

IN WITNESS WHEREOF, I have hereunto set my hand, this /8̅ day of May, 2007.

CHARLES A. STANZIALE, JR.,
Chapter 11  Trustee of Solomon Dwek, *et al.*

924460_1

EXHIBIT "A"
SOLOMON DWEK WHOLLY OWNED LLCs

| | NAME | Property Held |
|---|---|---|
| 1. | 1631 HIGHWAY 35, LLC | 1631 Highway 35, Ocean Twp, NJ |
| 2. | 167 MONMOUTH ROAD, LLC | 167 Monmouth Rd, Oakhurst, NJ 07755 |
| 3. | 2100 HIGHWAY 35, LLC | 2100 Highway 35, Oakhurst, NJ |
| 4. | 230 BROADWAY, LLC | 230 Broadway, Long Branch, NJ |
| 5. | 264 HIGHWAY 35, LLC | 264 Highway 35, Eatontown, NJ |
| 6. | 374 MONMOUTH ROAD, LLC | 374 Monmouth Road, West Long Branch, NJ<br>221/223/225/227/229 Locust, West Long Branch, NJ 07764 |
| 7. | 55 NORTH GILBERT, LLC | 55 North Gilbert St., Tinton Falls, NJ 07701 |
| 8. | 601 MAIN STREET, LLC | 601 Main St., Loch Arbor, NJ 07711 |
| 9. | 6201 ROUTE 9, LLC | 6201 Route 9, Howell, NJ 07731 |
| 10. | ABERDEEN GAS, LLC | 215 Highway 35, Aberdeen, NJ |
| 11. | BATH AVENUE HOLDINGS, LLC | 317-325 Bath Ave., Long Branch, NJ 07740 |
| 12. | BEACH MART, LLC | 73 Riverdale Ave., Monmouth Beach, NJ |
| 13. | BELMAR GAS, LLC | 1801 Highway 34, Wall, NJ |
| 14. | BERKELEY HEIGHTS GAS, LLC | 343 Springfield/Snyder Ave., Berkley Heights, NJ |
| 15. | BRICK GAS, LLC | 2778 Old Hooper Ave., Brick, NJ |
| 16. | DOVER ESTATES, LLC | 3397 Route 37, Dover, NJ |
| 17. | DWEK GAS, LLC | 456 Broad St., Shrewsbury, NJ |
| 18. | DWEK HOPATCHUNG, LLC | 36 Hopatcong Rd., Hopatcong, NJ |
| 19. | DWEK INCOME, LLC | 14 Main St., Englishtown, NJ<br>1408 Corlies Ave., Neptune, NJ<br>2318 Route 38, Cherry Hill, NJ<br>26-28 Highway 35 (125 Drummond), Neptune, NJ<br>323 Highway 35, Neptune, NJ<br>501/503/505 Highway 35, Neptune, NJ<br>60 West Main St., Bergenfield, NJ<br>1001 Norwood Avenue, Long Branch, NJ |
| 20. | DWEK OHIO, LLC | 555 South Ave., Tallmadge, OH 44278-2825 |
| 21. | DWEK PENNSYLVANIA | 1188 Benjamin Franklin Blvd., Douglassville, PA 19518 |
| 22. | DWEK WALL, LLC | 2100 Route 34, Wall, NJ 07719-9110 |
| 23. | DWEK WOODBRIDGE, LLC | 1550 St. Georges Ave., Avenel, NJ 07001-1044 |
| 24. | KADOSH, LLC | 101 Parker Ave., West Deal, NJ 07723-1427 |
| 25. | LACEY LAND, LLC | Route 9 & Haines Street, Lacey, NJ 07753-5160 |
| 26. | MONMOUTH PLAZA, LLC | 246 Monmouth Rd, Oakhurst, NJ |
| 27. | P & Y HOLDINGS, LLC | 200 Wall St., West Long Branch, NJ |
| 28. | SUGAR MAPLE ESTATES, LLC | 61-63 River Rd., Rumson, NJ |
| 29. | WEST BANGS AVENUE, LLC | 3456 West Bangs Ave., Neptune, NJ |

5/01/07 6:46PM

Form 4
(10/05)

# United States Bankruptcy Court
### District of New Jersey

In re  **DWEK INCOME, LLC**                                                        Case No.

Debtor(s)                        Chapter      **11**

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1)<br><br>Name of creditor and complete mailing address including zip code | (2)<br><br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br><br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br><br>Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5)<br><br>Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| GK Commercial Realty Group<br>PO Box 331<br>Baptistown, NJ 08803-0331 | GK Commercial Realty Group<br>PO Box 331<br>Baptistown, NJ 08803-0331 | | | 33,918.45 |
| J. Campoli & Sons<br>28 Milton Street<br>Cresskill, NJ 07626 | J. Campoli & Sons<br>28 Milton Street<br>Cresskill, NJ 07626 | Trade debt | | 1,564.00 |
| Coastal Property Maintenance, LLC<br>167 Monmouth Road<br>Oakhurst, NJ 07755 | Coastal Property Maintenance, LLC<br>167 Monmouth Road<br>Oakhurst, NJ 07755 | Property Management | | 1,444.52 |
| PSE&G<br>PO BOX NJ 4106<br>New Brunswick, NJ 08906-4108 | PSE&G<br>PO BOX NJ 4106<br>New Brunswick, NJ 08906-4108 | Utilities | | 1,365.56 |
| Capital Property Management, LLC<br>167 Monmouth Road<br>Oakhurst, NJ 07755 | Capital Property Management, LLC<br>167 Monmouth Road<br>Oakhurst, NJ 07755 | Property Management | | 1,321.67 |
| United Water New Jersey<br>PO Box  371804<br>Pittsburgh, PA 15250-7804 | United Water New Jersey<br>PO Box  371804<br>Pittsburgh, PA 15250-7804 | Utilities | | 44.40 |
| Chakeema Deans<br>505 Hwy 35<br>Neptune, NJ 07753 | Chakeema Deans<br>505 Hwy 35<br>Neptune, NJ 07753 | Security Deposit | Contingent | Unknown |
| Corlies Convenience Store<br>1408 Corlies Avenue<br>Neptune, NJ 07753 | Corlies Convenience Store<br>1408 Corlies Avenue<br>Neptune, NJ 07753 | Security Deposit | Contingent | Unknown |
| E-Techknowledge, Inc.<br>124 Taylor Mills Rd<br>Englishtown, NJ 07726 | E-Techknowledge, Inc.<br>124 Taylor Mills Rd<br>Englishtown, NJ 07726 | Security Deposit | Contingent | Unknown |
| Mascott Corporation/Popeye's<br>620 Ramsey Ave<br>Hillside, NJ 07205 | Mascott Corporation/Popeye's<br>620 Ramsey Ave<br>Hillside, NJ 07205 | Security Deposit | Contingent | Unknown |

5/01/07 6:46PM

In re    **DWEK INCOME, LLC** _____    Case No. _____
                              Debtor(s)

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS
### (Continuation Sheet)

| (1)<br><br>*Name of creditor and complete mailing address including zip code* | (2)<br><br>*Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted* | (3)<br><br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br><br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff* | (5)<br><br>*Amount of claim [if secured, also state value of security]* |
|---|---|---|---|---|
| **PNC Financial Services Group**<br>**Attn:  Realty Services**<br>**P.O. Box 231**<br>**Scranton, PA 18501** | **PNC Financial Services Group**<br>**Attn:  Realty Services**<br>**P.O. Box 231**<br>**Scranton, PA 18501** | **Security Deposit** | **Contingent** | **Unknown** |
| **Ricko Transport Inc.**<br>**22 Colleen Way**<br>**Neptune, NJ 07753** | **Ricko Transport Inc.**<br>**22 Colleen Way**<br>**Neptune, NJ 07753** | **Security Deposit** | **Contingent** | **Unknown** |
| **Tyhisa Farrell**<br>**503 Highway 35**<br>**Neptune, NJ 07753** | **Tyhisa Farrell**<br>**503 Highway 35**<br>**Neptune, NJ 07753** | **Security Deposit** | **Contingent** | **Unknown** |
| **Yang's Restaurant, Inc.**<br>**Attn:  Mr. Ji Lang Yang**<br>**23 Ford Ave**<br>**Freehold, NJ 07728** | **Yang's Restaurant, Inc.**<br>**Attn:  Mr. Ji Lang Yang**<br>**23 Ford Ave**<br>**Freehold, NJ 07728** | **Security Deposit** | **Contingent** | **Unknown** |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the Authorized Signatory of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.

Date  **May  1, 2007** _____    Signature    **/s/ Solomon Dwek** _____
                                                           **Solomon Dwek**
                                                           **Authorized Signatory**

*Penalty for making a false statement or concealing property*: Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C. §§ 152 and 3571.

5/01/07 6:46PM

Form 6-Summary (10/06)

# United States Bankruptcy Court
## District of New Jersey

In re    **DWEK INCOME, LLC**                                              ,        Case No. _____

                                        Debtor

                                                                   Chapter                    **11**

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 8,320,000.00 | | |
| B - Personal Property | Yes | 4 | 171,631.24 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 3 | | 12,031,603.93 | |
| E - Creditors Holding Unsecured Priority Claims  (Total of Claims on Schedule E) | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 3 | | 39,658.60 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 14 | | | |
| Total Assets | | | 8,491,631.24 | | |
| Total Liabilities | | | | 12,071,262.53 | |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                                    Best Case Bankruptcy

5/01/07 6:46PM

Official Form 6 - Statistical Summary (10/06)

# United States Bankruptcy Court
## District of New Jersey

In re    **DWEK INCOME, LLC**                             ,      Case No. _____

                                        Debtor

                                        Chapter _____ **11** _____

## STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA (28 U.S.C. § 159)

If you are an individual debtor whose debts are primarily consumer debts, as defined in § 101(8) of the Bankruptcy Code (11 U.S.C.§ 101(8)), filing a case under chapter 7, 11 or 13, you must report all information requested below.

     ☐   Check this box if you are an individual debtor whose debts are NOT primarily consumer debts. You are not required to report any information here.

**This information is for statistical purposes only under 28 U.S.C. § 159.**

**Summarize the following types of liabilities, as reported in the Schedules, and total them.**

| Type of Liability | Amount |
|---|---|
| Domestic Support Obligations (from Schedule E) | |
| Taxes and Certain Other Debts Owed to Governmental Units (from Schedule E) (whether disputed or undisputed) | |
| Claims for Death or Personal Injury While Debtor Was Intoxicated (from Schedule E) | |
| Student Loan Obligations (from Schedule F) | |
| Domestic Support, Separation Agreement, and Divorce Decree Obligations Not Reported on Schedule E | |
| Obligations to Pension or Profit-Sharing, and Other Similar Obligations (from Schedule F) | |
| TOTAL | |

**State the following:**

| | |
|---|---|
| Average Income (from Schedule I, Line 16) | |
| Average Expenses (from Schedule J, Line 18) | |
| Current Monthly Income (from Form 22A Line 12; OR, Form 22B Line 11; OR, Form 22C Line 20 ) | |

**State the following:**

| | |
|---|---|
| 1. Total from Schedule D, "UNSECURED PORTION, IF ANY" column | |
| 2. Total from Schedule E, "AMOUNT ENTITLED TO PRIORITY" column | |
| 3. Total from Schedule E, "AMOUNT NOT ENTITLED TO PRIORITY, IF ANY" column | |
| 4. Total from Schedule F | |
| 5. Total of non-priority unsecured debt (sum of 1, 3, and 4) | |

5/01/07 6:46PM

Form B6A
(10/05)

In re    **DWEK INCOME, LLC**                                    Case No. _____
                                                    ,
                            Debtor

# SCHEDULE A. REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| **14 MAIN STREET, ENGLISHTOWN, NJ** | | - | **600,000.00** | **661,203.79** |
| **60 WEST MAIN STREET, BERGENFIELD, NJ** | | - | **900,000.00** | **661,203.79** |
| **1408 CORLIES AVE., NEPTUNE, NJ** | | - | **700,000.00** | **59,508.00** |
| **2318 ROUTE 38, CHERRY HILL, NJ** | | - | **1,800,000.00** | **969,894.66** |
| **26-28 HIGHWAY 35, NEPTUNE, NJ** | | - | **500,000.00** | **335,456.00** |
| **323 ROUTE 35, NEPTUNE, NJ** | | - | **1,120,000.00** | **450,288.00** |
| **501, 503, 505 HIGHWAY 35 SOUTH, NEPTUNE, NJ** | | - | **500,000.00** | **244,080.00** |
| **1001 Norwood Avenue, Long Branch, NJ** | **Fee simple** | - | **2,200,000.00** | **8,613,914.76** |

|  |  |  |
|---|---|---|
| Sub-Total > | **8,320,000.00** | (Total of this page) |
| Total > | **8,320,000.00** | |

__0__   continuation sheets attached to the Schedule of Real Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

5/01/07 6:46PM

Form B6B
(10/05)

In re    **DWEK INCOME, LLC**                                                      Case No. _____
                                                            ,
                                    Debtor

# SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule.  List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."
In providing the information requested in this schedule, do not include the name or address of a minor child.  Simply state "a minor child."

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 1.  Cash on hand | X | | | |
| 2.  Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Commerce Bank, checking account** | - | 0.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | X | | | |
| 7.  Furs and jewelry. | X | | | |
| 8.  Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9.  Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10.  Annuities. Itemize and name each issuer. | X | | | |

|  | Sub-Total > | 0.00 |
|---|---|---|
|  | (Total of this page) | |

__3__  continuation sheets attached to the Schedule of Personal Property

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

5/01/07 6:46PM

Form B6B
(10/05)

In re  **DWEK INCOME, LLC**                                        Case No. _____

                                    _____,
                                         Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c); Rule 1007(b)). | X | | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 15. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 16. Accounts receivable. | | Chakeema Deans 505 Hwy 35 Neptune, NJ 07753 - $1,600.00 Corlies Convenience Store 1408 Corlies Ave Neptune, NJ 07753 - $50.00 E-Techknowledge, Inc. 124 Taylor Mills Rd Englishtown, NJ 07726 - $4,800.00 Mascott Corporation Attn: Marilyn Belo 620 Ramsey Ave Hillside, NJ 07205 - 0 PNC Financial Services Group Attn: Realty Services P.O. Box 231 Scranton, PA 18501- 0 Ricko Transport Inc. 22 Colleen Way Neptune, NJ 07753 - $1,709.63 Ms. Tyhisa Farrell 503 Highway 35 Neptune, N.J. 07753 - $7,000.00 Yang's Restaurant, Inc. Attn:  Mr. Ji Lang Yang 23 Ford Ave Freehold, N.J.  07728 - $156,471.61 | - | 171,631.24 |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 18. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |

                                                          Sub-Total >        **171,631.24**
                                                          (Total of this page)

Sheet __1__ of __3__  continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

5/01/07 6:46PM

Form B6B
(10/05)

In re     **DWEK INCOME, LLC**                                          Case No. _____
                                                        ,
                                            Debtor

# SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 19. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |
| 27. Aircraft and accessories. | X | | | |
| 28. Office equipment, furnishings, and supplies. | X | | | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30. Inventory. | X | | | |
| 31. Animals. | X | | | |

Sub-Total >                     0.00
(Total of this page)

Sheet __2__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

5/01/07 6:46PM

Form B6B
(10/05)

In re    **DWEK INCOME, LLC**                                                    Case No. _____
                                    _____,
                                                    Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |

|  | |
|---|---|
| Sub-Total > | **0.00** |
| (Total of this page) | |
| Total > | **171,631.24** |

(Report also on Summary of Schedules)

Sheet __3__ of __3__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                    Best Case Bankruptcy

5/01/07  6:46PM

Official Form 6D (10/06)

In re __DWEK INCOME, LLC_____,                    Case No. _____
                                                    Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112. If "a minor child" is stated, also include the name, address, and legal relationship to the minor child of a person described in Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐    Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| | | H W J | C | | | | | | |
| Account No. | | | | 14 MAIN STREET, ENGLISHTOWN, NJ | | | | | |
| Creditor #: 1 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | X | - | | | | | | | |
| | | | | Value $            600,000.00 | | | | 661,203.79 | 0.00 |
| Account No. | | | | 60 WEST MAIN STREET, BERGENFIELD, NJ | | | | | |
| Creditor #: 2 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | | - | | | | | | | |
| | | | | Value $            900,000.00 | | | | 661,203.79 | 0.00 |
| Account No. | | | | 1408 CORLIES AVE., NEPTUNE, NJ | | | | | |
| Creditor #: 3 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | | - | | | | | | | |
| | | | | Value $            700,000.00 | | | | 59,508.00 | 0.00 |
| Account No. | | | | 2318 ROUTE 38, CHERRY HILL, NJ | | | | | |
| Creditor #: 4 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | | - | | | | | | | |
| | | | | Value $          1,800,000.00 | | | | 960,880.00 | 0.00 |

__2___ continuation sheets attached

Subtotal
(Total of this page)                    2,342,795.58            0.00

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                              Best Case Bankruptcy

5/01/07 6:46PM

Official Form 6D (10/06) - Cont.

In re    **DWEK INCOME, LLC** _____,    Case No. _____

                                                    Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | 26-28 HIGHWAY 35, NEPTUNE, NJ | | | | | |
| **Creditor #: 5**<br>**Amboy National Bank**<br>**3590 US Highway 9**<br>**Old Bridge, NJ 08857-2765** | | - | | | | | | |
| | | | Value $          500,000.00 | | | | 335,456.00 | 0.00 |
| Account No. | | | 323 ROUTE 35, NEPTUNE, NJ | | | | | |
| **Creditor #: 6**<br>**Amboy National Bank**<br>**3590 US Highway 9**<br>**Old Bridge, NJ 08857-2765** | | - | | | | | | |
| | | | Value $        1,120,000.00 | | | | 450,288.00 | 0.00 |
| Account No. | | | 501, 503, 505 HIGHWAY 35 SOUTH, NEPTUNE, NJ | | | | | |
| **Creditor #: 7**<br>**Amboy National Bank**<br>**3590 US Highway 9**<br>**Old Bridge, NJ 08857-2765** | | - | | | | | | |
| | | | Value $          500,000.00 | | | | 244,080.00 | 0.00 |
| Account No. | | | 1001 Norwood Avenue, Long Branch, NJ | | | | | |
| **Creditor #: 8**<br>**Amboy National Bank**<br>**3590 US Highway 9**<br>**Old Bridge, NJ 08857-2765** | | - | | | | | | |
| | | | Value $        2,200,000.00 | | | | 1,613,914.76 | 0.00 |
| Account No. | | | Property Taxes | | | | | |
| **Creditor #: 9**<br>**Borough of Bergenfield**<br>**198 N. Washington Avenue**<br>**Bergenfield, NJ 07621** | | - | 60 West Main St., Bergenfield, NJ | | | | | |
| | | | Value $                  0.00 | | | | 28,031.17 | 0.00 |

Sheet __1__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal
(Total of this page)

| | |
|---|---|
| 2,671,769.93 | 0.00 |

5/01/07 6:46PM

Official Form 6D (10/06) - Cont.

In re    **DWEK INCOME, LLC**                                              ,    Case No. _____
                                          Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | Property Tax | | | | | |
| **Creditor #: 10**<br>**Borough of Englishtown**<br>**15 Main Street**<br>**Englishtown, NJ 07726** | | - | 14 Main Street, Englishtown, NJ | | | | | |
| | | | Value $            0.00 | | | | 5,854.76 | 0.00 |
| Account No. | | | 2nd Mortgage Wrap Loan | | | | | |
| **Creditor #: 11**<br>**BRT Realty Trust Co.**<br>**60 Cutter Mill Road**<br>**Suite 303**<br>**Great Neck, NY 11021** | X | - | 1001 Norwood Avenue, Long Branch, NJ | | | | | |
| | | | Value $    2,200,000.00 | | | | 7,000,000.00 | 0.00 |
| Account No. | | | Property Taxes | | | | | |
| **Creditor #: 12**<br>**Cherry Hill Tax Collector**<br>**820 Mercer Street**<br>**Cherry Hill, NJ 08002-2688** | | - | 2318 ROUTE 38, CHERRY HILL, NJ | | | | | |
| | | | Value $    1,800,000.00 | | | | 9,014.66 | 0.00 |
| Account No. | | | Property Tax | | | | | |
| **Creditor #: 13**<br>**Township of Neptune**<br>**25 Neptune Boulevard**<br>**Neptune, NJ 07753** | | - | 1408 Corlies Ave. and 501, 503, 505 Highway 35, Neptune, NJ | | | | | |
| | | | Value $      700,000.00 | | | | 0.00 | 0.00 |
| Account No. | | | | | | | | |
| **Creditor #: 14**<br>**Township of Neptune - Sewer Authority**<br>**399 Monmouth Road**<br>**Oakhurst, NJ 07755-1589** | | - | | | | | | |
| | | | Value $            0.00 | | | | 2,169.00 | 0.00 |

Sheet __2__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | Subtotal<br>(Total of this page) | 7,017,038.42 | 0.00 |
|---|---|---|---|
| | Total<br>(Report on Summary of Schedules) | 12,031,603.93 | 0.00 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

5/01/07 6:46PM

Official Form 6E (4/07)

In re      **DWEK INCOME, LLC**                                                                              Case No. _____
                                                                            ,
                                                                          Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

    A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

    The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112. If "a minor child" is stated, also include the name, address, and legal relationship to the minor child of a person described in Fed. R. Bankr. P. 1007(m).

    If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

    Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

    Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts who file a case under chapter 7 or 13 report this total also on the Statistical Summary of Certain Liabilities and Related Data.

    Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts who file a case under chapter 7 report this total also on the Statistical Summary of Certain Liabilities and Related Data.

■  Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS**  (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐  **Domestic support obligations**
    Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐  **Extensions of credit in an involuntary case**
    Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trust or the order for relief. 11 U.S.C. § 507(a)(3).

☐  **Wages, salaries, and commissions**
    Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $10,950* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐  **Contributions to employee benefit plans**
    Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐  **Certain farmers and fishermen**
    Claims of certain farmers and fishermen, up to $5,400* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐  **Deposits by individuals**
    Claims of individuals up to $2,425* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered provided. 11 U.S.C. § 507(a)(7).

☐  **Taxes and certain other debts owed to governmental units**
    Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐  **Commitments to maintain the capital of an insured depository institution**
    Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐  **Claims for death or personal injury while debtor was intoxicated**
    Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

* Amounts are subject to adjustment on April 1, 2010, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

**0**    continuation sheets attached

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

5/01/07 6:46PM

Official Form 6F (10/06)

In re    **DWEK INCOME, LLC**                                              Case No. _____

_____,
Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112. If "a minor child" is stated, also include the name, address, and legal relationship to the minor child of a person described in Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts filing a case under chapter 7, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|---|
| | | H | W J C | | | | | | |
| Account No. | | | | | Property Management | | | | |
| Creditor #: 1<br>Capital Property Management, LLC<br>167 Monmouth Road<br>Oakhurst, NJ 07755 | - | | | | | | | | 1,321.67 |
| Account No. | | | | | Security Deposit | | | | |
| Creditor #: 2<br>Chakeema Deans<br>505 Hwy 35<br>Neptune, NJ 07753 | - | | | | | | X | | Unknown |
| Account No. | | | | | Property Management | | | | |
| Creditor #: 3<br>Coastal Property Maintenance, LLC<br>167 Monmouth Road<br>Oakhurst, NJ 07755 | - | | | | | | | | 1,444.52 |
| Account No. | | | | | Security Deposit | | | | |
| Creditor #: 4<br>Corlies Convenience Store<br>1408 Corlies Avenue<br>Neptune, NJ 07753 | - | | | | | | X | | Unknown |

__2__   continuation sheets attached

Subtotal
(Total of this page)                2,766.19

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                S/N:23449-070402    Best Case Bankruptcy

5/01/07 6:46PM

Official Form 6F (10/06) - Cont.

In re     **DWEK INCOME, LLC**                                          Case No. _____

, 
                                    Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
## (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | Security Deposit | | | | |
| Creditor #: 5 E-Techknowledge, Inc. 124 Taylor Mills Rd Englishtown, NJ 07726 | - | | | | | X | | Unknown |
| Account No. | | | | | | | | |
| Creditor #: 6 GK Commercial Realty Group PO Box 331 Baptistown, NJ 08803-0331 | - | | | | | | | 33,918.45 |
| Account No. | | | | Trade debt | | | | |
| Creditor #: 7 J. Campoli & Sons 28 Milton Street Cresskill, NJ 07626 | - | | | | | | | 1,564.00 |
| Account No. | | | | Security Deposit | | | | |
| Creditor #: 8 Mascott Corporation/Popeye's 620 Ramsey Ave Hillside, NJ 07205 | - | | | | | X | | Unknown |
| Account No. | | | | Security Deposit | | | | |
| Creditor #: 9 PNC Financial Services Group Attn: Realty Services P.O. Box 231 Scranton, PA 18501 | - | | | | | X | | Unknown |

Sheet no. __1__ of __2__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)

35,482.45

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                        Best Case Bankruptcy

5/01/07 6:46PM

Official Form 6F (10/06) - Cont.

In re   **DWEK INCOME, LLC**                        Case No. _____

                                       Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
## (Continuation Sheet)

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | CODEBTOR | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | |
| Account No. | | | | **Utilities** | | | | |
| **Creditor #: 10** **PSE&G** **PO BOX NJ 4106** **New Brunswick, NJ 08906-4108** | - | | | | | | | 1,365.56 |
| Account No. | | | | **Security Deposit** | | | | |
| **Creditor #: 11** **Ricko Transport Inc.** **22 Colleen Way** **Neptune, NJ 07753** | - | | | | X | | | Unknown |
| Account No. | | | | **Security Deposit** | | | | |
| **Creditor #: 12** **Tyhisa Farrell** **503 Highway 35** **Neptune, NJ 07753** | - | | | | X | | | Unknown |
| Account No. | | | | **Utilities** | | | | |
| **Creditor #: 13** **United Water New Jersey** **PO Box 371804** **Pittsburgh, PA 15250-7804** | - | | | | | | | 44.40 |
| Account No. | | | | **Security Deposit** | | | | |
| **Creditor #: 14** **Yang's Restaurant, Inc.** **Attn: Mr. Ji Lang Yang** **23 Ford Ave** **Freehold, NJ 07728** | - | | | | X | | | Unknown |

Sheet no. __2__ of __2__ sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

| | | |
|---|---|---|
| Subtotal (Total of this page) | | 1,409.96 |
| Total (Report on Summary of Schedules) | | 39,658.60 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

# EXHIBIT "A"

## PART II

5/01/07 6:46PM

Form B6G
(10/05)

In re    **DWEK INCOME, LLC**                                                                    Case No. _____
_____,
                                         Debtor

## SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed.R. Bankr. P. 1007(m).

☐ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|
| **Capital Property Management, LLC**<br>**167 Monmouth Road**<br>**Oakhurst, NJ 07755** | **Property Management Contract** |
| **Chakeema Deans**<br>**505 Hwy 35**<br>**Neptune, NJ 07753** | **Lease for apartment located at 505 Hwy 35, Neptune, NJ** |
| **Corlies Convenience Store**<br>**1408 Corlies Avenue**<br>**Neptune, NJ 07753** | **Lease store premises located at 1408 Corlies Avenue, Neptune, NJ** |
| **E-Techknowledge, Inc.**<br>**124 Taylor Mills Rd**<br>**Englishtown, NJ 07726** | **Lease commercial property located at 14 Main Street, Englishtown, NJ** |
| **Mascott Corporation/Popeye's**<br>**620 Ramsey Ave**<br>**Hillside, NJ 07205** | **Lease, commercial property at 323 Route 35, Neptune, NJ** |
| **PNC Financial Services Group**<br>**Attn: Realty Services**<br>**P.O. Box 231**<br>**Scranton, PA 18501** | **Lease commercial property located at 60 W. Main Street, Bergenfield, NJ** |
| **Tyhisa Farrell**<br>**503 Highway 35**<br>**Neptune, NJ 07753** | **Lease apartment located at 503 Highway 35, Neptune, NJ** |
| **Yang's Restaurant, Inc.**<br>**Attn:  Mr. Ji Lang Yang**<br>**23 Ford Ave**<br>**Freehold, NJ 07728** | **Lease commercial property at 2318 Route 38, Cherry Hill, NJ** |

____**0**____ continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

5/01/07 6:46PM

Form B6H
(10/05)

In re   **DWEK INCOME, LLC**                                           ,        Case No. _____

                                     Debtor

## SCHEDULE H. CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the eight year period immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state, commonwealth, or territory. Include all names used by the nondebtor spouse during the eight years immediately preceding the commencement of this case. If a minor child is a codebtor or a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112; Fed. Bankr. P. 1007(m).

☐ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| **Solomon Dwek**<br>**311 Crosby Avenue**<br>**Deal, NJ 07723** | **Amboy National Bank**<br>**3590 US Highway 9**<br>**Old Bridge, NJ 08857-2765** |
| **Solomon Dwek**<br>**311 Crosby Avenue**<br>**Deal, NJ 07723** | **BRT Realty Trust Co.**<br>**60 Cutter Mill Road**<br>**Suite 303**<br>**Great Neck, NY 11021** |

   **0**   continuation sheets attached to Schedule of Codebtors

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                              Best Case Bankruptcy

Official Form 6-Declaration. (10/06)

5/01/07 6:46PM

# United States Bankruptcy Court
## District of New Jersey

In re   **DWEK INCOME, LLC**                                  Case No.   _____

                                              Debtor(s)              Chapter    **11**

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

       I, the Authorized Signatory of the corporation named as debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of \_\_ **16** \_\_ sheets *[total shown on summary page plus 1]*, and that they are true and correct to the best of my knowledge, information, and belief.

Date   **May 1, 2007**  _____        Signature    **/s/ Solomon Dwek** _____

                                                               **Solomon Dwek**
                                                               **Authorized Signatory**

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

5/01/07 6:46PM

Official Form 7
(04/07)

# United States Bankruptcy Court
### District of New Jersey

In re __DWEK INCOME, LLC__

Debtor(s)

Case No. _____

Chapter __11__ _____

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. Do not include the name or address of a minor child in this statement. Indicate payments, transfers and the like to minor children by stating "a minor child." See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

### DEFINITIONS

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| $88,085.42 | 60 W. Main Street, Rental Income - 2007 |
| $9,800.00 | 501, 503, 505 Rte 35 - rental income - 2007 |
| $111,171.60 | 323 Rte 35 - Rental Income - 2007 |
| $144,867.24 | 2318 Rte 38 - Rental Income - 2007 |
| $10,800.00 | 1408 Corlies Avenue - Rental Income - 2007 |
| $21,600.00 | 14 W. Main Street - Rental Income - 2007 |

5/01/07 6:46PM

2

**2. Income other than from employment or operation of business**

None
■    State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                    SOURCE

**3. Payments to creditors**

None
■    *Complete a. or b., as appropriate, and c.*

a.    *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None
☐    b.    *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $5,475.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
|---|---|---|---|
| **See Attached** | | **$112,252.96** | **$0.00** |

None
■    c.    *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

**4. Suits and administrative proceedings, executions, garnishments and attachments**

None
☐    a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| **PNC Bank v. Dwek, et als. Case No. C-133-06** | | **Superior Court of New Jersey, Monmouth County, Chancery Division,** | **Pending** |

5/01/07 6:46PM

3

| None ☐ | b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **US Attorney**<br>**970 Broad Street**<br>**Newark, NJ 07102-2534** | **July, 2006** | **Books and records.** |

### 5. Repossessions, foreclosures and returns

| None ■ | List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 6. Assignments and receiverships

| None ■ | a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

| None ☐ | b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|
| **Donald M.Lomurro, Esq.**<br>**Lomurro, Davison, Eastman & Munoz, PA**<br>**100 Willow Brook Road**<br>**Freehold, NJ 07728-2879** | **Superior Court of New Jersey, Monmouth County.** | | |

### 7. Gifts

| None ■ | List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.) |

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

5/01/07 6:46PM

4

### 8. Losses

None
■

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
| --- | --- | --- |

### 9. Payments related to debt counseling or bankruptcy

None
■

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

### 10. Other transfers

None
■

a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
| --- | --- | --- |

None
■

b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
| --- | --- | --- |

### 11. Closed financial accounts

None
■

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
| --- | --- | --- |

### 12. Safe deposit boxes

None
■

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
| --- | --- | --- | --- |

5

**13. Setoffs**

None
■

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None
■

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

**15. Prior address of debtor**

None
■

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

**16. Spouses and Former Spouses**

None
■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

5/01/07 6:46PM

6

None
■   c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

**18 . Nature, location and name of business**

None
■   a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

*If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

*If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOC. SEC. NO./ COMPLETE EIN OR OTHER TAXPAYER I.D. NO. | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|

None
■   b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|---|---|

The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor or self-employed in a trade, profession, or other activity, either full- or part-time.

*(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

**19. Books, records and financial statements**

None
☐   a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|
| **Arthur Addeo, CPA**<br>**Hochberg, Addeo & Polacco, LLC**<br>**1 Industrial West**<br>**Eatontown, NJ 07724** | |
| **MaryJo Epp, CPA**<br>**Capital Management**<br>**167 Monmouth Road**<br>**Oakhurst, NJ 07755** | |

None
■   b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|------|---------|-------------------------|

None
☐   c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|------|---------|
| Hochberg, Addeo & Polacco, LLC | 1 Industrial West<br>Eatontown, NJ 07724 |
| MaryJo Epp, CPA | Capital Management<br>167 Monmouth Road<br>Oakhurst, NJ 07755 |
| Donald M.Lomurro, Esq. | Lomurro, Davison, Eastman & Munoz, PA<br>100 Willow Brook Road<br>Freehold, NJ 07728-2879 |

None
■   d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

| NAME AND ADDRESS | DATE ISSUED |
|------------------|-------------|

### 20. Inventories

None
■   a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY<br>(Specify cost, market or other basis) |
|-------------------|----------------------|----------------------------------------------------------------------|

None
■   b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
|-------------------|-------------------------------------------------------|

### 21 . Current Partners, Officers, Directors and Shareholders

None
■   a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
|------------------|--------------------|------------------------|

None
☐   b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE<br>OF STOCK OWNERSHIP |
|------------------|-------|---------------------------------------------|
| Charles A. Stanziale, Jr., Esq.<br>100 Mulberry Street<br>Newark, NJ 07102 | Chapter 11 Trustee for Solomon Dwek | 100% by operation of NJ Law as Chapter 11 Trustee for Solomon Dwek, former Managing Member |

### 22. Former partners, officers, directors and shareholders

None
■   a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|------|---------|--------------------|

5/01/07 6:46PM

8

None  b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year**
☐  immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|
| **Solomon Dwek**<br>**311 Crosby Avenue**<br>**Deal, NJ 07723** | **Managing Member** | |

**23 . Withdrawals from a partnership or distributions by a corporation**

None  If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation
■  in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the
commencement of this case.

| NAME & ADDRESS<br>OF RECIPIENT,<br>RELATIONSHIP TO DEBTOR | DATE AND PURPOSE<br>OF WITHDRAWAL | AMOUNT OF MONEY<br>OR DESCRIPTION AND<br>VALUE OF PROPERTY |
|---|---|---|

**24. Tax Consolidation Group.**

None  If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated
■  group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement
of the case.

NAME OF PARENT CORPORATION                    TAXPAYER IDENTIFICATION NUMBER (EIN)

**25. Pension Funds.**

None  If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an
■  employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND                    TAXPAYER IDENTIFICATION NUMBER (EIN)

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto
and that they are true and correct to the best of my knowledge, information and belief.

Date  **May 1, 2007**                    Signature    **/s/ Solomon Dwek**
                                                       **Solomon Dwek**
                                                       **Authorized Signatory**

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

5/01/07 6:46PM

# United States Bankruptcy Court
### District of New Jersey

In re __DWEK INCOME, LLC_____                    Case No. _____

_____ Debtor(s)            Chapter __11__

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR(S)

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   | | | |
   |---|---|---|
   | For legal services, I have agreed to accept | $ | 0.00 |
   | Prior to the filing of this statement I have received | $ | 0.00 |
   | Balance Due | $ | 0.00 |

2. $__1,039.00__ of the filing fee has been paid.

3. The source of the compensation paid to me was:

   ■ Debtor          ☐ Other (specify):

4. The source of compensation to be paid to me is:

   ■ Debtor          ☐ Other (specify):

5. ■ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation is attached.

6. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:
   a. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;
   b. Representation of the debtor in adversary proceedings and other contested bankruptcy matters;
   c. [Other provisions as needed]

7. By agreement with the debtor(s), the above-disclosed fee does not include the following service:

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated: __May  1, 2007_____          /s/ Timothy P. Neumann
                                                 **Timothy P. Neumann**
                                                 **Broege, Neumann, Fischer & Shaver, LLC**
                                                 **25 Abe Voorhees Drive**
                                                 **Manasquan, NJ 08736**
                                                 **(732) 223-8484  Fax: (732) 223-2416**

---

5/01/07 6:46PM

# United States Bankruptcy Court
### District of New Jersey

In re   **DWEK INCOME, LLC** _____,    Case No. _____

                                                   Debtor

Chapter _____**11**_____

## LIST OF EQUITY SECURITY HOLDERS

Following is the list of the Debtor's equity security holders which is prepared in accordance with Rule 1007(a)(3) for filing in this chapter 11 case.

| Name and last known address or place of business of holder | Security Class | Number of Securities | Kind of Interest |
|---|---|---|---|
| **Charles A. Stanziale, Jr., Esq.**<br>**100 Mulberry Street**<br>**Newark, NJ 07102** | **Membership Interest** | **100%** | **100% by operation of NJ Law as Chapter 11 Trustee for Solomon Dwek, former Managing Member** |

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

    I, the Authorized Signatory of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Equity Security Holders and that it is true and correct to the best of my information and belief.

Date___**May  1, 2007**_____        Signature__**/s/ Solomon Dwek**_____
                                                        **Solomon Dwek**
                                                        **Authorized Signatory**

*Penalty for making a false statement or concealing property*:  Fine of up to $500,000 or imprisonment for up to 5 years or both.
18 U.S.C §§ 152 and 3571.

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                               Best Case Bankruptcy

5/01/07 6:46PM

# United States Bankruptcy Court
### District of New Jersey

In re    __DWEK INCOME, LLC_____    Case No. _____

_____Debtor(s)    Chapter    __11_____

# VERIFICATION OF CREDITOR MATRIX

I, the Authorized Signatory of the corporation named as the debtor in this case, hereby verify that the attached list of creditors is true

and correct to the best of my knowledge.

Amboy National Bank
3590 US Highway 9
Old Bridge, NJ 08857-2765


Borough of Bergenfield
198 N. Washington Avenue
Bergenfield, NJ 07621


Borough of Englishtown
15 Main Street
Englishtown, NJ 07726


BRT Realty Trust Co.
60 Cutter Mill Road
Suite 303
Great Neck, NY 11021


Capital Property Management, LLC
167 Monmouth Road
Oakhurst, NJ 07755


Chakeema Deans
505 Hwy 35
Neptune, NJ 07753


Cherry Hill Tax Collector
820 Mercer Street
Cherry Hill, NJ 08002-2688


Coastal Property Maintenance, LLC
167 Monmouth Road
Oakhurst, NJ 07755


Corlies Convenience Store
1408 Corlies Avenue
Neptune, NJ 07753


E-Techknowledge, Inc.
124 Taylor Mills Rd
Englishtown, NJ 07726


GK Commercial Realty Group
PO Box 331
Baptistown, NJ 08803-0331

J. Campoli & Sons
28 Milton Street
Cresskill, NJ 07626


Mascott Corporation/Popeye's
620 Ramsey Ave
Hillside, NJ 07205


PNC Financial Services Group
Attn: Realty Services
P.O. Box 231
Scranton, PA 18501


PSE&G
PO BOX NJ 4106
New Brunswick, NJ 08906-4108


Ricko Transport Inc.
22 Colleen Way
Neptune, NJ 07753


Solomon Dwek
311 Crosby Avenue
Deal, NJ 07723


Township of Neptune
25 Neptune Boulevard
Neptune, NJ 07753


Township of Neptune - Sewer Authority
399 Monmouth Road
Oakhurst, NJ 07755-1589


Tyhisa Farrell
503 Highway 35
Neptune, NJ 07753


United Water New Jersey
PO Box 371804
Pittsburgh, PA 15250-7804


Yang's Restaurant, Inc.
Attn: Mr. Ji Lang Yang
23 Ford Ave
Freehold, NJ 07728

5/01/07 6:46PM

# United States Bankruptcy Court
## District of New Jersey

In re  **DWEK INCOME, LLC**

Debtor(s)

Case No.

Chapter  **11**

## CORPORATE OWNERSHIP STATEMENT (RULE 7007.1)

Pursuant to Federal Rule of Bankruptcy Procedure 7007.1 and to enable the Judges to evaluate possible disqualification or recusal, the undersigned counsel for  **DWEK INCOME, LLC**  in the above captioned action, certifies that the following is a (are) corporation(s), other than the debtor or a governmental unit, that directly or indirectly own(s) 10% or more of any class of the corporation's(s') equity interests, or states that there are no entities to report under FRBP 7007.1:

■ None [*Check if applicable*]

**May 1, 2007**

Date

**/s/ Timothy P. Neumann**

**Timothy P. Neumann**

Signature of Attorney or Litigant

Counsel for  **DWEK INCOME, LLC**

**Broege, Neumann, Fischer & Shaver, LLC**

**25 Abe Voorhees Drive**
**Manasquan, NJ 08736**
**(732) 223-8484 Fax:(732) 223-2416**

# EXHIBIT "B"

PART I

**HILL WALLACK LLP**
202 Carnegie Center
Princeton, New Jersey 08543
EKH5457
(609) 924-0808
Attorneys for Amboy National Bank

**Hearing Date: February 19, 2008**
**at 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**VICINAGE OF TRENTON**

| | |
|---|---|
| In Re: | Chapter 11 |
| | Case No.: 07-11757(KCF) |
| SOLOMON DWEK, et. als., | |
| Debtors, | |

NOTICE OF MOTION FOR AN ORDER GRANTING RELIEF FROM
THE AUTOMATIC STAY PURSUANT TO SECTION 362(d)(1) and (2) OF THE
BANKRUPTCY CODE WITH RESPECT TO REAL PROPERTY KNOWN
AS 1001 NORWOOD AVENUE, UNITS 1-8, LONG BRANCH, NEW JERSEY

To:   James J. Waldron, *Clerk*
      United States Bankruptcy
      Court
      50 Walnut Street
      Newark, New Jersey 07102

      Solomon Dwek
      311 Crosby Avenue
      Deal, New Jersey 07723
      *Debtor*

      Dwek Income, LLC
      c/o Capital Management
      167 Monmouth Road
      Oakhurst, NJ 07755
      *Debtor*

Charles A. Stanziale, Jr., Esq.
McElroy, Deutsch, Mulvaney & Carpenter
Three Gateway Center
100 Mulberry Street
Newark, NJ 07102
*Chapter 11 Trustee*

Timothy P. Neumann, Esq.
Broege, Neumann, Fischer & Shaver
25 Abe Voorhees Drive
Manasquan, NJ 08736
*Debtors' attorney*

Louis A. Modugno, Esq.
McElroy, Deutsch & Mulvaney
1300 Mt. Kemble Avenue
PO Box 2075
Morristown, New Jersey 07962
*Attorney for Chapter 11 Trustee*

Walter J. Greenhalgh, Esq.                     All Those on the Attached Service List
Duane Morris LLP
Ste 1200
744 Broad
Newark, New Jersey 07102
*Attorney for Creditor Committee*

PLEASE TAKE NOTICE, that on February 19, 2008 at 10:00 a.m. or as soon thereafter

as counsel may be heard, Hill Wallack LLP, attorneys for Amboy National Bank.("Amboy"),

shall move before the Honorable Kathryn C. Ferguson, U.S.B.J. at the United States Bankruptcy

Court, 402 East State Street, Trenton, New Jersey , 08608 for an Order granting Amboy relief

from the automatic stay pursuant to Section 362(d)(1) and (2) of the Bankruptcy Code with

respect to the debtor, Dwek Income, LLC's real property located at 1001 Norwood Avenue,

Units 1-8, Long Branch, New Jersey, on which Amboy holds a Mortgage and Security

Agreement, and

PLEASE TAKE FURTHER NOTICE, that Amboy shall rely upon the Certification of

Peter W. Davis and Brief filed simultaneously herewith in support of its Motion; and

PLEASE TAKE FURTHER NOTICE, that in accordance with Local Bankruptcy Rule

9013-2, a proposed form of Order is submitted herewith and oral argument is waived unless

timely opposition is filed.

                              HILL WALLACK LLP
                              Attorneys for Amboy National Bank


                              By: /s/ Elizabeth K. Holdren
                                  Elizabeth K. Holdren

Dated: January 24, 2008

**HILL WALLACK LLP**
202 Carnegie Center
Princeton, New Jersey 08543-5226
(609) 924-0808
EKH5457
Attorneys for Amboy National Bank

**Hearing Date: February 19, 2008**
**at 10:00 a.m.**

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY
## VICINAGE OF TRENTON

| | |
|---|---|
| In re: | Chapter 11 |
| SOLOMON DWEK, et. als., | Case No.: 07-11757(KCF) |
| Debtors, | CERTIFICATION OF PETER W. DAVIS IN SUPPORT OF AMBOY'S MOTION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY WITH RESPECT TO REAL PROPERTY KNOWN AS 1001 NORWOOD AVENUE, UNITS #1-#8, LONG BRANCH, NEW JERSEY |

I, Peter W. Davis, being of full age, hereby certify as follows:

1.      I am a Senior Vice President with Amboy National Bank ("Amboy"). Part of my responsibilities at Amboy is to monitor certain delinquent accounts in bankruptcy, which include the accounts of debtors, Solomon Dwek ("Solomon") and, pertinent to the within motion, Dwek Income, LLC ("Dwek Income"). As such, I am personally familiar with the facts set forth herein and am authorized to make this Certification on behalf of Amboy.

2.      This Certification is submitted in support of Amboy's Motion for relief from the automatic stay with respect to real property known as 1001 Norwood Avenue, Units #1-#8,

1

Long Branch, Monmouth County, New Jersey (the "Property"), which is owned by Dwek Income.

## PROCEDURAL HISTORY

3.        On February 9, 2007, an involuntary petition was filed against Solomon under Chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey known as Case Number 07-11757(KCF) (the "Lead Case"). The Lead Case was subsequently converted to a case under Chapter 11 of the Bankruptcy Code.

4.        Thereafter, voluntary petitions were filed on behalf of various related debtors (the "Jointly Administered Debtors"), which cases are being administered with the Lead Case.

5.        Specifically, Dwek Income filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on May 1, 2007 known as Case Number 07-16068(KCF).

6.        On March 2, 2007, an Order was entered appointing Charles A. Stanziale, Jr., Esq. as the Chapter 11 Trustee for the Lead Case.

7.        Shortly after each of the Jointly Administered Debtors' cases was filed, an Order was entered appointing Charles A. Stanziale, Jr., Esq. as the Chapter 11 Trustee. On May 22, 2007, Charles A. Stanziale, Jr., Esq. was appointed as the Chapter 11 Trustee in the Dwek Income case.

8.        On March 27, 2007, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors pursuant to Section 1102 of the Bankruptcy Code (the "Committee"). On April 26, 2007, an Order was entered authorizing the Committee to

2

employ and retain the law firm of Duane Morris LLP as counsel for the Committee ("Committee Counsel").

## MOTION FOR RELIEF

### Loan No. 926100

9.      On May 20, 2004, Dwek Properties, LLC ("Dwek Properties") executed and delivered to Amboy a Note in the original principal amount of One Million Six Hundred Fifty Thousand and 00/100 Dollars ($1,650,000.00) (the "Note"). A copy of the Note is attached hereto and made a part hereof as Exhibit "A".

10.      Payments of interest only were due and payable on the 20th day of each month commencing on June 20, 2004 and monthly thereafter until May 20, 2006 (the "Conversion Date"). Commencing on the Conversion Date, payments of principal and interest were due and payable on the 20th day of each month, through and including May 20, 2011, when the unpaid balance of principal and interest, together with any other amounts due and owing under the terms of the Note, would become due and payable.

11.      In order to secure its obligations under the Note, on May 20, 2004, Dwek Properties executed and delivered a Mortgage And Security Agreement on the Property to Amboy which Mortgage was recorded on June 4, 2004 in Mortgage Book 8368, Page 7929&c in the Office of the Monmouth County Clerk (the "Mortgage"). A copy of the Mortgage is attached hereto and made a part hereof as Exhibit "B".

3

12.     On February 15, 2006, Dwek Properties, Amboy, and Dwek Income executed and entered into an Assumption of Mortgage Liability Agreement (the "Assumption Agreement") wherein Dwek Income assumed the liability of Dwek Properties under the Note and Mortgage. A copy of the Assumption Agreement is attached hereto and made a part hereof as Exhibit "C".

13.     The Assumption Agreement provides that the Property shall remain in all respects subject to the Mortgage. It further provides that nothing therein shall affect or be construed to affect the Note, Mortgage, or other loan documents.

14.     Pursuant to an Order entered by Judge Alexander D. Lehrer, J.S.C. in the Superior Court of New Jersey case, PNC Bank v. Solomon Dwek, et als., Docket No. MON-C-133-06 (the "State Court Case"), dated January 31, 2007, the period during which interest only payments were to be made was extended to March 31, 2007 (the "Maturity Date"), on which date all remaining amounts owed under the Note became due and payable to Amboy. A copy of the January 31, 2007 Order is attached hereto and made a part hereof as Exhibit "D".

15.     The Note and Mortgage provide without limitation that it is an event of default thereunder if: there is a default in any payment due thereunder; if the borrower fails to pay in full upon maturity; or if the borrower fails to comply with any provision contained in the Note or Mortgage.

4

16.     The Note provides that, in the event of a default, the unpaid balance of the principal sum of the Note and interest thereof shall immediately become due and payable, at the election of Amboy.

17.     The Note and Mortgage provide that in the event of default, Amboy shall have all the rights and remedies set forth in the loan documents or available at law including but not limited to the right to take possession of the Property, including the collection of rents and profits, the have a court appoint a receiver, to commence a foreclosure action resulting in the sale of the Property to reduce the obligations under the Note and Mortgage, to sue for any sums owed to Amboy by the borrower, and to proceed against all Guarantors.

18.     Dwek Income defaulted under the terms of the Note and Mortgage by, without limitation, failing to pay in full upon maturity on March 31, 2007.

19.     As a result, Dwek Income is in default under the Note and Mortgage and all amounts are due and owing to Amboy by Dwek Income under the Note.

5

## LACK OF EQUITY

20.    As of February 19, 2008, the date scheduled for the hearing on the within motion, the sum of $1,843,671.57 was due and owing to Amboy from Dwek Income under the Note, exclusive of attorneys fees, which sum is itemized as follows:

| | |
|---|---|
| Principal | $1,644,769.95 |
| Interest to 2/19/08 | $187,347.83 |
| Late charges | $1,265.37 |
| ANB paying 1st Quarter 2008 taxes | $10,288.42 |
| TOTAL | $1,843,671.57 |

21.    In addition, pursuant to Dwek Income's Schedule D, BRT Realty Trust Co. ("BRT") holds a second mortgage on the Property. A copy of Schedule D is attached hereto and made a part hereof as Exhibit "E".

22.    Pursuant to the Proof of Claim filed on behalf of BRT in the Jemar Enterprises, LLC bankruptcy case, the amount due BRT as of June 11, 2007 totals not less than $6,044,928.83. As evidenced by the Exhibit A-6 to BRT's claim, its claim is secured by the Property. A copy of the first two (2) pages of BRT's Proof of Claim from the Jemar Enterprises, LLC case is attached hereto and made a part hereof as Exhibit "F".

6

23.      On July 15, 2006, an appraisal was prepared for Amboy with respect to the Property, with an effective date of June 30, 2006 (the "Appraisal"). The Appraisal valued the Property at $2,300,000.00. A copy of the Appraisal is attached hereto and made a part hereof as Exhibit "G".

24.      As a result, there exists no equity with respect to the Property, as demonstrated as follows:

| | |
|---|---|
| Value of Property | $2,300,000.00 |
| Total Due Amboy as of 2/19/08 | $1,843,671.57 |
| Total Due BRT (2nd mortgage) as of 6/11/07 | $6,044,928.83 |
| EQUITY as of 2/19/08 | ($5,588,600.40) |

25.      This lack of equity does not even take into account any liens other than the first and second mortgage liens on the property, and also does not take into account costs of sale.

7

## THE PROPERTY IS NOT NECESSARY FOR AN EFFECTIVE REORGANIZATION

26.    The subject Property is not necessary to an effective reorganization. The Property is a single condominium building with eight (8) units. As set forth above, there is no equity in the Property for the estate.

## AMBOY IS NOT ADEQUATELY PROTECTED

27.    As detailed above, there is no equity in the Property. Moreover, Amboy is not receiving adequate protection payments from Dwek Income. In fact, Amboy has not received any payments on the Note, whether from rentals on the Property or otherwise, since well before the bankruptcy petition was filed. The last payment received by Amboy was on January 29, 2007.

28.    As a result of all of the above, Amboy is entitled to relief from the automatic stay to proceed with its state law rights and remedies with respect to the Property.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

Dated: January 23, 2008

/s/ Peter W. Davis
Peter W. Davis

8

# EXHIBIT "A"

*N O T E*

$1,650,000.00                                    May 20, 2004
                                                Woodbridge, New Jersey

       FOR VALUE RECEIVED, the undersigned, DWEK PROPERTIES, L.L.C., a New Jersey limited liability company (the "Borrower"), promises to pay to the order of AMBOY NATIONAL BANK (the "Lender"), at 3590 U.S. Highway 9 South, Old Bridge, New Jersey 08857, the sum of ONE MILLION SIX HUNDRED FIFTY THOUSAND and NO/100 ($1,650,000.00) DOLLARS (in no event shall the unpaid balance exceed the legal lending limit of the Lender) with interest on that part of the principal which has not been paid at the annual rate of one (1.00%) percent (floating) during the initial two (2) year term of the Loan (the "Initial Term"), in excess of the J.P. Morgan Chase Prime Rate (the "Prime Rate"), as same exists from time to time, such Prime Rate being hereby designated as that rate announced by J.P. Morgan Chase from time to time, used as a reference, index or benchmark.   All computations of interest shall be calculated on the basis of the actual number of days elapsed over a year of 365 or 366 days, as appropriate, divided by a 360 day factor.  In no event shall the unpaid balance exceed the legal lending limit of the Lender.

       PAYMENTS of interest only shall be paid monthly on the 20th day of each and every month beginning June 20, 2004 and monthly thereafter until May 20, 2006 (the "Conversion Date"). All payments shall be applied first to late fees, unpaid interest and the balance, if any, shall be applied to principal. All payments will be made to the Lender at the address shown above or to such other place designated in writing by Lender.

       Commencing with the expiration of the "Initial Term" or the "Conversion Date", through and inclusive of the date which is five (5) years after the Conversion Date or May 20, 2011 (the "Maturity Date"), the rate of interest to be charged the Borrower herein shall be fixed at an annual rate of two hundred fifty (250) basis points in excess of the "index" rounded upwards to the nearest one eighth (1/8) of one percent (1.00%).   The index is the Federal Home Loan Bank of New York Five (5) Year Amortizing Advances Rate as published three (3) days prior to the Conversion Date.  All computations of interest shall be calculated over a year of 365 or 366 days, as appropriate, divided by a 360 day factor. In no event shall the interest rate be below six and three quarters (6.75%) percent. If the index is no longer available, the Lender will chose a new Index which is based upon comparable information.   The Lender will give notice of the change in interest rate and monthly payments to the Borrower.

      MONTHLY PAYMENTS.  During the Initial Term, payments of interest only shall be payable monthly on the 20th day of each month commencing June 20, 2004 and monthly thereafter until the expiration of the Initial Term or Conversion Date of May 20, 2006.  Thereafter, payments of principal and interest shall be made in the amount as determined by the Lender based upon the outstanding principal amount to be converted and the new

-1-

interest rate established pursuant hereto, shall be payable
monthly on the 20th day of each and every month commencing on
June 20, 2006 through and inclusive of the May 20, 2011, the
"Maturity Date".  On the Maturity Date the unpaid balance of
principal and interest shall be due and payable together with
any other amounts due and owing under the terms of this Note.
After the Lender has determined the new interest rate, and
recalculated the new installment payment amount, the Lender will
give written notice to the Borrower of the new interest rate and
payment amount due as a result hereof.

DEFAULT RATE.  In the event of any default herein,
which default continues for a period of thirty (30) days, the
interest rate shall automatically be adjusted from the date of
default to an annual amount equal to two (2.00%) percent in
excess of the rate of interest applicable hereunder, until the
arrearage is paid in full.

CONVERSION TO DEMAND NOTE.  In the event this Note is
not paid in full upon the Maturity Date, and all payments prior
thereto have been made, then and in that event, upon the
Maturity Date this Note shall convert and become a DEMAND NOTE
with interest at the rate equal to two (2.00%) percent per annum
in excess of the annual rate in effect at the time of Maturity,
payable on the 20th day of each month until demand for payment
has been made.

PREPAYMENT PENALTY:  The principal amount due under
the Note may be prepaid in full or in part provided Lender is
given no less than sixty (60) days written notice of intent to
prepay and upon payment to Lender of a prepayment premium as
hereinafter determined:

(1) in the event the prepayment is made during the
first year of the Permanent Loan Term hereof, there shall be a
prepayment premium in the amount of three (3.00%) percent of the
amount prepaid;

(2) in the event the prepayment is made during the
second year of the Permanent Loan Term hereof, there shall be a
prepayment premium in the amount of two (2.00%) percent of the
amount prepaid;

(3) in the event prepayment is made during the third,
fourth or fifth year of the Permanent Loan Term hereof, there
shall be a prepayment premium in the amount of one (1.00%)
percent of the amount prepaid;

For the purpose of the provisions hereof, the
"Permanent Loan Term" shall mean the period commencing on the
20th day of May 2006 through and inclusive of the May 20, 2011.
Partial prepayments shall be applied to the principal payments
due on the Loan in their inverse order of maturity.  Partial
prepayments will be applied to outstanding principal then due
and owing under the Note; provided, however, that in the event
amounts other than principal are due under the Note at the time
of the partial prepayment, the Lender reserves the right, in its
sole discretion, to first apply the amount prepaid to such
outstanding amounts.  Notwithstanding the above, during each
term year, Borrower may make partial prepayments up to an amount

-2-

equal to twenty (20%) percent of the then current outstanding
principal balance due during the term year in which partial
prepayments are made.  The right of prepayment shall not be
cumulative after the respective term year.  Notwithstanding the
foregoing, Borrower acknowledges and agrees that in the event of
a complete satisfaction of the Loan at the time of prepayment,
Borrower shall not be entitled to any reduction in the
prepayment premium provided for in this paragraph for partial
prepayments.

         In addition, the Borrower shall have the right to
prepay the Loan without payment of a prepayment premium on the
Maturity Date or within sixty (60) days prior thereto.

         BORROWER ACKNOWLEDGES AND AGREES THAT SUCH PREPAYMENT
PREMIUM REPRESENTS A REASONABLE AND FAIR ESTIMATE OF
COMPENSATION FOR THE LOSS THAT HOLDER MAY SUSTAIN FROM THE
PREPAYMENT OF THIS NOTE.  THE BORROWER ACKNOWLEDGES AND AGREES
THAT IT HAS NO RIGHT TO PREPAY THIS NOTE IN WHOLE OR IN PART
WITHOUT THE PREPAYMENT PREMIUM EXCEPT AS SPECIFICALLY PROVIDED
ABOVE.  NOTWITHSTANDING ANYTHING TO THE CONTRARY STATED HEREIN,
BORROWER FURTHER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT IT
SHALL BE IMMEDIATELY LIABLE FOR THE REQUIRED PREPAYMENT PREMIUM
TO BE PAID IN THE RESPECTIVE YEAR SET FORTH ABOVE IN THE EVENT
OF A DEFAULT UNDER THE NOTE OR THE ACCELERATION OF THE
INDEBTEDNESS UNDER THE NOTE FOR ANY REASON, WHETHER BY OPERATION
OF LAW OR OTHERWISE AND NOTICE OF THE ASSESSMENT OF THE
PREPAYMENT PREMIUM SHALL NOT BE A REQUIREMENT FOR IT TO BE DUE
AND OWING AT THAT TIME AND THEREAFTER.

         FURTHERMORE, BORROWER, TO THE FULLEST EXTENT ALLOWABLE
BY APPLICABLE LAW, WAIVES ANY RIGHTS IT MAY HAVE TO OBJECT TO
OUR AVOID THE PAYMENT OF THE RPEPAYMENT PREMIUM AND BORROWER
EXPRESSLY ACKNOWLEDGES AND AGREES THAT HOLDER HAS MADE OR
ACQUIRED THE LOAN EVIDENCED BYTHIS NOTE IN RELIANCE ON SUCH
AGREEMENT AND WAIVER BY BORROWER, THAT HOLDER WOULD NOT HAVE
MADE OR ACQUIRED THIS LOAN WITHOUT SUCH AGREEMENT AND WAIVER BY
BORROWER, AND THAT HOLDER HAS GIVEN INDIVIDUAL WIGHT TO SUCH
AGREEMENT AND WAIVER BY BORROWER IN ENTERING INTO OR ACQUIRING
THIS NOTE AND OTHER LOAN DOCUMENTS.

         This Note is given by the Borrower to the Lender
pursuant to the terms of a certain loan commitment issued by the
Lender to the Borrower dated January 15, 2004 (the "Loan
Commitment"), the terms of which are  incorporated herein by
reference.

         THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE.
THEREAFTER, IF PAYMENT IS DEMANDED, THE BORROWER MUST REPAY THE
ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN
DUE.  THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT
THAT TIME.  THE BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE
PAYMENT OUT OF OTHER ASSETS THE BORROWER MAY OWN, OR THE
BORROWER WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER THE
BORROWER HAS THIS LOAN WITH, WILLING TO LEND THE BORROWER THE
MONEY.  IF THE BORROWER REFINANCES THIS LOAN AT MATURITY, THE
BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS
NORMALLY ASSOCIATED WITH A NEW LOAN IF THE BORROWER OBTAINS
REFINANCING FROM THE SAME LENDER.

62412303  (132491.778)

1.  As security for the payment of the moneys owing hereon, Borrower has executed and delivered to AMBOY NATIONAL BANK, a Mortgage and Security Agreement of even date herewith (the "Mortgage") on lands located in the City of Long Branch, County of Monmouth and State of New Jersey (the "Mortgaged Premises").

2.  The Borrower agrees with the Lender:

a.  Upon request of the Lender, to pay to the Lender at the  same time as each monthly payment and in addition thereto, one-twelfth of the current annual taxes levied and assessed against the Mortgaged Premises and if requested by the Lender one month's proportion of the annual insurance premiums to be held by the Lender and used in payment of the taxes and insurance premiums as they become due and payable, and to make such further tax or insurance reserve payments in such amounts and at such time or times as the Lender shall require to make up any deficiency thereof, subject to the condition that there will be no interest paid by the Lender with regard to such amounts paid;

b.  To claim no deduction upon the assessed value of such Mortgaged Premises on account of the moneys owing hereon;

c.  To pay all taxes, assessments, water rents and other governmental charges levied or assessed against the Mortgaged Premises within thirty (30) days after the same shall have become due and payable;

d.  Upon written request of the Lender, keep the buildings on the Mortgaged Premises insured for the benefit of the Lender against damage or loss by fire and such other hazards as the Lender shall specify, by insurers and in amounts approved by the Lender and to deliver such policy or policies of insurance to the Lender;

e.  To comply with the terms and provisions of the Loan Commitment issued by the Lender to the Borrower to evidence the Lender's intent to make the Loan evidenced by this Note, and all other loan documents of even date herewith executed in connection with this Note (collectively, the "Loan Documents"), the terms of which are incorporated herein as if fully set forth.

3.  The Borrower further agrees that, should thirty (30) days' default be made in the payment of any such tax, assessments, water rents, or governmental charge, or in the payment of a premium for such insurance, or should any default be made in the obligation to keep the Mortgaged Premises in satisfactory repair and condition, then the Lender may pay any such tax, assessment, water rents, governmental charge, insurance premium or the cost to place the Mortgaged Premises in satisfactory repair and condition, and the amount so paid shall be added to the amount owing hereunder and shall be due and payable on demand, with interest at the Default Rate set forth herein.

-4-

4. Notwithstanding the foregoing, the unpaid balance of the principal sum of this Note and interest hereon shall immediately become due and payable, at the election of the Lender, in the event of:

    a. Default in any payment due hereunder; or

    b. Any default under the provisions of paragraph 2 hereof; or

    c. Any change in the ownership of the Mortgaged Premises or the Members of the Borrower without the express written consent of the Lender; or

    d. The appointment of a receiver of the Mortgaged Premises, rights, credits, assets or any part thereof, of the Borrower or of the Mortgaged Premises; or

    e. The filing of a petition by or against the Borrower or the Mortgaged Premises for relief under any bankruptcy or insolvency law; or

    f. An assignment by the Borrower of assets for the benefit of creditors; or

    g. Any default in the covenants, terms and conditions of the Mortgage securing this Note, or other Loan Documents which covenants and conditions are made a part hereof as though set forth herein at length; or

    h. Any default in the terms, covenants and conditions of any other Note or obligation of Borrower to Lender or any Guarantor, if any, to Lender; or

    i. Entering into any secondary financing or consenting to the placing of any lien on the Mortgaged Premises, whether or not such financing or lien is prior to or subordinate to the lien of the mortgage unless consent thereto has previously been given in writing by the Lender.

5. The Borrower agrees to pay a late charge of five (5%) percent for each dollar of each payment fifteen (15) days in arrears to cover extra expenses involved in handling delinquent payments.

6. In the event of the payment or prepayment of principal after the occurrence of an event of default and/or in the event of acceleration of the principal due under this Note under any other circumstances or as a result of or after the entry of a judicial decree, including a foreclosure judgment or any other proceeding requiring the payment of this Note, such payment shall be deemed to be a prepayment of principal under this Note which shall require an additional payment for interest, late charges, the default rate of interest and prepayment fees and premiums set forth in this Note.

7. All of the terms, covenants and provisions of the Mortgage securing this Note, and Loan Documents are incorporated herein and made a part hereof as if fully set forth.

8. If this Note is placed in the hands of an attorney for collection by suit or otherwise, or to enforce its collection, or to protect the security for its payment, the

-5-

#2412203 (133491.178)

Borrower immediately and without demand, will pay all costs of collection and litigation together with reasonable attorneys' fees. In the event of a judgment on this Note, the Borrower agrees to pay to the Lender on demand all costs and expenses incurred by the Lender in satisfying such judgment, including without limitation, reasonable fees and expenses of the Lender's counsel; it being expressly understood that such agreement by the Borrower to pay all post-judgment costs and expenses of the Lender is absolute and unconditional and (i) shall survive (and not merge into) the entry of a judgment for amounts owing hereunder and (ii) shall not be limited regardless of whether this Note is secured or unsecured, and regardless of whether the Lender exercises any available rights or remedies against any collateral pledged as security for this Note.

9.   The remedies of the Lender, as provided herein, shall be cumulative and concurrent and may be pursued singly, successively or together, at the sole discretion of the Lender, and may be exercised as often as occasion therefor shall occur, and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof. The Lender shall have the right to take any action it deems appropriate without the necessity of resorting to any collateral securing this Note.

10.   The Lender shall not be deemed to waive any of its rights or remedies hereunder unless such waiver is in writing and signed by the Lender and then only to the extent specifically set forth therein. A waiver in one event shall not be continuing or a bar to or waiver of a subsequent event. In the event any agreement contained in this Note should be breached by the Borrower and thereafter waived by the Lender, such waiver shall be limited to the actual breach so waived and shall not be deemed to waive any other breach hereunder.

11.   The Borrower and all other parties who at any time may be liable hereon in any capacity, jointly and severally, waive presentment, demand for payment, protest and notice of dishonor of this Note, and authorize the Lender without notice, to grant extensions in the time of payment of and reductions in the rate of interest on any moneys owing on this Note.

12.   The Borrower, if more than one, agree to be jointly and severally liable hereunder, and that the term "Borrower" as used herein, means any one or more of them. The term "owner," as used herein, if more than one, means any one of them.

13.   This Note shall be construed and enforced in accordance with the laws of the State of New Jersey.

14.   JURY TRIAL WAIVER.  BORROWER AND LENDER HEREBY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION BASED UPON, OR ARISING OUT OF, OR IN CONJUNCTION WITH THIS NOTE, OR THE MORTGAGE AND SECURITY AGREEMENT AND OTHER LOAN DOCUMENTS EXECUTED IN CONNECTION HEREWITH, OR THE OBLIGATIONS AND INDEBTEDNESS SECURED BY SAME.

-6-

#2412103 (13264v1.773)

IN WITNESS WHEREOF, this Note has been executed by the Borrower, the day, month and year first above written.

WITNESS:                           DWEK PROPERTIES, L.L.C., a New
                                   Jersey limited liability company

_____            By:  SOLOMON DWEK, Sole Member
MICHAEL V. BENEDETTO, ESQ.

-7-

#3813103 (132431.710)

# EXHIBIT "B"

PART II

EXHIBIT    "B"

RECORD AND RETURN TO:
MILENTZ, GOLDMAN & SPITZER
90 WOODBRIDGE CENTER DRIVE
WOODBRIDGE, NEW JERSEY 07095
ATTN: N. SANTONASTO, ESQ.

451307



## MORTGAGE AND SECURITY AGREEMENT

THIS MORTGAGE AND SECURITY AGREEMENT (the "Mortgage")

is made this 20th day of May 2004.

BETWEEN the Mortgagor:

DWEK PROPERTIES, L.L.C., a New Jersey limited
liability company, having an address at P.O. Box
1068, Oakhurst, New Jersey 07755, referred to as
"I" or "Borrower";

AND the Lender

AMBOY NATIONAL BANK, whose address is 3590 U.S.
Highway 9 South, Old Bridge, New Jersey 08857
referred to as the "Lender".

If more than one Mortgagor signs this Mortgage, the word "I"
shall mean each Mortgagor named above. The word "Lender" means
the original Lender and anyone else who takes this Mortgage by
transfer.

NOTE. In return for a loan made by the Lender to DWEK
PROPERTIES, L.L.C., a New Jersey limited liability company (the
"Borrower"), I promise to pay ONE MILLION SIX HUNDRED FIFTY
THOUSAND AND 00/100 ($1,650,000.00) DOLLARS (called
"principal"), plus interest in accordance with the terms of a
Note dated May 20, 2004 (referred to as the "Note"). All terms
of the Note are incorporated herein as if fully set forth at
length. All amounts owed under the Note are due and payable no
later than May 20, 2011 (the "Maturity Date").

THIS LOAN IS PAYABLE IN FULL ON OR BEFORE THE MATURITY
DATE OR ANY EXTENDED MATURITY DATE, IF APPLICABLE. THEREAFTER,
IF THE LENDER DEMANDS PAYMENT, BORROWER MUST REPAY THE ENTIRE
PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE
LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT
TIME. BORROWER WILL THEREFORE BE REQUIRED TO MAKE PAYMENT OUT
OF OTHER ASSETS IT MAY OWN, OR BORROWER WILL HAVE TO FIND A
LENDER WILLING TO LEND YOU THE MONEY AT PREVAILING MARKET RATES,
WHICH MAY BE CONSIDERABLY HIGHER THAN THE INTEREST RATE ON THIS
LOAN. IF THE BORROWER REFINANCES THIS LOAN AT MATURITY,
BORROWER MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS
NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF THE BORROWER OBTAINS
REFINANCING FROM THE SAME LENDER.

PROPERTY MORTGAGED. The property mortgaged to the
Lender is commonly known as Lot 25.01 through 25.08, Block 6,

-1-

#1824550 (017232.999)

## SCHEDULE A
## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Long Branch, County of Monmouth and State of New Jersey, being more particularly described as follows:

BEGINNING at a point at the Northeasterly intersection of North Lincoln Avenue (55' ROW) and Norwood Avenue (50' ROW) and from said point of beginning running; thence

(1) Along the Northerly line of said North Lincoln Avenue, South 72 degrees 40 minutes East, a distance of 106.08 feet to a point; thence

(2) North 17 degrees 20 minutes East, a distance of 169.95 feet to a point; thence

(3) North 72 degrees 40 minutes West, a distance of 163.67 feet to a point in the Easterly line of Norwood Avenue; thence

(4) Along same, South 01 degrees 27 minutes East, a distance of 179.51 feet to a point, being the point and place of BEGINNING.

THE above being further known and described as Units 1, 2, 3, 4, 5, 6, 7 and 8 within a condominium property known as "Deal Manor, a Condominium", as defined under the provisions of the Condominium Act of the State of New Jersey (N.J.S.A. 46:8B-1 et seq. as amended) and established by the Master Deed, dated -/-/1987 and recorded December 23, 1987 in the Monmouth County Clerk's Office as Deed Book 4816, Page 896, and as may hereinafter be lawfully amended, Together with the undivided percentage interest in and to the limited common elements and common elements, as more particularly set forth in the said Master Deed, and subject to the terms of the By-Laws of the Condominium Association also contained therein.

THE above description was made in accordance with a survey prepared by, Thomas F. Santry, P.A., dated October 23, 2003.

Note For Information Only:
The land referred to in this Commitment is commonly known as Lot(s) 25.01-25.08, Block 8 on the Tax Map, City of Long Branch, in the County of Monmouth.

CHICAGO TITLE INSURANCE COMPANY

located in the City of Long Branch, County of Monmouth and State of New Jersey and includes:  (a) the land; (b) all buildings, structures, furnishings and improvements now or hereafter located on the land; (c) all fixtures, systems, machinery, equipment and other personal property used in and necessary or appropriate to the operation of the buildings, structures and improvements that are now, or will be, attached to the land or building(s) (for example, furnaces, bathroom fixtures and kitchen cabinets); (d)  all leases in existence and created in the future together with rents due thereunder; (e) all condemnation awards, accounts receivable, insurance proceeds and profits arising out of the land and building(s); and (f) all other rights that I have, or will have, as owner of the premises (collectively, the "Mortgaged Premises").  The legal description of the Mortgaged Premises is as more particularly described in Schedule "A" attached hereto and made a part hereof.

BEING the same premises conveyed to the Mortgagor herein by Deed from Norwood Elberon Associates, L.P., a New Jersey Limited Partnership being dated and recorded simultaneously herewith.

THIS is a First Mortgage.

THIS Mortgage may be prepaid in whole or in part at any time in accordance with the terms of the Note.

THIS Mortgage shall be deemed to constitute a Security Agreement and fixture filing to be filed or recorded in the real estate records maintained by the Clerk of Monmouth County and in the records of the State of New Jersey, pursuant to the laws of the State of New Jersey.

THIS Mortgage shall become due and payable at the option of the Lender in the event there is any change in the ownership of the Mortgaged Premises, or in the event an encumbrance is created upon the Mortgaged Premises without the express consent of the Lender, whether or not said encumbrance is inferior to the lien of this Mortgage.

IF the Lender shall be made a party to, or shall intervene in, any action or proceeding affecting the Mortgaged Premises or the title thereto or the interest of the Lender under this mortgage, or if the Lender employs an attorney to represent it in any of the foregoing instances, the Lender shall be reimbursed by the Borrower for all costs, charges or other expenses, including but not limited to the attorney's fees, court costs, out-of-pocket expenses, officer and staff time incurred by it in any such case.  All such sums of money so paid shall be added to the amount due on the principal indebtedness, and shall be payable on demand with interest at the rate hereinabove mentioned from the time of such payment by the Lender, and upon the failure of the Borrower to pay the same to the Lender on demand, the unpaid principal indebtedness and the interest thereon, including such sums as aforesaid at the option of the Lender, shall become and be due immediately thereafter, anything contained herein or in the obligation to the contrary notwithstanding.

-2-

RIGHTS GIVEN TO LENDER.  I mortgage the Mortgaged Premises to the Lender.  This means that I give the Lender those rights stated in this Mortgage and also those rights the law gives to lenders who hold mortgages on real property.  When I pay all amounts due to the Lender under the Note and this Mortgage, the Lender's rights under this Mortgage will end.  The Lender will then cancel this Mortgage at my expense.

PROMISES.  I make the following promises to the Lender:

1.  Note and Mortgage I will comply with all of the terms of the Note and this Mortgage.

2.  Payments.  I will make all payments required by the Note and this Mortgage.

3.  Ownership.  I warrant title to the Mortgaged Premises (N.J.S.A. 46:9-2).  This means I own the Mortgaged Premises and will defend my ownership against all claims.

4.  Liens and Taxes.  I will pay all liens, taxes, sewer taxes, assessments and other government charges made against the Mortgaged Premises when due together with any and all advance payments of taxes and/or insurance as set forth in the Note.  I will not claim any deduction from the taxable value of the Mortgaged Premises because of this Mortgage.  I will not claim any credit against the principal and interest payable under the Note and this Mortgage for any taxes paid on the Mortgaged Premises.

5.  Insurance.  I must maintain hazard insurance, general comprehensive liability with extended coverage insurance on the Mortgaged Premises in an amount satisfactory to the Lender.  .  The Lender may also require that I maintain flood insurance, worker's compensation insurance and/or other types of insurance.  The insurance companies, policies, amounts and types of coverage must be acceptable to the Lender.  I will notify the Lender in the event of any substantial loss or damage.  The Lender may then settle the claim on my behalf if I fail to do so.  All payments from the insurance company must be payable to the Lender under a "standard mortgage clause" in the insurance policy.  The Lender may use any proceeds to repair and restore the Mortgaged Premises or to reduce the amount due under the Note and this Mortgage.  This will not delay the due date for any payment under the Note and this Mortgage.  I will furnish flood insurance if any part of the Mortgaged Premises is determined to be located within a flood hazard area.

6.  Repairs.  I will keep the Mortgaged Premises in good repair, neither damaging nor abandoning it.  I will allow the Lender to inspect the Mortgaged Premises upon reasonable notice to me.

7.  Statement of Amount Due.  Upon request of the Lender, I will certify to the Lender in writing: (a) the amount due on the Note and this Mortgage, and (b) whether or not I have any defense to my obligations under the Note and this Mortgage.

-3-

R24332183 [232491.998]

8. Rent. I will not accept rent from any tenant for more than one month in advance.

9. Lawful Use. I will use the Mortgaged Premises in compliance with all laws, ordinances and other requirements of any governmental authority, including but not limited to all local ordinances covering use and occupancy of the Mortgaged Premises and all environmental laws affecting the Mortgaged Premises.

EMINENT DOMAIN. All or part of the Mortgaged Premises may be taken by a government entity for public use. If this occurs, I agree that any compensation be given to the Lender. The Lender may use this to repair and restore the Mortgaged Premises or to reduce the amount owed on the Note and this Mortgage. This will not delay the due date for any further payment under the Note and this Mortgage. Any remaining balance will be paid to me.

COMPLIANCE WITH APPLICABLE LAWS. The Mortgagor agrees to comply, and to cause its tenants to comply, with all laws, rules, regulations and ordinances made or promulgated by lawful authority and now or hereafter applicable to the Mortgaged Premises, its use and the personalty contained therein, within such time as required by law. The Mortgagor has caused the Mortgaged Premises to be designed in compliance with all laws, rules, regulations and ordinances made or promulgated by lawful authority applicable to the Mortgaged Premises.

COMPLIANCE WITH ENVIRONMENTAL LAW.

1. "Environmental Law" shall mean the federal Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. 39601 et seq., the federal Solid Waste Disposal Act, including the Resource Conservation and Recovery Act of 1976, 42 U.S.C. 36901 et seq., the federal Water Pollution Control Act, 33 U.S.C. 31251 et seq., the New Jersey Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq., the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J.S.A. 58:10-23.11 et seq., the New Jersey Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq., the New Jersey Industrial Site Recovery Act, as amended, N.J.S.A. 13:1K-6 et seq. ("ISRA"), and any and all federal, state and local laws, statutes, ordinances, regulations, rules and executive orders pertaining to environmental matters, all as may be amended or supplemented from time to time. Any term mentioned in the following subsections which is defined in any Environmental Law shall have the meaning ascribed therein to such term; provided, however, that if any Environmental Law is amended so as to broaden the meaning of any term defined therein, such broader meaning shall apply hereunder upon and after the effective date of such amendment.

2. The Borrower represents and warrants that neither the Borrower nor the Mortgaged Premises are currently in violation of or subject to any existing, pending or threatened investigation or inquiry by any governmental authority pertaining to any Environmental Law applicable to the Borrower and/or the Mortgaged Premises. The Borrower shall not cause or permit the Mortgaged Premises to be in violation of, or do

-4-

anything which would subject the Mortgage Premises to any remedial obligation under, any Environmental Law applicable to the Borrower and/or the Mortgaged Premises, and shall promptly notify the Lender, in writing, of any existing, pending or threatened investigation or inquiry by any governmental authority in connection with any Environmental Law applicable to the Borrower and/or the Mortgaged Premises.

3. The Borrower represents and warrants that no asbestos which is or may become friable, or any material containing asbestos, is currently present in any form in, on or at the Mortgaged Premises. The Borrower covenants that it will not place or install in, on or at the Mortgaged Premises any asbestos which is or may become friable, or any material containing asbestos. In the event any asbestos or asbestos-containing material is found to be present at the Mortgaged Premises, the Borrower agrees to remove the same promptly upon discovery at its sole cost and expense, and in accordance with all Environmental Laws applicable thereto.

4. The Borrower represents and warrants that it has taken all steps necessary to determine, and has determined, that no hazardous substances or hazardous wastes (as defined by any Environmental Law) have been disposed of or spilled, leaked, discharged or released on, at, under or to the Mortgaged Premises. The use which the Borrower makes and intends to make of the Mortgaged Premises will not result in the disposal, spill, leak, discharge or release of any hazardous substances or hazardous wastes (as defined by any Environmental Law) on, at, under or to the Mortgaged Premises. During the term of this Mortgage, the Borrower shall take all steps necessary to determine whether hazardous substances or hazardous wastes have been disposed of or spilled, leaked, discharged or released on, at under or to the Mortgaged Premises, and Mortgagor will remove all such hazardous substances or hazardous wastes promptly upon discovery at its sole expense, and in accordance with all Environmental Laws applicable thereto.

5. No part of the Mortgaged Premises owned and/or occupied by the Borrower has ever been used by the Borrower or current or previous owners or operators thereof, and such real property will not be used in the future, to refine, manufacture, produce, generate, store, handle, transfer, process, transport or dispose of hazardous substances or hazardous wastes (as defined by any Environmental Law.

6. The Borrower has not received any communication, written or oral, from the New Jersey Department of Environmental Protection (the "NJDEP") concerning any releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances or hazardous wastes (as defined by any Environmental Law) into waters or onto the lands of the State of New Jersey or into the waters outside the jurisdiction of the State of New Jersey resulting in damage to the lands, waters, fish, shellfish, wildlife, biota, air and other resources owned, managed, held in trust or otherwise controlled by the State of New Jersey.

7. No part of any real property currently owned or occupied by the Borrower and located in the State of New Jersey,

-5-

including, without limitation, the Mortgaged Premises, has or is now being used as a major facility (as defined in the Spill Act), and the Borrower shall not use any such real property as a Major Facility in the future without the prior express written consent of the Lender.  If the Borrower ever becomes an owner or operator of a Major Facility, then the Borrower shall furnish the NJDEP with all the information required by the Spill Act, and shall duly file with the Director of the Division of Taxation, in the New Jersey Department of the Treasury, a tax report or return, and shall pay all taxes due therewith, in accordance with the Spill Act.

8.  In connection with the purchase of the Mortgaged Premises and any other real property acquired by the Borrower on or after January 1, 1984, the Borrower required that the seller of said real property, including, but not limited to, the Mortgaged Premises, comply with the provisions of ISRA (including its predecessor statute, the Environmental Cleanup Responsibility Act) and the seller did comply therewith.

9.  The Borrower shall not conduct, or cause or permit to be conducted, on the Mortgaged Premises any activity which constitutes an industrial establishment (as defined in ISRA), without the prior express written consent of the Lender.  In the event that ISRA becomes applicable to the Mortgaged Premises subsequent to the date hereof, the Borrower shall give prompt written notice thereof to the Lender and shall take immediate requisite action to insure full compliance therewith.  The Borrower shall deliver to the Lender copies of all correspondence, notices and submissions that it sends to or receives from the NJDEP in connection with such ISRA compliance.  The Borrower's obligation to comply with ISRA shall, notwithstanding its general applicability, also specifically apply to a sale, transfer, closure or termination of operations associated with any foreclosure action.

10.  No lien has been attached to any revenue or any real or personal property owned by the Borrower and located in the State of New Jersey, including, without limitation, the Mortgaged Premises, pursuant to CERCLA or the Spill Act, nor is such real or personal property subject to any similar lien to the benefit of any local government or agency thereof.  In the event that any such lien is filed with respect to the Mortgaged Premises, then the Borrower shall, within thirty (30) days from the date that the Borrower is given such notice of such lien of (or within such shorter period of time in the event that the lienor has commenced steps to have the Mortgaged Premises sold), either: (i) pay the claim and remove the lien from the Mortgaged Premises; or (ii) furnish (a) a bond satisfactory to the Lender in the amount of the claim out of which the claim arises, (b) a cash deposit in the amount of the claim out of which the lien arises, or (c) other security satisfactory to the Lender in an amount sufficient to discharge the claim out of which the lien arises.

11.  In the event that the Borrower shall cause, or permit to occur, any release, spill, leak, discharge, disposal, pumping, pouring, emitting, emptying or dumping of hazardous substances or hazardous wastes (as defined in any Environmental Law) into the  waters or onto the lands of the State of New

-6-.

Jersey, or into the waters outside the jurisdiction of the State of New Jersey resulting in damage to the lands, waters, fish, shellfish, wildlife, biota, air or other resources owned, managed, held in trust or otherwise controlled by the State of New Jersey, without having obtained a permit issued by the appropriate governmental authorities, the Borrower shall promptly remove, remediate and/or abate such hazardous substances or hazardous wastes in accordance with all Environmental Laws applicable thereto.

RIGHT TO INSPECT AND CURE. The Lender shall have the right to conduct, or have conducted by its agents or contractors, such environmental inspections of the Mortgaged Premises as the Lender shall deem necessary or advisable from time to time at the sole cost and expense of the Borrower. The cost of such tests shall be added to the liabilities and shall be secured by this Mortgage. Borrower shall, and shall cause each lessee or occupant of the Mortgaged Premises to, cooperate with such inspection efforts; and such cooperation shall include, without limitation, supplying such information concerning the operations conducted and hazardous substances or hazardous wastes (as defined by any Environmental Law) located on, in, at or under the Mortgaged Premises. In the event that the Borrower fails to comply with any Environmental Law applicable to the Borrower and/or the Mortgaged Premises, then the Lender may, in addition to any of its other remedies under this Mortgage, cause the Mortgaged Premises to be in compliance with such Environmental Laws, and the cost of such compliance shall be added to the sums secured by this Mortgage and shall bear interest from the date of demand at the rate of interest then in effect under the Note plus five percent (5%) per annum.

TAX AND INSURANCE ESCROW. I will make regular monthly payments to the Lender of: (a) 1/12 of the yearly real estate taxes and assessments on the Mortgaged Premises, if the lender request; and/or (b) if the Lender requests, 1/12 of the yearly cost of insurance on the Mortgaged Premises. These payments will be held by the Lender without interest to pay the taxes, assessments and insurance premiums as they become due.

PAYMENTS MADE FOR MORTGAGOR. If I do not make all of the repairs or payments as agreed in this Mortgage, the Lender may do so for me. The cost of these repairs and payments will be added to the principal, will bear interest at the same rate provided in the Note and will be repaid to the Lender upon demand.

DEFAULT. The Lender may declare that I am in default on the Note and Mortgage if:

(a) I fail to make any payments required by the Note and this Mortgage on its due date;

(b) I fail to keep any other promise I make in the Note or in this Mortgage;

(c) the ownership of the Mortgaged Premises or the Members of the Borrower is changed for any reason;

-7-

(d)  the holder of any lien on the Mortgaged Premises starts foreclosure proceedings;

(e)  the Borrower shall have applied for or consented to the appointment of a custodian, receiver, trustee or liquidator of all or a substantial part of its assets; a custodian shall have been appointed with or without consent of the Borrower; the Borrower is generally not paying its respective debts as they become due; the Borrower shall have made a general assignment for the benefit of creditors; the Borrower shall have filed a voluntary petition in bankruptcy, or a petition or an answer seeking reorganization or an arrangement with creditors; or have taken advantage of any insolvency law, or have filed an answer admitting the material allegations of a petition in bankruptcy; or a petition shall have been filed against the Borrower and shall not have been dismissed for a period of thirty (30) consecutive days, or if an Order for Relief has been entered under the Bankruptcy Code; or an order, judgment or decree shall have been entered without the application, approval or consent of the Borrower by any court of competent jurisdiction appointing a receiver, trustee, custodian or liquidator of the Borrower of a substantial part of their assets and such order, judgment or decree shall have continued unstayed and in effect for any period of forty-five (45) consecutive days;

(f)  a writ of execution or attachment or any similar process shall be issued or levied against all or any part of or interest in any of the substantial properties or assets of the Borrower; or any judgment involving monetary damages shall be entered against the Borrower; or which shall become a lien on the Borrower's properties or assets or any portion thereof or interest therein and an appeal is not taken and actively prosecuted on such judgment within thirty (30) days of its entry; or such execution, attachment or similar process is not released, bonded, satisfied, vacated or stayed within thirty (30) days after its entry or levy; and said writ of execution, attachment, levy or judgment shall involve monetary damages aggregating more than $50,000.00;

(g)  seizure or judgment of foreclosure of any of the properties or assets of the Borrower pursuant to process of law or by respect of legal process of law or by respect of legal self-help, involving monetary damages aggregating more than $50,000.00, unless said seizure or judgment of foreclosure is stayed or bonded within thirty (30) days after the occurrence of same;

(h)  any representations or warranties made by the Borrower in any Loan Documents including the loan application shall prove to be false, incorrect or misleading in any substantial and material respect on the date as of which made;

(i)  any default in the terms, covenants and conditions under the Note, this Mortgage, and other security or documents executed and delivered in favor of the Lender; or

(j)  any default in the terms, covenants and conditions of any other Note or obligation of Borrower, if any, to Lender.

-8-

**PAYMENTS DUE UPON DEFAULT.** If the Lender declares that I am in default, I must immediately pay the full amount of all unpaid principal, interest, other amounts due on the Note and this Mortgage and the Lender's costs of collection and reasonable attorney fees.

**LENDER'S RIGHTS UPON DEFAULT.** If the Lender declares that the Note and this Mortgage are in default, the Lender will have all rights given by law or set forth in this Mortgage. This includes the right to do any one or more of the following:

(a) take possession of and manage the Mortgaged Premises, including the collection of rents and profits; or

(b) have a court appoint a receiver to accept rent for the Mortgaged Premises (I consent to this); or

(c) start a court action, known as foreclosure, which will result in a sale of the Mortgaged Premises to reduce my obligations under the Note and this Mortgage; or

(d) sue for any money that I owe the Lender; or

(e) proceed against any or all Guarantors without the requirement of exhausting remedies against the Borrower; and

(f) take such other action permitted by Law in any Court of competent jurisdiction.

**NOTICES.** All notices must be in writing and personally delivered or sent by certified mail, return receipt requested, to the addresses given in this Mortgage. Address changes may be made upon notice to the other party.

**NO WAIVER BY LENDER.** Lender may exercise any right under this Mortgage or under any law, even if Lender has delayed in exercising that right or has agreed in an earlier instance not to exercise that right. Lender does not waive its right to declare that I am in default by making payments or incurring expenses on my behalf.

**EACH PERSON LIABLE.** This Mortgage is legally binding upon each Mortgagor and all who succeed to their responsibilities (such as heirs and executors). The Lender may enforce any of the provisions of the Note and this Mortgage against any one or more of the Mortgagors who sign this Mortgage.

**NO ORAL CHANGES.** This Mortgage can only be changed by an agreement in writing signed by both the Mortgagor and the Lender.

**ABSOLUTE ASSIGNMENT OF LEASES AND RENTS.** Upon cancellation or Release of Part of Mortgaged Premises, the Absolute Assignment of Leases and Rents is deemed to be canceled or released, whichever is applicable.

**JURY TRIAL WAIVER.** MORTGAGOR AND LENDER HEREBY WAIVE ANY AND ALL RIGHTS TO A TRIAL BY JURY IN ANY ACTION BASED UPON, OR ARISING OUT OF, OR IN CONJUNCTION WITH THIS MORTGAGE

-9-

OR THE NOTE AND OTHER LOAN DOCUMENTS EXECUTED IN CONNECTION HEREWITH, OR THE OBLIGATIONS AND INDEBTEDNESS SECURED BY SAME.

**FINANCIAL STATEMENTS.** The Mortgagor and Guarantors shall supply the Lender with financial statements and copies of tax returns within one hundred twenty (120) days after the end of each fiscal year.

**RELEASE OF PART OF MORTGAGED PREMISES.** Borrower shall be entitled to a Release of Part of Mortgaged Premises. Upon the sale of each of the condominium units, Borrower shall make a payment in the amount of $347,500.00 per unit which will be applied to the outstanding principal balance of the loan.

**MODIFICATIONS.** This Mortgage is subject to "Modification" as that term is defined in N.J.S.A. 46:9-8.1, but this provision in no manner obligates the Lender to make any modifications.

**INDEMNIFICATION.** The Borrower hereby indemnifies the Lender and its directors, officers, employees, agents and controlling persons, against any and all claims, losses, damages, liabilities, costs and expenses (including for example, fees and expenses of counsel and expert witnesses) which may be incurred by any of them in connection with any investigation, litigation or other proceeding relating to this credit facility or the use of proceeds of this credit facility, except for their own gross negligence or willful misconduct. The indemnification herein set forth is in addition to any other indemnification or obligation which Borrower otherwise has as specifically set forth in this document or any other loan document.

**COPY RECEIVED.** I ACKNOWLEDGE RECEIPT OF A TRUE COPY OF THIS MORTGAGE WITHOUT CHARGE.

**SIGNATURES.** I agree to the terms of this Mortgage. If the Borrower is a corporation, its proper corporate officers sign and its corporate seal is affixed.

WITNESS:                          DWEK PROPERTIES, L.L.C., a New
                                  Jersey limited liability company


_____        By: _____
MICHAEL V. BENEDETTO, ESQ.           SOLOMON DWEK, Sole Member

-10-

82433283 (132491.778)

STATE OF NEW JERSEY:
                    :SS:
COUNTY OF MIDDLESEX:

    I CERTIFY that on May 20, 2004, before me, the
subscriber, an Attorney at Law of the State of New Jersey
personally appeared SOLOMON DWEK, Sole Member, of DWEK
PROPERTIES, L.L.C., the New Jersey Limited Liability Company,
named in the within instrument, and thereupon, he acknowledged
that he signed, sealed and delivered the same as his act and
deed and as the act and deed of the Company, for the purposes
therein expressed.

                        _____
                        MICHAEL V. BENEDETTO
                        Attorney at Law of New Jersey

-12-

82432102 (151891.978)

# EXHIBIT "C"

ASSUMPTION OF MORTGAGE LIABILITY AGREEMENT

THIS ASSUMPTION OF MORTGAGE LIABILITY AGREEMENT, made this 15 day of February, 2006, by and among:

DWEK PROPERTIES, LLC, a New Jersey Limited Liability Company, having an address at 200 Wall Street, PO Box 98, West Long Branch, NJ 07764 (the "Borrower" or "Mortgagor");

AND:

AMBOY NATIONAL BANK, a national banking association, having its principal office at 3590 Route 9 South, Old Bridge, New Jersey 08857 (the "Mortgagee");

AND:

DWEK INCOME, LLC, a New Jersey Limited Liability Company, having an address at 200 Wall Street, PO Box 98, West Long Branch, NJ 07764 (the 'Buyer");

## R E C I T A L S

A.   The Mortgagee is the owner and holder of a certain Mortgage and Security Agreement dated May 20, 2004 (the "Mortgage") on real property located in the City of Long Branch, County of Monmouth and State of New Jersey (the "Mortgaged Premises") and legally described in the Mortgage made by DWEK PROPERTIES, LLC, a New Jersey Limited Liability Company (the "Mortgagor") to Mortgagee and recorded in the Monmouth County Clerk's Office (the "Clerk's Office") on June 4, 2004 in Mortgage Book OR-8368 at page 7929, to secure a loan evidenced by a Note dated May 20, 2004 in the original principal amount of $1,650,000.00 (the "Note") from DWEK PROPERTIES, LLC, a New Jersey Limited Liability Company (the "Borrower") and interest as therein set forth.  The Mortgage secures the indebtedness evidenced by the Note in the amount of ONE MILLION SIX HUNDRED

-2-

FIFTY THOUSAND AND 00/100 ($1,650,000.00) DOLLARS together with interest and other charges, if any.

B.   The Mortgage and Security Agreement dated May 20, 2004 is herein referred to as the "Mortgage". The indebtedness evidenced by the Note is herein sometimes referred to as the "Loan". The Note, Mortgage, the Financing Statements and all other documents evidencing the Loan and delivered to Mortgagee prior to the date hereof are hereinafter collectively referred to as the "Loan Documents".

C.   The Mortgagor has sold and transferred all of its legal title to the Mortgaged Premises to the Buyer and the Mortgagee has consented to the transfer of title to the Mortgaged Premises to the Buyer subject to the lien of the Mortgage.

D.   The parties acknowledge and agree that the present outstanding aggregate principal balance due on the Note secured by the Mortgage is $1,616,039.41, as of February 15, 2006 plus interest accruing after said Note plus costs, claims, interest and charges to which the Mortgagee is entitled under the Note and Loan Documents. In consideration of Mortgagee's execution of this Assumption of Mortgage Liability Agreement (the "Agreement"), Buyer has agreed, _inter alia_ to assume the liability of Dwek Properties, LLC, a New Jersey Limited Liability Company, under the Loan Documents (hereinafter referred to as the "Assumed Obligations").

E.   The Loan Documents, this Agreement and any other document evidencing or securing the Loan are hereinafter referred to as the "Loan Documents." The terms and provisions of the Loan Documents are incorporated herein by this reference thereto as if the same were set forth at length herein.

-3-

F.    In consideration of the execution of this Agreement by the Mortgagee, the Buyer is willing to assume the payment of the Assumed Obligations of the Mortgagor in accordance with the terms of the Note and the Loan Documents, such assumption having been agreed to (i) by and between the Mortgagor and the Buyer as partial consideration for the conveyance as aforesaid of the Mortgaged Premises by Mortgagor to the Buyer and (ii) by and between the Mortgagee and the Buyer as partial consideration for the Mortgagee's willingness to enter into this Agreement.

NOW THEREFORE, in consideration of the sum of Ten and 00/100ths ($10.00) Dollars paid by the Mortgagee to the Mortgagor and the Buyer, the receipt of which is hereby acknowledged, as well as the mutual covenants of the parties contained herein and for other good and valuable consideration, the adequacy and receipt of which is acknowledged by the parties hereto, the parties covenant and agree as follows:

1.    The Recitals set forth above are an integral part of this Agreement with like effect as if set forth in the body of this Agreement.

2.    The Buyers hereby covenant, promise and agree to: (a) pay the Assumed Obligations of Mortgagor, at the time, in the manner and in all respects as provided in the Note and the Loan Documents, (b) perform each and all of the covenants, agreements and obligations in the Loan Documents to be performed by Mortgagor therein at the time, in the manner and in all respects as therein provided, (c) be bound by each and all of the terms and provisions of the Note, the Mortgage and other Loan Documents as though the Note, the Mortgage and other Loan Documents had originally been made, executed and delivered by

the Buyer, and (d) acknowledge that the liability of each of the Buyer's shall be joint, several and unconditional.

3. All of the Property shall remain in all respects subject to the liens, charges or encumbrances of the Mortgage, the Lease Assignment and the Financing Statements, and nothing herein contained, and nothing done pursuant hereto, shall affect or be construed to affect the Note, the liens, charges or encumbrances of, or warranty of title in, or conveyance effected by, the Mortgage or any other Loan Document or the priority thereof over other liens, charges, encumbrances or conveyances or to release or affect the liability of any party or parties whosoever, who may now or hereafter be liable under or on account of the Note, the Mortgage and/or the Loan Documents, nor shall anything herein contained or done in pursuance hereof affect or be construed to affect any other security or instrument, if any, held by the Mortgagee as security for or evidence of the aforesaid indebtedness, as more particularly set forth in the Loan Documents.

4. The Mortgagor hereby waives and relinquishes any and all rights or claims against Mortgagee for any money which may have been deposited or which may be on deposit with Mortgagee for the payment of real estate taxes and assessments or hazard insurance premiums.

5. The Mortgagee does hereby irrevocably and unconditionally assign, transfer and set over unto the Buyer all of the Mortgagor's, right, title and interest in and to all escrow amounts deposited with the Mortgagee, if any.

6. The word "Note" as used herein shall be construed to mean the Note dated May 20, 2004 in the amount of $1,650,000.00 , as well as any extensions or modification thereof or any other instrument evidencing the indebtedness

-5-

herein referred to and to include such instrument, whether
originally made and delivered to Mortgagee or assigned and/or
endorsed to Mortgagee; and the word "Mortgage" shall be
construed to mean the mortgage, deed of trust, loan deed or
other instrument securing the indebtednesses herein referred to
and to include such instrument, whether originally made and
delivered to the Mortgagee or purchased by the Mortgagee and now
owned by the Mortgagee by virtue of an assignment to it.

IN WITNESS WHEREOF, this instrument has been executed
by the parties herein in manner and form sufficient to bind them
as of the day and year first above written.

THE BUYER HEREBY ACKNOWLEDGES THAT IT HAS RECEIVED A
TRUE COPY OF THIS INSTRUMENT WITHOUT CHANGE.

WITNESS:

JASON S. RUBIN, ESQ.

MORTGAGOR:
DWEK PROPERTIES, LLC, a New Jersey
Limited Liability Company

BY: _____
SOLOMON DWEK
Managing Member

ATTEST:

By: _____
Eileen Roemer, Assistant Vice President

WITNESS:

JASON S. RUBIN, ESQ.

MORTGAGEE:
AMBOY NATIONAL BANK

By: _____
Kenneth Greco
Vice President

BUYER:
DWEK INCOME, LLC, a New Jersey Limited Liability Company

BY: _____
SOLOMON DWEK
Managing Member

-6-

A2668356 (14270Z.034)

STATE OF NEW JERSEY:
:SS:
COUNTY OF MONMOUTH:

I CERTIFY that on February 15, 2006, before me, the subscriber, an Attorney at Law of the State of New Jersey personally appeared SOLOMON DWEK, Managing Member, of DWEK PROPERTIES, the New Jersey Limited Liability Company, named in the within instrument, and thereupon, he acknowledged that he signed, sealed and delivered the same as his act and deed and as the act and deed of the company, for the purposes therein expressed.

MICHAEL V. BENEDETTO
Attorney at Law of New Jersey


STATE OF NEW JERSEY:
:SS:
COUNTY OF MONMOUTH:

I CERTIFY that on February 15, 2006, before me, the subscriber, an Attorney at Law of the State of New Jersey personally appeared SOLOMON DWEK, Managing Member, of DWEK INCOME, LLC, the New Jersey Limited Liability Company, named in the within instrument, and thereupon, he acknowledged that he signed, sealed and delivered the same as his act and deed and as the act and deed of the company, for the purposes therein expressed.

MICHAEL V. BENEDETTO
Attorney at Law of New Jersey


STATE OF NEW JERSEY :
:SS.
COUNTY OF MIDDLESEX :

I CERTIFY that on February 15th, 2006, KENNETH GRECO personally came before me and this person acknowledged under oath, to my satisfaction, that:

(a) this person signed, sealed and delivered the attached document as Vice President of Amboy National Bank, the corporation named in this document; and

(b) this document was signed and made by the corporation as its voluntary act and deed by virtue of authority from its Board of Directors.

NOTARY PUBLIC OF NEW JERSEY

MICHELE M. METZ
Notary Public of New Jersey
My Commission Expires 4/20/2010

-7-

# EXHIBIT "D"

SUPERIOR COURT OF NEW JERSEY
MONMOUTH VICINAGE
FILED

JAN 31 2007

ALEXANDER D. LEHRER,
JSC

PNC BANK, NATIONAL ASSOCIATION,
a national banking association,

               Plaintiff,

     v.

SOLOMON DWEK, an individual;
SEM REALTY ASSOCIATES, LLC, a
limited liability company of
the State of New Jersey; and
CORBETT HOLDINGS II, LLC, a
limited liability company of
the State of New Jersey; ABC
ENTITIES 1-25 (representing
presently unknown entities),

           Defendants.

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
MONMOUTH COUNTY

Docket No.: MON-C-133-06

CIVIL ACTION

ORDER PERMITTING EXTENSION TO
MARCH 31, 2007 OF INTEREST-ONLY
PAYMENTS ON CERTAIN LOANS HELD
BY AMBOY NATIONAL BANK

     THE COURT having considered the recommendation of the Court-appointed Fiscal Agent/Trustee in Liquidation, Donald M. Lomurro, Esq.; and the Court having entered an Order on August 21, 2006 permitting interest-only payments on certain loans held by Amboy National Bank ("Amboy"); and said Order having permitted interest-only payments on the loans through October 30, 2006; and the Court having entered a subsequent Order on November 17, 2006 permitting the extension to January 31, 2007 of interest-only payments on certain loans held by Amboy National Bank; and the Fiscal Agent/Trustee in Liquidation having conferred with counsel for Amboy, Michael Kahme, Esq.; and counsel for Amboy having proposed an extension to March 31, 2007 of interest-only payments on the loans previously extended to January 31, 2007 as well as certain additional loans made by Amboy to Solomon Dwek and/or entities in which Solomon Dwek has a legal or equitable interest; and for good

Page -1-

cause having been shown;

IT IS on this ___31st___ day of _January_, 2007;

ORDERED as follows:

1. Upon maturity of the following loans with Amboy, interest-only payments may be made on the individual notes through March 31, 2007, on which date all remaining amounts owed under the loans shall be due and payable to Amboy:

| Borrower | Note # | Maturity | Property |
|---|---|---|---|
| Dwek Income, LLC | 926100 | 05/20/06 | 1001 Norwood Avenue |
| Dwek Properties, LLC | 929300 | 06/08/06 | 1.39 acres Route 9, Freehold |
| Dwek Properties, LLC | 929700 | 06/08/06 | 264 Hope Road, Tinton Falls |
| Dwek Properties, LLC | 933600 | 06/18/06 | 213 Route 35; 207 Route 35 |
| Dwek Income, LLC | 933400 | 06/24/06 | 60 West Main St., Bergenfield |
| Neptune Gas, LLC | 938400 | 07/23/06 | 1331 10th Avenue |
| Dwek Properties, LLC | 938600 | 07/23/06 | 1407 10th Avenue |
| Neptune Gas, LLC | 940300 | 07/23/06 | 1329 10th Avenue |
| Dwek Properties, LLC | 942900 | 08/24/06 | 404 Crosby Avenue |
| Dwek Properties, LLC | 943900 | 08/27/06 | 5 Ferry Road, Pennsville |
| Dwek Income, LLC | 944100 | 08/27/06 | 14 Main Street, Englishtown |
| Dwek Income, LLC | 949500 | 09/23/06 | 2318 West Road |
| Corlies Avenue Land, LLC | 889300 | 09/28/06 | 1301 Corlies Avenue |
| Dwek Homes, LLC | 949300 | 09/28/06 | 401 Crosby Avenue |
| Route 33 Medical, LLC | 950800 | 10/05/06 | 3405 Route 33 |
| Dwek Homes, LLC | 956300 | 11/02/06 | 9 homes in Lakewood[1] |
| Dwek Branches, LLC | 965300 | 12/14/06 | 2007 Route 35, Wall |
| Dwek Homes, LLC | 968700 | 12/29/06 | 295 Oakley Avenue, Long Branch |
| Grant Avenue Estates | 968800 | 12/29/06 | 7 lots - Grant Avenue, Ocean |

---

[1]107, 110 and 152 Governors Lane, Lakewood, New Jersey; 113 Tudor Court, Lakewood, New Jersey; 1503 Malibu Court, Lakewood, New Jersey; 146 Downing Street, Lakewood, New Jersey; 163 Bristol Court, Lakewood, New Jersey; 1554 Alamitos Drive, Lakewood, New Jersey; and 335 Woodlake Manor Drive, Lakewood, New Jersey

| | | | |
|---|---|---|---|
| Dwek Homes, LLC | 974300 | 02/01/07 | 8 homes in Lakewood[2] |
| Dwek Homes, LLC | 974800 | 02/01/07 | 131 Ridge Road, Rumson |
| Dwek Income, LLC | 974900 | 02/01/07 | 26-28 Highway 35, Neptune |
| Dwek Assets, LLC | 975000 | 02/01/07 | 214-216 W. Front Street, Red Bank |
| Neptune Medical, LLC | 859400 | 02/15/07 | 2100 Highway 33, Neptune |
| Dwek Properties, LLC | 909800 | 03/03/07 | 9 Joanna Court, Ocean |
| Dwek Branches, LLC | 949900 | 03/23/07 | 226 South Broad St., Trenton |
| Dwek Income, LLC | 970500 | 01/06/07 | 323 Highway 35, Neptune |

2.    In addition to the timely payment of non-default interest on the loans identified in Paragraph 1, Amboy shall be reimbursed for out-of-pocket real estate tax payments made during the extension period on behalf of the respective borrower in accordance with the applicable loan documents;

3.    Prior to maturity of the notes identified in paragraph 1 of this Order, the borrower shall make regular payments on the notes;

4.    During the extension period, neither Solomon Dwek nor any entity in which Solomon Dwek has a legal or equitable interest shall be declared in default on any of the notes identified in paragraph 1 of this Order, provided that the interest-only payments are maintained upon maturity of the individual notes and Amboy is

---

[2]1245 Delmar Road, Lakewood, New Jersey ; 125 Clairmont Court, Lakewood, New Jersey; 178 Williamsburg Lane, Lakewood, New Jersey; 150 Coventry Drive, Lakewood, New Jersey; 1111 E. County Line Road, Lakewood, New Jersey; 627 River Avenue, Lakewood, New Jersey; 1745 Ridge Avenue, Lakewood, New Jersey; and 625 River Avenue, Lakewood, New Jersey.

reimbursed for the real estate tax payments made by Amboy on behalf of the respective borrower during the extension period;

5.    Regular payments on the following Notes shall be made from the Second Trust Account of Lomurro, Davison, Eastman & Munoz, P.A. for Fiscal Agent Donald M. Lomurro, to the extent sufficient funds are available in the account:

| Borrower | Note # | Maturity | Property |
|---|---|---|---|
| Dwek Properties, LLC | 943900 | 08/27/06 | 5 Ferry Road, Pennsville |
| Dwek Homes, LLC | 949300 | 09/28/06 | 401 Crosby Avenue |
| Dwek Homes, LLC | 956300 | 11/02/06 | 9 homes in Lakewood |
| Dwek Homes, LLC | 968700 | 12/29/06 | 295 Oakley Avenue Long Branch |
| Grant Avenue Estates, LLC | 968800 | 12/29/06 | 7 lots Grant Ave., Ocean |
| Dwek Homes, LLC | 974300 | 02/01/07 | 9 homes in Lakewood |
| Dwek Homes, LLC | 974800 | 02/01/07 | 131 Ridge Road, Rumson |
| Dwek Assets, LLC | 975000 | 02/01/07 | 214-216 W. Front Street, Red Bank |
| Neptune Medical, LLC | 859400 | 02/15/07 | 2100 Highway 33, Neptune |
| Dwek Properties, LLC | 908800 | 03/03/07 | 9 Joanna Court, Ocean |
| Dwek Branches, LLC | 949900 | 03/23/07 | 226 South Broad St. Trenton |

In the event there are not sufficient funds in the Second Trust Account of Lomurro, Davison, Eastman & Munoz, P.A. for Fiscal Agent Donald M. Lomurro to satisfy the regular loan payments, payment

Page -4-

shall be made by Joseph Dwek and/or Yeshuah LLC, as Joseph Dwek and/or Yeshuah LLC have claimed ownership of said entities and properties;

6.    Interest-only payments on the Notes identified in Paragraph 5 of this Order shall be made, to the extent sufficient funds are available, from the Second Trust Account of Lomurro, Davison, Eastman & Munoz, P.A. for Fiscal Agent Donald M. Lomurro, as these are entities and properties for which Joseph Dwek and/or Yeshuah LLC have claimed ownership.  If sufficient funds are not available in the Second Trust Account of Lomurro, Davison, Eastman & Munoz, P.A. for Fiscal Agent Donald M. Lomurro, interest-only payments on these notes shall be made by Joseph Dwek and/or Yeshuah LLC, pending a determination by the Court as to the ownership of these properties;

7.    Regular payments prior to maturity of the respective loans and interest-only payments on the loans identified in Paragraph 1 of this Order, which are not specifically referenced in Paragraphs 5 and 6 of this Order, shall be made from the Trust Account of Lomurro, Davison, Eastman & Munoz, P.A. for Fiscal Agent Donald M. Lomurro;

8.    The within Order modifies the August 21, 2006 and November 17, 2006 Orders of this Court permitting interest-only payments on certain loans held by Amboy to the extent that any provisions of said Orders are inconsistent with the terms of the

Page -5-

within Order; and

    9.    A copy of this Order and supporting papers shall be served on all counsel, interested parties and claimants of record within 1 day hereof by e-mail and posting same on the official web site.

 

ALEXANDER D. LEHRER, P.J.Ch.

# EXHIBIT "B"

PART III

EXHIBIT   "E"

Official Form 6D (10/06)

In re    **DWEK INCOME, LLC**                                      Case No. _____
_____
                              Debtor

# SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, indicate that by stating "a minor child" and do not disclose the child's name. See 11 U.S.C. § 112. If "a minor child" is stated, also include the name, address, and legal relationship to the minor child of a person described in Fed. R. Bankr. P 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | 14 MAIN STREET, ENGLISHTOWN, NJ | | | | | |
| Creditor #: 1 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | X | | | | | | | |
| | | | Value $           800,000.00 | | | | 881,203.79 | 0.00 |
| Account No. | | | 60 WEST MAIN STREET, BERGENFIELD, NJ | | | | | |
| Creditor #: 2 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | | | | | | | | |
| | | | Value $           900,000.00 | | | | 881,203.79 | 0.00 |
| Account No. | | | 1408 CORLIES AVE., NEPTUNE, NJ | | | | | |
| Creditor #: 3 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | | | | | | | | |
| | | | Value $           700,000.00 | | | | 59,508.00 | 0.00 |
| Account No. | | | 2318 ROUTE 38, CHERRY HILL, NJ | | | | | |
| Creditor #: 4 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | | | | | | | | |
| | | | Value $         1,800,000.00 | | | | 960,880.00 | 0.00 |
| __2__  continuation sheets attached | | | | | Subtotal (Total of this page) | | 2,342,795.58 | 0.00 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

5/01/07 8:43PM

Official Form 6D (9/06) - Cont.

In re    **DWEK INCOME, LLC**                                              Case No. _____
_____
                                    Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS
(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. | | | 26-28 HIGHWAY 35, NEPTUNE, NJ | | | | | |
| Creditor #: 5 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | | | | | | | | |
| | | | Value $           600,000.00 | | | | 335,466.00 | 0.00 |
| Account No. | | | 323 ROUTE 35, NEPTUNE, NJ | | | | | |
| Creditor #: 6 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | | | | | | | | |
| | | | Value $        1,120,000.00 | | | | 450,288.00 | 0.00 |
| Account No. | | | 501, 503, 505 HIGHWAY 35 SOUTH, NEPTUNE, NJ | | | | | |
| Creditor #: 7 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | | | | | | | | |
| | | | Value $           500,000.00 | | | | 244,080.00 | 0.00 |
| Account No. | | | 1001 Norwood Avenue, Long Branch, NJ | | | | | |
| Creditor #: 8 Amboy National Bank 3590 US Highway 9 Old Bridge, NJ 08857-2765 | | | | | | | | |
| | | | Value $        2,200,000.00 | | | | 1,513,914.76 | 0.00 |
| Account No. | | | Property Taxes | | | | | |
| Creditor #: 9 Borough of Bergenfield 198 N. Washington Avenue Bergenfield, NJ 07621 | | | 60 West Main St., Bergenfield, NJ | | | | | |
| | | | Value $                 0.00 | | | | 28,031.17 | 0.00 |

Sheet  1   of  2   continuation sheets attached to
Schedule of Creditors Holding Secured Claims

Subtotal                    2,671,789.93              0.00
(Total of this page)

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Best Case Bankruptcy

5/01/07 8:46PM

Official Form 6D (12/05) - Cont.

In re    **DWEK INCOME, LLC**                                          Case No. _____

                                      Debtor

## SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No.<br>Creditor #: 10<br>Borough of Englishtown<br>15 Main Street<br>Englishtown, NJ 07726 | | | Property Tax<br><br>14 Main Street, Englishtown, NJ<br><br><br>Value $              0.00 | | | | 5,854.76 | 0.00 |
| Account No.<br>Creditor #: 11<br>BRT Realty Trust Co.<br>60 Cutter Mill Road<br>Suite 303<br>Great Neck, NY 11021 | X | | 2nd Mortgage Wrap Loan<br><br>1001 Norwood Avenue, Long Branch, NJ<br><br>Value $        2,200,000.00 | | | | 7,000,000.00 | 0.00 |
| Account No.<br>Creditor #: 12<br>Cherry Hill Tax Collector<br>820 Mercer Street<br>Cherry Hill, NJ 08002-2698 | | | Property Taxes<br><br>2318 ROUTE 38, CHERRY HILL, NJ<br><br>Value $        1,800,000.00 | | | | 9,014.68 | 0.00 |
| Account No.<br>Creditor #: 13<br>Township of Neptune<br>25 Neptune Boulevard<br>Neptune, NJ 07753 | | | Property Tax<br><br>1406 Corlies Ave. and 501, 503, 505 Highway 35, Neptune, NJ<br><br>Value $          700,000.00 | | | | 0.00 | 0.00 |
| Account No.<br>Creditor #: 14<br>Township of Neptune - Sewer Authority<br>399 Monmouth Road<br>Oakhurst, NJ 07755-1589 | | | <br><br><br>Value $              0.00 | | | | 2,169.00 | 0.00 |

Sheet __2__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

|  | Subtotal<br>(Total of this page) | 7,017,038.42 | 0.00 |
|---|---|---|---|
|  | Total<br>(Report on Summary of Schedules) | 12,031,603.93 | 0.00 |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

EXHIBIT    "F"

FORM 10 (Official Form 10) (12/05)

| United States Bankruptcy Court, District of New Jersey (Newark) | PROOF OF CLAIM |
|---|---|

Name of Debtor: **JEMAR ENTERPRISES, LLC**  Case Number: **07-22633 (KCF)**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (The person or other entity to whom the debtor owes money or property):

**BRT REALTY TRUST**

Name and address where notices should be sent:

Herrick, Feinstein LLP
One Gateway Center
Newark, NJ 07102
Attn: John M. August
Telephone number: (973) 274-2000

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check box if you have never received any notices from the bankruptcy court in this case.

☐ Check box if the address differs from the address on the envelope sent to you by the court.

*This space is for Court Use Only*

Account or other number by which creditor identifies debtor:

Check here if this claim ☐ replaces ☐ amends a previously filed claim, dated: _____

| 1. Basis for Claim | |
|---|---|
| ☐ Goods sold | ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a) |
| ☐ Services performed | ☐ Wages, salaries, and compensation (Fill out below) |
| ☒ Money loaned | Last four digits of SS#: _____ |
| ☐ Personal injury/wrongful death | Unpaid compensation for services performed |
| ☐ Taxes | from _____ to _____ |
| ☐ Other Personal Guaranty | (date)        (date) |

2. Date debt was incurred: **Various (see attached)**

3. If court judgment, date obtained:

**4. Classification of Claim.** Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case was filed. See reverse side for important explanations.

**Unsecured Nonpriority Claim** $ _____

☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**Secured Claim.**

☒ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
☒ Real Estate    ☐ Motor Vehicle    ☐ Other

Value of Collateral: $ unknown

Amount of arrearage and other charges at time case was filed included in secured claim above, if any: $ see attached

**Unsecured Priority Claim.**

☐ Check this box if you have an unsecured priority claim
Amount entitled to priority $ _____
Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries, or commissions (up to $10,000,*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4)
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5)

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties of governmental units – 11 U.S.C. § 507(a)(8).

☐ Other–Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**5. Total Amount of Claim at Time Case Filed:** $ _____ (unsecured) | not less than $3,044,828.83 (secured) | _____ (priority) | $ _____ (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☒ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

6. **CREDITS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

7. **Supporting Documents:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.

8. **Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim.

*This Space is for Court Use Only*

Date:
December 19, 2007

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):

By: _[signature]_

Mark H. Lundy
Senior Vice President

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571.

## ADDENDUM TO PROOF OF CLAIM
## OF BRT REALTY TRUST

1.  On or about December 22, 2005, BRT Realty Trust ("BRT") made a loan to Jemar Enterprises, LLC, Corbett Holdings I, LLC, 1111 Eleventh Avenue, LLC, Dwek Properties, LLC, Belmar Gas, LLC, Dwek Assets, LLC, Route 33 Medical, LLC, Waterview Offices, LLC, Dwek Apartments, LLC, WLB Highway, LLC, Berkeley Heights Gas, LLC, Myrtle Avenue Land, LLC and 170 Broad Street, LLC (collectively, the "Multi-Property Borrowers") secured by a mortgage on the real property owned by the Multi-Property Borrowers (the "Multi-Property Loan"). (A copy of the Note, Mortgage, Assignment of Leases and Rents, and Guaranty are attached hereto as Exhibit "A").

2.  As of June 11, 2007, the payoff on the Multi-Property Loan was not less than $6,044,928.83 (as more particularly set forth in Exhibit "B").

3.  BRT reserves the right to amend and supplement this proof of claim.

BRT Realty Trust

By: _____

Mark H. Lundy
Senior Vice President

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 AND 3571.

HF 3910663 v.1 #01819/0475 12/19/2007 11:22 AM

# EXHIBIT "G"

## The Otteau Appraisal Group, Inc.

Administrative Offices
15 Brunswick Woods Drive
East Brunswick, NJ 08816
732/238-7600
Fax  732/238-1113

July 15, 2006

Peter W. Davis, Sr. Vice President
Amboy National Bank
P.O. Box 1076
Old Bridge, NJ 08857

RE:    8 Townhouse Style Condominiums (11,238 sf)
       1001 Norwood Avenue, Units #1 - #8
       Block 8, Lots 25.01 – 25.08
       Long Branch City, Monmouth County

Dear Mr. Davis:

In accordance with your request, I submit my summary appraisal report of the above referenced property. I have carefully inspected the property and have made a thorough study, investigation and analysis of all matters important to the estimation of its market value.

The purpose of the appraisal is to estimate the as is market value of the subject property, in Condominium Fee. Market Value is defined for purposes of this report as:

The most probable price which a property should bring in a competitive open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently and knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- buyer and seller are typically motivated;
- both parties are well informed or well advised and each acting in what they consider their best interests;
- a reasonable time is allowed for exposure in the open market;
- payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
- the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

Source: 12 C.F.R. Part 34.42(g); 55 Federal Register 34696, August 24, 1990, as amended at 57 Federal Register 12202, April 9, 1992; 59 Federal Register 29499, June 7, 1994)

This report includes the pertinent data secured in my investigation, any assumptions and limiting conditions, as well as the exhibits and the details of the processes used to arrive at my conclusions of value.

It is my considered opinion that the as is value of the property as of June 30, 2006, is:

### AUTHORITATIVE REAL ESTATE VALUATION & CONSULTATION

**TWO MILLION THREE HUNDRED THOUSAND DOLLARS**
**($2,300,000.00)**

In accordance with prior agreement between the client and the appraiser, this report is a limited scope appraisal in that certain allowable departures from specific guidelines of the UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICES (USPAP) were invoked. Specifically, the client has instructed that a prior appraisal of the subject property be updated, without a re-inspection of the dwelling. The reader of this report is advised that this appraisal has been based upon the extraordinary assumption that the interior of the building has not changed since the prior inspection date.

The intended user of this report is warned that the reliability of the value conclusion provided may be impacted to the degree there is departure from specific guidelines of USPAP.

The final value estimate of this appraisal analysis assumes that the subject property is free from any adverse environmental contamination and that no toxic materials are present within the soil of the subject property.

I do hereby represent that I have the knowledge and experience required to perform this appraisal competently and that I have no present nor contemplate future interest or bias with respect to the subject matter of this appraisal report or the parties involved.

Respectfully submitted,

Christopher J. Otteau
SLRREA, #42RC00170600

Niels V. Guldbjerg, Vice President
IFAS, SCGREA, #42RG00128000
*Acting as review appraiser only*

CJO/mt

*THE OTTEAU APPRAISAL GROUP, INC.*

# SUMMARY APPRAISAL REPORT

8 Townhouse Style Condominiums (11,235 sf)
1001 Norwood Avenue, Units #1 - #8
Long Branch City, Monmouth County

## PREPARED FOR:

Peter W. Davis, Sr. Vice President
Amboy National Bank
P.O. Box 1076
Old Bridge, NJ 08857

## PREPARED BY:

The Otteau Appraisal Group, Inc.
Brunswick Woods Office Park
15 Brunswick Woods Drive
East Brunswick, NJ 08816

*THE OTTEAU APPRAISAL GROUP, INC.*

# TABLE OF CONTENTS

*INTRODUCTION*

Letter of Transmittal ........................................................................................................... i
Title Page ............................................................................................................................ ii
Table of Contents ............................................................................................................... iii

*DESCRIPTION, ANALYSIS AND CONCLUSIONS*

Salient Facts and Conclusions........................................................................................... 1
Subject Property Location Map .......................................................................................... 2
Photographs of Subject Property ....................................................................................... 3
Intended Users of the Appraisal......................................................................................... 5
Intended Use of the Appraisal............................................................................................ 5
Identification of Property .................................................................................................... 5
Real Property Interest Appraised ....................................................................................... 5
Definition of Market Value.................................................................................................. 6
Date of Value Estimate ...................................................................................................... 6
Scope of Work .................................................................................................................... 6
Extraordinary Assumptions and Hypothetical Conditions .................................................. 7
Tax and Assessment Analysis ........................................................................................... 7
History of Property.............................................................................................................. 8
Area Analysis..................................................................................................................... 8
Neighborhood Analysis ...................................................................................................... 12
Zoning Analysis ................................................................................................................. 13
Site Analysis ...................................................................................................................... 14
Improvement Analysis........................................................................................................ 16
Building Sketch................................................................................................................... 18
Highest and Best Use ........................................................................................................ 19
Overview of the Appraisal Process .................................................................................... 20
Sales Comparison Approach .............................................................................................. 21
Cost Approach.................................................................................................................... 31
Income Approach................................................................................................................ 32
Reconciliation and Final Value Estimate ............................................................................ 39
Reasonable Exposure Time................................................................................................ 40
Assumptions and Limiting Conditions ................................................................................ 41

*CERTIFICATION OF THE APPRAISER* ........................................................................... 42

*QUALIFICATIONS OF THE APPRAISER*........................................................................... 43

*THE OTTEAU APPRAISAL GROUP, INC.*

f

# SALIENT FACTS AND CONCLUSIONS

| | |
|---|---|
| Location: | 1001 Norwood Avenue, Units 1-8<br>Long Branch City<br>Monmouth County |
| Block/Lot: | Block 8, Lots 25.01 – 26.08 |
| Real Property Interest Appraised: | Condominium Fee |
| Date of Report: | July 15 , 2006 |
| Effective Date of Valuation: | June 30, 2006 |
| Property Use as of Valuation Date: | 8 townhouse style condominiums |
| Highest and Best Use*:<br>*Basis for market value estimate | 8 townhouse style condominiums |
| Land Area: | 106.08' x 179.51' |
| Building Area: | 11,235 square feet |
| Utilities: | All public utilities available |
| Zoning: | R-1, One-Family Residential |
| Market Value Estimate: | $2,300,000 |

*THE OTTEAU APPRAISAL GROUP, INC.*

2

## SUBJECT PROPERTY LOCATION MAP



THE OTTEAU APPRAISAL GROUP, INC.

3

| Borrower: Darid Koratax LLC | | File No.: 00050138 |
|---|---|---|
| Property Address: 1003 Norwood Avenue | | Case No.: n/a |
| City: Long Branch City | State: NJ | Zip: 07740-4557 |
| Lender: Amboy National Bank / cd5 | | |



Front View of Subject Property



Front View of Subject Property

**THE OTTEAU APPRAISAL GROUP, INC.**

4

| Borrower: Dusek Homes LLC | File No: 06050139 | |
|---|---|---|
| Property Address: 1001 Norwood Avenue | Case No.: n/a | |
| City: Long Branch City | State: NJ | Zip: 07740-4557 |
| Lender: Amboy National Bank (cb) | | |



Subject Property Street Scene

*THE OTTEAU APPRAISAL GROUP, INC.*

6

## INTENDED USERS OF THE APPRAISAL

The intended user of the appraisal is the client, Amboy National Bank. Any reliance upon this report by anyone other than the client is unintended

## INTENDED USE OF THE APPRAISAL

The intended use of the appraisal is to provide the client, Amboy National Bank, with a value estimate for the subject property for internal management decision purposes.

This report should not be relied upon for an unintended use or by any unintended users as it may not contain sufficient information for adequate understanding by those unaccustomed to reading summary reports, and thus, to rely upon this report may not serve the needs of other intended uses not specifically listed.

## IDENTIFICATION OF PROPERTY

The subject property is commonly known as 1001 Norwood Avenue, Units 1 – 8, Long Branch City, Monmouth County, New Jersey.   It consists of a 108.06' x 179.52' tract of land, improved with a 11,235 square building divided into 8 attached townhouse style condominiums, each having two stories and a basement, and associated site improvements.  The current owner of record is Dwek Income LLC.

## REAL PROPERTY INTEREST APPRAISED

The property rights appraised within this report consist of the condominium fee within the subject property.

The condominium fee is defined as follows:

> A form of fee ownership of whole units or separate portions of multi unit buildings that provides for formal filing and recording of a divided interest in real property.

Source:  The Appraisal of Real Estate, Fourth Edition, published by the Appraisal Institute 2002,

**THE OTTEAU APPRAISAL GROUP, INC.**

6

page. 59

## DEFINITION OF MARKET VALUE

Market Value is defined for purposes of the report as:

"The most probable price which a property should bring in a competitive open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently and knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

- buyer and seller are typically motivated;
- both parties are well informed or well advised and each acting in what they consider their best interests;
- a reasonable time is allowed for exposure in the open market;
- payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and
- the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."

Source: 12 C.F.R. Part 34.42(g): 55 *Federal Register* 34696, August 24, 1990, as amended at 57 *Federal Register* 12202, April 9, 1992; 59 *Federal Register* 29499, June 7, 1994)

## DATE OF VALUE ESTIMATE

The date of this appraisal report is July 28, 2006, which identifies when the appraisal valuation analysis and report were prepared. The effective valuation date of the subject property is based on the date of physical inspection which occurred on June 30, 2006.

## SCOPE OF WORK

The scope of the appraisal includes inspecting the subject property, considering market trends, collecting and analyzing pertinent data, developing a conclusion regarding its estimated value and reporting my findings in this summary appraisal report. Real estate professionals such as brokers, assessors and municipal officials in and around the subject municipality were consulted in my research. Jessica L. Curcio has provided research and report writing assistance to the

*THE OTTEAU APPRAISAL GROUP, INC.*

7

person(s) signing this report.

While the appraiser has performed a complete inspection of the property, it should be understood that we are not experts in such matters as soils, structural engineering, hazardous waste, environmental assessment, etc., and no warranty is given as to these elements. Similarly, the appraiser is not a home inspection or structural engineer and has therefore assumed the electrical, mechanical, plumbing, roofing and HVAC systems to be adequate and in normal operating order at the time of inspection. Further, the appraiser has performed a surface inspection only and has not inspected any scuttle attic areas or crawl basements as this exceeds the normal scope of work for appraisal purposes. Accordingly, this appraisal has been developed based upon the assumption that problems do not exist in these areas. The Intended User is advised to have qualified experts in these fields perform an inspection of the subject property with the final estimate of value set forth herein being subject to their findings.

In developing a value estimate for the subject property, the appraiser has considered the application of the Sales Comparison Approach, Cost Approach and Income Approach. The applicability of these relative to the Intended Use of the appraisal, and their respective methodologies is discussed subsequently in this report.

This summary appraisal report is a brief recapitulation of the appraiser's data, analysis and conclusions. Supporting documentation is retained in the appraiser's file.

## EXTRAORDINARY ASSUMPTIONS AND HYPOTHETICAL CONDITIONS

This appraisal has been prepared subject to the following:

Property is subject to the hypothetical condition that the property's condition is the same as it's last appraisal, which occurred on January 14, 2004.

## TAX AND ASSESSMENT ANALYSIS

According to the official records of the Monmouth County Board of Taxation, the subject property is legally described as Block 8, Lots 25.01, 25.02, 25.03, 25.04, 25.05, 25.06, 25.07 & 25.08, Long Branch City, Monmouth County, New Jersey.

*THE OTTEAU APPRAISAL GROUP, INC.*

8

**2005 Assessments:**

| | | |
|---|---|---|
| Land: | $ | 840,000.00 |
| Improvements: | $ | 610,700.00 |
| Total: | $ | 1,450,000.00 |
| Taxes | $ | 34,149.47 |

Utilizing the 2005 equalization ratio of 66.89%, the equalized tax value for the subject property was $2,167,738.07. Based on the value estimate contained within this appraisal analysis, current assessments appear reasonable.

## HISTORY OF PROPERTY

| | |
|---|---|
| Last Transfer of Title: | May 20, 2004 |
| Grantor: | Norwood Elberon Associates |
| Grantee: | Dwek Income, LLC |
| Consideration: | $ 2,200,000 |
| Recording Information: | |
| Date: | June 4, 2004 |
| Book: | 8368 |
| Page: | 9443 |

## AREA ANALYSIS
# Monmouth County

### Description of Area

Monmouth is New Jersey's sixth largest county and encompasses approximately 472 square miles of land and 58 square miles of water in the east-central portion of the state. The county is bordered by Raritan Bay and



Sandy Hook on the north, by the counties of Mercer and Middlesex on the west, and Burlington and Ocean on the south. The Atlantic Ocean forms its eastern boundary. Monmouth County includes white sandy beaches, rich farmlands, rolling wooded hills, wetlands rich in wildlife, and

*THE OTTEAU APPRAISAL GROUP, INC.*

9

lakes and streams of every size. Monmouth County is situated between two major metropolitan areas—New York City and Philadelphia. The county is in central New Jersey and is commonly referred to as an "outer ring" county of the New York Metropolitan Region. This strategic and prestigious location along with easy access to major highways, such as the Garden State Parkway and Route 18, make Monmouth County an extremely desirable place to live and work. Monmouth County has become a hub for the telecommunications industry and is home to a growing number of dot-com companies. The county has long been a technology center because of the large presence of AT&T and Bellcore (now Telcordia Technologies) in Middletown, and the U.S. Army Communications- Electronics Command at Fort Monmouth. Fueled by the growth in the number and size of technology-related companies and new companies being formed by employees leaving AT&T, and more recently Lucent Technologies, the county will be a high-tech growth area for years to come.

*THE OTTEAU APPRAISAL GROUP, INC.*

10

| | | |
|---|---|---|
| Population, 2000 Census | 818,201 | 8,414,350 |
| Population, July 2006 estimate (Census Current) | 800,209 | 8,209,390 |
| Population percent change, 1990/2000 Census | 1.2% | 8.9% |
| Percent White population, 2000 Census¹ | 61.4% | 72.6% |
| Percent Black population, 2000 Census¹ | 8.7% | 13.8K |
| Percent American Indian, Eskimo, or Aleut pop, 2000 Census¹ | 0.1% | 0.2% |
| Percent Asian, 2000 Census¹ | 4.0% | 3.7% |
| Percent Hispanic population, 2000 Census (persons can be of any race) | 8.2% | 13.9% |
| Male population, 2000 Census | 398,366 | 4,082,813 |
| Female population, 2000 Census | 318,493 | 4,331,537 |
| Percent population under 18 years old, 2000 Census | 30.1% | 24.6% |
| Percent population 65 years old and over, 2000 Census | 12.6% | 13.3% |
| High school graduates or higher, 25 years and over (%), 2000 Census | 87.9% | 62.1% |
| Bachelors graduate or higher, 25 years and over (%), 2000 Census | 34.6% | 39.8% |
| Homeownership rate (%), 2000 Census | 74.6% | 88.8% |
| Single family homes (number), 2000 Census | 193,314 | 2,700,926 |
| Households, 2000 Census | 224,286 | 3,056,846 |
| Persons per household, 2000 Census | 2.7 | 2.63 |
| Family households, 2000 Census² | 180,229 | 2,149,920 |
| Per capita income, 2000 Census | $31,149 | $27,006 |
| Median household money income, 2000 Census | $66,371 | $55,189 |
| Persons below poverty (%), 2000 Census | 6.3% | 8.6% |
| Related children below poverty (%), 2000 Census | 7.5% | 10.8% |
| | | |
| Private sector establishments, 2003 | 19,108 | 239,263 |
| Private sector employment by establishment, 2003 | 326,663 | 3,254,774 |
| Private sector employment, percent change 1999-2003 | 54.3% | 13.9% |
| Labor Force (2004 annual average) | 303,430 | 4,200,000 |
| Employed Residents (2004 annual average) | 309,130 | 4,178,200 |
| Unemployed Residents (2004 annual average) | 14,500 | 211,800 |
| Unemployment Rate (%) (2004 annual average) | 4.4% | 4.6% |
| Manufacturers shipments ($1000), 2002 | 12,088,692 | 190,286,972 |
| Retail sales ($1000), 2002 | 13,726,630 | 313,159,653,650 |
| Retail sales per capita, 2002 | $15,865 | $11,810 |
| Minority-owned firms, 1997 | 4,863 | 193,205 |
| Women-owned firms, 2002 | 14,617 | 165,193 |
| Housing units authorized by building permits, 2004 | 2,638 | 36,988 |
| Federal funds and grants ($1000), 2004 | $6,296,847 | $65,284,360 |
| | | |
| Land area (square miles) | 472 | 7,419 |
| Persons per square mile, 2000 Census | 1,804 | 1,134 |
| Metropolitan Area | Metropolitan Division, NJ PMSA | |

Sources:
Population & Demographic Facts retrieved from the 2000 Census of Population and Housing.

Business and Industry Facts derived from NJ Department of Labor and Workforce Development, 2002 and 1997 Economic Census, U.S. Bureau of the Census, Manufacturing and Construction Division, and Consolidated Federal Funds Report.
Geographic Facts derived from the 2000 Census of Population and Housing, US Office of Management and Budget
PMSA stands for Primary Metropolitan Statistical Area.
¹ Based on those who identified only one race in Census 2000 as a percent of total population
² Family households consist of at least two persons who are related by birth, marriage or adoption.

**THE OTTEAU APPRAISAL GROUP, INC.**

11

The subject property is located within the City of Long Branch, which is situated at the eastern portion of Monmouth County. An overview of the subject municipality is presented below:

**Long Branch City**        **Monmouth County**

THE OTTEAU APPRAISAL GROUP, INC.

12

## NEIGHBORHOOD ANALYSIS

The subject property is located at the northeast corner of the intersection of Norwood Avenue, also known as Route 71, and North Lincoln Avenue in southwestern Long Branch City. Norwood Avenue is the boundary dividing Long Branch from Ocean Township. This location is two blocks north of the Deal Borough boundary, and is approximately 5 blocks west of the Atlantic Ocean beaches. Long Branch is bordered on the north by Monmouth Beach, on the South by Deal, on the east by the Atlantic Ocean and on the west by Oceanport and West Long Branch.

Exit 12 from Route 18 is about 3 miles west of the subject neighborhood via Park Avenue, and Exit 105 from the Garden State Parkway is about 5 miles northwest of the subject. Other local highways are Route 35, running north to Middletown and Perth Amboy, and Route 36, running along the Sandy Hook Bay through Atlantic Highlands, Union Beach and Keyport. A commuter rail station for New Jersey Transit is located one block east of the subject. The neighborhood is developed with a mix of single-family detached dwellings and small apartment buildings. Commercial neighborhoods developed with small shops and offices oriented to local services are found along Norwood Avenue to the north and south of the subject.

Properties within the subject's neighborhood area are serviced by the availability of all public utilities and the cost of these utilities are considered competitive with those of surrounding municipalities. Norwood Avenue and North Lincoln Avenue are two-lane paved roadways with concrete sidewalks and curbing. The neighborhood has storm sewers and street lighting. The location is considered well suited for the subject property's present use as an 8-unit condominium complex.

The cost of mortgage money has been steadily increasing during the past 12 months. The Federal Reserve's recent interest rate hikes have resulted in increases in commercial lending rates. Fixed rate loans for commercial properties are currently in the 7.75% to 8.75% range with a 0.75% to 1.5% mortgage placement fee (points). These fixed rate loans are frequently based upon a 20 to 25 year payout schedule with 5 to 10 year terms. Future trends in these mortgage terms are difficult to forecast, however current trends are for increasing mortgage rates. Listed below is an overview of current and historic lending rates as reported by Bankrate.com:

*THE OTTEAU APPRAISAL GROUP, INC.*

13

| | | | |
|---|---|---|---|
| Wall Street Journal Prime Rate | 7.750 | 7.500 | 5.750 |
| Federal Discount Rate | 5.750 | 5.500 | 3.750 |
| Fed Funds Rate | 4.750 | 4.500 | 2.750 |
| 11th District Cost of Funds | 3.347 | 3.296 | 2.183 |

## ZONING ANALYSIS

The subject property is located within the R-1, One-Family Residential zoning district of the subject municipality. The following are principal permitted uses within this zoning district:

1. One-Family residential dwellings

The following are the area and yard requirements within this zoning district:

| | |
|---|---|
| Minimum lot area (square feet): | 17,500 |
| Minimum lot frontage (feet): | 100 |
| Minimum lot depth (feet): | 175 |
| Maximum lot coverage: | 35% |
| Front yard setback (feet): | 70 |
| Side yard setback (feet): | 10 feet |
| Rear yard setback (feet): | 50 |
| Maximum building height: | 2 1/2 stories or 30 feet principal building |

The subject property is developed with 8 attached townhouse style condominiums on a 108.08' x 179.51' lot. This appears to be a nonconforming use on a conforming lot. Such "grandfathered" conditions are typically permitted to continue uninterrupted barring significant expansion of the building or intensification of the use.

For a detailed description of the requirements for this zoning district, the reader is referred to the Zoning Ordinance of the subject municipality.

*THE OTTEAU APPRAISAL GROUP, INC.*

14

## SITE ANALYSIS

| Block/Lot: | 8 / 25.01-25.08 |
|---|---|
| Lot Size: | 179.51' x 106.08' |
| Frontage and Dimensions: | 179.51' along the east side of Norwood Avenue and 106.08' along the north side of North Lincoln Avenue.  The northern boundary is 163.87 feet, and the eastern boundary is 169.95 feet |
| Shape: | Irregular |
| Ingress/Egress: | Paved ingress/egress drives extending north from North Lincoln Avenue, serving parking area to rear of building. |
| Topography & Vegetation: | The land slopes downward to the north from North Lincoln Avenue, and is professionally landscaped, with an established lawn, mature trees and ornamental shrubberies around the building |
| Parking: | Paved open parking for approximately 8 cars, as well as a one-car built-in garage for each condominium unit |
| Site Improvements: | Concrete sidewalks and curbing along Norwood Avenue and North Lincoln Avenue |
| Utilities: | Public water, public sewer, electric, telephone and underground natural gas. |
| Flood Zone: | Flood Zone C, Community Panel Number 340307-2C, dated January 5, 1984 |
| Comments: | Reference is made to the official tax map for Block 8, Lot 25, a photocopied portion of which is attached, and to the survey supplied by the applicant, both of which are attached.<br><br>The subject is located at the northeast corner of Norwood Avenue and North Lincoln Avenue, in an area developed with single-family detached dwellings.  The commuter rail station is one block east.  The subject has interior concrete walks serving each condominium unit, as well as a paved rear parking area and a block retaining wall along the eastern and northern boundaries. |

*THE OTTEAU APPRAISAL GROUP, INC.*

# EXHIBIT "B"

PART IV

15

## SUBJECT PROPERTY TAX MAP



*THE OTTEAU APPRAISAL GROUP, INC.*

17

STANDARDS OF PROFESSIONAL APPRAISAL PRACTICES (USPAP) were invoked. Specifically, the client has instructed that a prior appraisal of the subject property be updated, without a re-inspection of the dwelling. The reader of this report is advised that this appraisal has been based upon the extraordinary assumption that the interior of the building has not changed since the prior inspection date.

The intended user of this report is warned that the reliability of the value conclusion provided may be impacted to the degree there is departure from specific guidelines of USPAP.

*THE OTTEAU APPRAISAL GROUP, INC.*

19

## HIGHEST AND BEST USE

Highest and best is defined on page 269 in The Appraisal of Real Estate, Ninth Edition, published by the American Institute of Real Estate Appraisers, as:

> The reasonably probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, financially feasible, and that results in the highest value.

A property's highest and best use must be analyzed as vacant and as improved, for several reasons. The highest and best use analysis, as vacant, allows for the property selection of land comparables to derive a property's land value and also used to measure a building's value contribution. The highest and best analysis, as improved, determines whether the existing improvement should continue to be used, or demolished, as well as analyzing how the property as improved should be used.

The highest and best use of both land as though vacant and property as improved must meet four criteria. The highest and best use must be 1) physically possible, 2) legally permissible, 3) financially feasible, and 4) maximally productive (The Appraisal of Real Estate, Ninth Edison, published by the American Institute of Real Estate Appraisers, page 274, hereafter referred to as The Appraisal of Real Estate). Each of these four criteria will be defined and explained based upon information found on pages 274-277 of The Appraisal of Real Estate.

**Physically Possible:** The size, shape, area, and terrain of a parcel of land affect the uses to which it can be developed. The utility of the parcel may depend on its frontage and depth, while certain parcels only attain their highest and best use as part of a land assemblage. In addition, the capacity and availability of public utilities is also vital to its physically possible use.

**Legally Permissible:** Private restrictions, zoning, building codes, historic zoning controls, and environmental regulations must be investigated because they may preclude many potential highest and best uses. In addition, a long-term lease on a property may place limits on the property's use.

**Financially Feasible:** After determining which uses are physically possible and legally permissible, these uses are analyzed further to determine which are likely to produce an income, or return, equal to or greater than the amount needed to satisfy operating expenses, financial obligations, and capital amortization. In determining financial feasibility, estimates of future gross income, vacancy and collection losses, and operating expenses are estimated for each potential use, to obtain their likely net income. If the net revenue capable of being generated is enough to satisfy the required rate of return on an investment and provide a return to the land, the use is financially feasible within some price limit.

*THE OTTEAU APPRAISAL GROUP, INC.*

20

**Maximally Productive:** Of the financially feasible uses, the use that produces the highest price, or value, consistent within the rate of return warranted by the market for that use is the highest and best use. In considering the property's highest and best use as improved, a comparison is made between the existing improvements and the ideal improvement to determine the contribution of the improvements to the overall value. The highest and best use analysis is applicable in estimating the property's market value, while in estimating its use value, the current use is deemed to be its highest and best use.

**Highest and Best Use As Improved:** The highest and best use as improved is considered to be the subject's present townhouse rental complex use. There appears to be no financially feasible alternative which would warrant the removal of the existing buildings improvement.

**Highest and Best Use As Vacant:** The highest and best use as vacant is considered to be for residential development to the limits permitted by present zoning regulations.

## OVERVIEW OF THE APPRAISAL PROCESS

An appraisal is an estimate of value. An orderly procedure is followed so as to arrive at this value estimate by which the appraisal problem is defined; the work necessary to solve the problem is planned and the data involved is acquired, classified, analyzed, interpreted and translated into an estimate of value. This entire procedure is referred to as the appraisal process. The appraised values as set forth in this report have been developed through the use of standard accepted appraisal practices and valuation procedures. The primary approaches used in the valuation analysis include the Sales Comparison Approach, Cost Approach and Income Approach which are defined as follows:

The **Sales Comparison Approach** is based upon the preposition that an informed purchaser would pay no more for a property than the cost of acquiring an alternative existing property offering the same utility. This approach is defined as "an approach through which an appraiser derives a value indication by comparing the property being appraised to similar properties that have been sold recently, applying appropriate units of comparison and making adjustments, based on the elements of comparison, to the sale prices of the comparables" (The Dictionary of Real Estate Appraisal, Second Edition, published by the American Institute of Real Estate Appraisers, p. 265). This approach is most applicable when an active market provides sufficient quantities of reliable data which can be verified from authoritative sources.

The **Cost Approach** is based upon the preposition that an informed purchaser would pay no more for a property than the cost of producing a substitute property with the same utility. It is "an approach through which an appraiser derives a value indication of the fee simple interest in a property by estimating the current cost to construct a reproduction of or replacement for the existing structure, deducting for all evidence of

*THE OTTEAU APPRAISAL GROUP, INC.*

21

accrued depreciation from the cost new of the reproduction or replacement structure, and adding the estimated land value plus an entrepreneurial profit. Adjustments may be made to the indicated fee simple value of the subject property to reflect the value indication of the property interest being appraised" (The Dictionary of Real Estate Appraisal, Second Edition, published by the American Institute of Real Estate Appraisers, p. 72). This approach is particularly applicable when the property being appraised involves relatively new improvements which represent the highest and best use of the land or when relatively unique or specialized improvements are located on the site and for which there exist no comparable properties that have either sold or are on the market.

The *Income Approach* is a process "through which an appraiser derives a value indication for income-producing property by converting anticipated benefits, i.e., cash flows and reversions, into property value. This conversion can be accomplished in two ways: One year's income expectancy or an annual average of several years' income expectancies may be capitalized at a market-derived capitalization rate or a capitalization rate that reflects a specified income pattern, return on investment, and change in the value of the investment; secondly, the annual cash flows may be discounted for the holding period and the reversion at a specified yield rate" (The Dictionary of Real Estate Appraisal, Second Edition, published by the American Institute of Real Estate Appraisers, p. 72).

Only under optimum conditions when all factors affecting value are in balance will the value indication yielded by each of these approaches coincide. Under normal market conditions, the value indication yielded by one or more of these approaches will be more significant than that indicated by the others. Additionally, unique or special purpose type uses may render one or more of these approaches not applicable. In such a circumstance, the remaining approaches will be utilized. When the value indication under each of these approaches has been formulated, the appraiser will then correlate these separate indications into a final value estimate for the subject property.

## SALES COMPARISON APPROACH

The Direct Sales Comparison Approach is based upon the proposition that an informed purchaser would pay no more for a property than the cost of acquiring an existing property with the same utility. This approach is applicable when an active market provides sufficient quantities of reliable data that can be verified from authoritative sources.

IMPROVED VALUE: The following improved sales have been carefully considered and compared so as to provide a value indication for the subject property as improved:

*THE OTTEAU APPRAISAL GROUP, INC.*

22

## IMPROVED SALE 1

260 Willow Avenue, Long Branch City, Monmouth County

| | |
|---|---|
| Block/Lot: | Block 179, Lot 48 |
| Date of Sale: | January 11, 2005 |
| Deed Recording: | Book 8434, Page 4502 |
| Grantor: | Willow Avenue Apartments, LLC |
| Grantee: | Dwek Apartments, LLC |
| Consideration: | $1,425,000 |
| Financing: | No sales concessions noted |
| Zoning: | R-4 |
| Site Area: | 0.34 acres |
| Building Area: | 10,575 square foot |
| Utilities: | All public utilities available |
| Unit Value(S.F.B.A): | $134.75 / square foot |

This is the sale of an 18-unit, multi-family building in Long Branch City. 15 of the units are one-bedroom, and the other 3 are two-bedroom units. The property has 20 on-site parking spaces.

*THE OTTEAU APPRAISAL GROUP, INC.*

23

## IMPROVED SALE 1



## IMPROVED SALE 1 LOCATION MAP



*THE OTTEAU APPRAISAL GROUP, INC.*

24

**IMPROVED SALE 2**

103 11th Avenue, Belmar Borough, Monmouth County

| | |
|---|---|
| Block/Lot: | Block 11, Lot 4 |
| Date of Sale: | February 23, 2005 |
| Deed Recording: | Book 8546, Page 5244 |
| Grantor: | Eleventh Avenue Properties, LLC |
| Grantee: | 11 Edge, LLC |
| Consideration: | $1,500,000 |
| Financing: | No sales concessions noted |
| Zoning: | T-5 |
| Site Area: | 0.34 acres |
| Building Area: | 5,800 square feet |
| Utilities: | All public utilities available |
| Unit Value(S.F.B.A): | $258.62 / square foot |

This is the sale of an 8-unit multi-family dwelling in Belmar Borough. The 2-story, wood frame, dwellings were reported to be in fair condition at the time of the sale. There are 16 on-site parking spaces available.

*THE OTTEAU APPRAISAL GROUP, INC.*

25

## IMPROVED SALE 2



## IMPROVED SALE 2 LOCATION MAP



*THE OTTEAU APPRAISAL GROUP, INC.*

26

## IMPROVED SALE 3

71 Morris Avenue, Long Branch City, Monmouth County

| | |
|---|---|
| Block/Lot: | Block 227, Lot 15 |
| Date of Sale: | April 19, 2005 |
| Deed Recording: | Book 8541, Page 8406 |
| Grantor: | Mark & Ann Ella |
| Grantee: | Edina Ferreira |
| Consideration: | $650,000 |
| Financing: | No sales concessions noted |
| Zoning: | R-8 |
| Site Area: | 0.22 acres |
| Building Area: | 2,956 square feet |
| Utilities: | All public utilities available |
| Unit Value (S.F.B.A): | $219.89 / square foot |

This is the sale of a 4-unit, multi-family building in Long Branch City. The 96 yr. old building was reported to be in average condition at the time of sale. There are 4 on-site parking spaces.

*THE OTTEAU APPRAISAL GROUP, INC.*

27

**IMPROVED SALE 3**



**IMPROVED SALE 3 LOCATION MAP**



*THE OTTEAU APPRAISAL GROUP, INC.*

28

**IMPROVED SALE 4**

1004 5th Avenue, Asbury Park City, Monmouth County

| | |
|---|---|
| Block/Lot: | Block 14, Lot 17 |
| Date of Sale: | April 24, 2006 |
| Deed Recording: | Book 8559, Page 3595 |
| Grantor: | ZLP Asbury, LLC |
| Grantee: | Ken Brady |
| Consideration: | $860,000 |
| Financing: | No sales concessions noted |
| Zoning: | S-2 |
| Site Area: | 0.16 acres |
| Building Area: | 4,440 square feet |
| Utilities: | All public utilities available |
| Unit Value (S.F.B.A): | $193.69 / square foot |

This is the sale of a 6-unit, multi-family dwelling in Asbury Park City. The 96 yr. old building was reported to be in fair condition at the time of sale. There is no on-site parking available.

*THE OTTEAU APPRAISAL GROUP, INC.*

29

## IMPROVED SALE 4



## IMPROVED SALE 4 LOCATION MAP



*THE OTTEAU APPRAISAL GROUP, INC.*

30

## SALES COMPARISON ANALYSIS



| Address | 5001 Norwood Avenue Long Branch City | 260 Willow Avenue Long Branch City | 103 11th Avenue Belmar Borough | 11 Marine Avenue Long Branch City | 1004 5th Avenue Asbury Park City |
|---|---|---|---|---|---|
| Proximity to Subject | | 2.22 miles | 5.92 miles | 5.41 miles | 2.82 miles |
| Sales Price | 8.7.25.01 - 25./8 | $1,425,000 | $1,425,000 | $1,600,000 | $950,000 | $850,000 |

RECONCILIATION:

BUILDING AREA          11,235
UNIT VALUE             $220
VALUE INDICATION       $2,472,000    Rounded

THE OTTEAU APPRAISAL GROUP, INC.

33

exists for residential apartments within the subject's market area. This is supported by continued population growth combined with the lack of vacant land for residential apartment use. For the purpose of this analysis, a 3% vacancy and credit loss rate has been developed for the subject property and will be utilized in the Income Approach.

*Capitalization Rate:* In order to determine an annual internal rate of return for the subject property, the appraiser has looked at competitive yield rates for various types of investments, as well as the national market indicators published by the Appraisal Institute in its quarterly magazine *Valuation Insights and Perspectives*.

Market conditions for commercial real estate is currently considered to be good with healthy absorption rates and rising rental rates. These conditions combined with relatively low financing costs have created the strongest real estate markets seen since the 1980's.

There has been literature written and empirical evidence developed relating returns in the bond market to real estate returns. The closest relationship with real estate has been found to be long-term bonds.[1] Returns being received in various segments of the capital markets are shown below.

| | |
|---|---|
| U.S. 5-Year Bonds - Taxable | 4.250% |
| U.S. 10-Year Bonds - Taxable | 4.500% |
| U.S. 30-Year Bonds - Taxable | 5.375% |
| Corporate Bonds (Aaa) 5-Year | 5.140% |
| Corporate Bonds (Aaa) 10-Year | 5.280% |

The returns on the investments vary due to factors like differing degrees of risk, term to maturity, the coupon interest rate, and the current level of interest rates. Since funds for real estate investment are competing with these alternative investments, it is believed that real estate investors desire at least a return in this range, and usually higher due to the greater liquidity of real estate investments.

---

[1] For a discussions and analysis of the correlation between these yields, see C.F. Simmans and J.R. Webb, "Yields for Selected Types of Real Property vs. the Money and Capital Markets," *The Appraisal Journal*, April 1982, p. 241.

**THE OTTEAU APPRAISAL GROUP, INC.**

34

In some instances, rates of return desired by lenders can provide a benchmark for desired yields in the real estate market. However, it must be remembered that lenders have a different risk position than the equity investor.

The best source of current yield expectations of typical equity investors is based on surveys of these investors. Several of the large real estate firms undertake such surveys on a quarterly basis. A survey entitled <u>Real Estate Investment Criteria</u> is shown below:

| | RETAIL | | OFFICE | | WAREHOUSE | | APARTMENT | |
|---|---|---|---|---|---|---|---|---|
| | Current Qtr. | Last Qtr. | Current Qtr. | Last Qtr. | Current Qtr. | Last Qtr. | Current Qtr. | Last Qtr. |
| | 7.00% | 7.00% | 7.00% | 7.00% | 7.00% | 7.00% | 6.00% | 6.00% |
| | 11.00% | 11.00% | 10.00% | 10.00% | 11.50% | 11.50% | 13.00% | 13.00% |
| | 8.95% | 9.04% | 8.48% | 8.65% | 8.47% | 8.58% | 8.89% | 8.97% |
| | -0.09% | | -0.17% | | -0.11% | | -0.08% | |
| | 5.50% | 5.50% | 4.50% | 4.50% | 5.50% | 5.50% | 4.25% | 4.50% |
| | 9.50% | 9.50% | 9.50% | 9.50% | 9.00% | 9.00% | 8.00% | 8.00% |
| | 7.13% | 7.12% | 7.29% | 7.35% | 7.26% | 7.29% | 6.07% | 6.13% |
| | 0.01% | | -0.06% | | -0.03% | | -0.06% | |
| | 6.25% | 6.50% | 6.75% | 7.00% | 8.00% | 8.00% | 5.50% | 5.50% |
| | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 10.00% | 9.00% | 9.00% |
| | 7.86% | 7.93% | 8.16% | 8.23% | 7.98% | 8.04% | 7.26% | 7.31% |
| | -7.00% | | -0.07% | | -0.05% | | 0.05% | |

2006.Q1

**Overall Capitalization Rate Development:**

The appraiser will utilize the mortgage equity technique to develop a capitalization rate for the subject property. This technique is primarily used to calculate the value of an investment, where some of the funds used to acquire the investment are borrowed; taking into consideration the investor's required return on investment and the cost of the borrowed funds. This technique evaluates the following factors to the extent that they affect the investor's ultimate return on investment:

*THE OTTEAU APPRAISAL GROUP, INC.*

35

Loans

Equity Buildup (amortization)

Soft Costs (loan points, fees, etc.)

Selling Expenses (sales commissions, other costs)

Holding Period

As indicated in the table above, national capitalization rates for apartment properties range from 4.25% to 8.0% with an average of 8.69 %. These rates reflect the annualized yield rate or rate of return on capital that is generated or capable of being generated within an investment or portfolio over a period of ownership.

In developing a capitalization rate for the subject property, the appraiser will utilize an investor's return rate of 7% and a mortgage loan rate of 6.75%. The resulting capitalization rate (discount rate) will then be applied to the anticipated income stream for the subject property over a projected 10 year holding period. Therefore, the capitalization rate for the subject property is developed as follows:

*THE OTTEAU APPRAISAL GROUP, INC.*

36

| MORTGAGE EQUITY CALCULATION | |
|---|---|
| **Input Variables** | |
| Projected Holding Period | 10 Years |
| Loan Ratio 1 | 75.00% |
| Interest Rate | 6.75% |
| Loan Term | 25 Years |
| Balloon Payment in Year | 10 |
| Investor Equity Portion | 25.00% |
| Required Investor Yield (IRR) | 7.000% |
| Soft Costs in Addition to Equity | 2.000% |
| | |
| **CALCULATION** | |
| Loan 1 x Constant   (.75000 x 0.082809) | 0.0621620 |
| Equity x Required Yield   (.25000 x 0.070000) | 0.0175000 |
| | 0.0796620 |
| LESS Credit for Equity Build-up | |
| RATIO x %PAID OFF x SINKING FUND | |
| Loan 1  75.00      0.2182      0.072379 | -0.0119004 |
| BASIC RATE | 0.0677616 |
| ADD Amortization of Soft Costs (2.00 x 0.14238) | 0.0028476 |
| | 0.0706291 |
| CAP RATE AT STABLE OPERATION | 0.0706291 |
| **OVERALL RATE - ROUNDED TO** | **7.00%** |

*THE OTTEAU APPRAISAL GROUP, INC.*

37

*Subject Property Rent Schedule*

**There is no subject rent data available due to the limited scope nature of this appraisal.**

*Market Rent:* The following lease data has been carefully considered and compared so as to provide an indication of the subject property's potential annual rent. A description of this data is as follows:

| LOCATION | TOWN | Dwelling Type | Rms | BR | BA | $/Month | $/Rm | $/BR |
|---|---|---|---|---|---|---|---|---|
| 14 Gansett Court | Long Branch City | Townhouse | 5 | 2 | 2.5 | $2,100 | $420 | $1,050 |
| 253 Albert Place | Long Branch City | Single Family House | 7 | 3 | 2 | $2,000 | $285 | $667 |
| 274-19 Bath Avenue | Long Branch City | Townhouse | 4 | 2 | 2.5 | $2,000 | $500 | $1,000 |
| 14-14 Gansett Court | Long Branch City | Townhouse | 5 | 2 | 2.5 | $1,950 | $390 | $975 |
| 274-19 Bath Avenue | Long Branch City | Townhouse | 4 | 2 | 2.5 | $1,900 | $475 | $950 |
| 50-13 Cedar Avenue | Long Branch City | Townhouse | 5 | 2 | 1.5 | $1,675 | $335 | $838 |
| 317-19 Bath Avenue | Long Branch City | Townhouse | 6 | 2 | 1 | $1,350 | $225 | $675 |

Careful consideration has been given to the above lease data with respect to physical and locational components, permitted uses and market conditions at the time of leasing. Based upon this analysis, it is the appraiser's considered opinion that the market rental value for the subject property is $ 2,100 per month. Accordingly, the following analysis has been formulated:

*THE OTTEAU APPRAISAL GROUP, INC.*

38

<u>INCOME APPROACH</u>

## 1001 NORWOOD AVENUE, LONG BRANCH CITY, NEW JERSEY
## INCOME AND EXPENSE ANALYSIS

| | # of Units | Market Monthly Rent | | Annual Rent |
|---|---|---|---|---|
| *POTENTIAL GROSS INCOME* | | | | |
| Subject 3 Bedroom Apartment | 8 | $ 2,100.00 | $ | 201,600 |
| Total Gross Income | | | $ | 201,600 |
| Less: Vacancy and Collection Loss | | 3.0% | | 6,048 |
| *EFFECTIVE GROSS INCOME* | | | $ | 195,552 |
| *EXPENSES* | | | | |
| Real Estate Taxes | | Actual | | 34,149 |
| Property Insurance | | 2.0% | | 3,911 |
| Management | | 3.0% | | 5,867 |
| Real Estate Commissions | | 3.0% | | 5,867 |
| Maintenance | | 2.0% | | 3,911 |
| Common Utilities | | 1.0% | | 1,956 |
| Reserve for Structural Repairs | | 1.0% | | 1,956 |
| Total Expenses | | | | 57,615 |
| *NET OPERATING INCOME* | | | $ | 137,937 |

$          137,937          7.00%          $1,971,000

*THE OTTEAU APPRAISAL GROUP, INC.*

39

Careful consideration has been given to the preceding Income Analysis. Based upon the foregoing analysis, the Income Approach is considered to yield a value indication of:

**ONE MILLION NINE HUNDRED SEVENTY ONE THOUSAND DOLLARS**
**($1,971,000.00)**

## RECONCILIATION AND FINAL VALUE ESTIMATE

The appraiser has applied the Sales Comparison Approach, Cost Approach and the Income Approach to the valuation of the subject property. The strength of the Sales Comparison Approach is that it is entirely market based and therefore is considered to accurately reflect market prices. The availability of recent comparable data has further enhanced the weight of this approach. The Cost Approach has been utilized by adding the estimated land value to the depreciated replacement cost of the improvement for the subject property, inclusive of developer's profit. The limitation of this approach is that cost does not always translate directly to value. This approach, which often tends to set the upper limit of value, is considered a good test of the reasonableness of the other approaches to value. The strength of the Income Approach is that it most closely resembles the thought processes and views of investors who are the typical potential purchaser of the subject property. The weakness of this approach is that slight changes in market rents, vacancy rates, and market perceived risk rates could have a significant effect on the value indication. However, with the choice of reasonable assumptions, as I believe were utilized in my analysis, the reliability of this approach is enhanced. Each of these approaches have yielded the following value indications:

| | |
|---|---|
| Sales Comparison Approach | $2,472,000 |
| Cost Approach | N/A |
| Income Approach | $1,971,000 |

Based upon my entire analysis, it is my considered opinion that the market value of the subject property is estimated as follows:

**TWO MILLION THREE HUNDRED THOUSAND DOLLARS**
**($2,300,000.00)**

*THE OTTEAU APPRAISAL GROUP, INC.*

40

In accordance with prior agreement between the client and the appraiser, this report is a limited scope appraisal in that certain allowable departures from specific guidelines of the UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICES (USPAP) were invoked. Specifically, the client has instructed that a prior appraisal of the subject property be updated, without a re-inspection of the dwelling. The reader of this report is advised that this appraisal has been based upon the extraordinary assumption that the interior of the building has not changed since the prior inspection date.

The intended user of this report is warned that the reliability of the value conclusion provided may be impacted to the degree there is departure from specific guidelines of USPAP.

## REASONABLE EXPOSURE TIME

Reasonable exposure time is one of a series of conditions in most market value definitions. Exposure time is always presumed to precede the effective date of the appraisal.

Exposure time is defined as "the estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective opinion based on an analysis of past events assuming a competitive and open market." This definition has been quoted from the 2005 Uniform Standards of Professional Appraisal Practice (USPAP).

Exposure time is different for various types of property and under various market conditions. It is noted that the overall concept of reasonable exposure encompasses not only adequate, sufficient, and reasonable time but also adequate, sufficient, and reasonable effort. The estimate of exposure time focuses on time component.

Based upon my entire analysis, it is my considered opinion that a reasonable exposure time estimate for the subject property is between four and eight months.

*THE OTTEAU APPRAISAL GROUP, INC.*

41

## THIS APPRAISAL IS SUBJECT TO THE FOLLOWING LIMITING CONDITIONS:

The legal description furnished to us is assumed to be correct. I assume no responsibility for the matters legal in character nor do I render any opinion as to the title, which is assumed to be held in fee simple. All existing liens and encumbrances have been disregarded and the property is appraised as though free and clear under responsible ownership and competent management.

The sketch in this appraisal report is included to assist the reader in visualizing the property. I have made no survey of the property and assume no responsibility in connection with such matters.

I believe to be reliable the information which was furnished to us by others, but I assume no responsibility for its accuracy.

Possession of this appraisal report, or a copy thereof, does not carry with it the right of publication, nor may it be used for any purpose by any but the applicant and then only with proper qualification.

I shall not be required to give testimony or to attend any public or private hearing with reference to the subject property unless a supplemental employment agreement has been negotiated.

I reserve the right to recall this appraisal and make any amendments, corrections, or changes that I may deem necessary.

The distribution of the total valuation in this report between land and improvements applies only under the existing program of utilization. The separate valuations for land and building must not be used in conjunction with any other appraisal and are invalid if so used.

Unless otherwise noted herein, it is assumed that there are no encroachments, easements, zoning violations, use restrictions, or other conditions not evident upon surface inspection of the property. Description of the physical condition of the improvements is based on a visual inspection only. No liability is assumed for the soundness of structural members since no engineering tests were made by the appraiser.

AMERICANS WITH DISABILITIES ACT: On January 26, 1992, federal legislation entitled, The Americans With Disabilities Act (ADA) became effective. The appraiser has not been provided with a compliance survey nor has any analysis been made to determine whether or not the subject is in conformity with the requirements of the ADA. It is possible that compliance with the act will require expenditures for barrier removal construction. Such expense, if required, could have a negative impact on the value of the subject.
This appraisal is expressly made under the assumption that the subject is in compliance with ADA, or that there are no significant measurable required expenditures for compliance with ADA that would have a negative impact on the value or marketability of the subject.

HAZARDOUS SUBSTANCES: The existence of any potentially hazardous material used in the construction or maintenance of the building, such as presence of urea formaldehyde foam insulation, and/or the existence of or proximity to any toxic waste, has not been considered as I am not qualified to detect such substances. The client is urged to retain an expert in this field, if desired. I assume that there are no hidden or unapparent conditions of the property, subsoil or structures, which would render it more or less valuable. I assume no responsibility for such conditions, or for engineering which might be required to discover such factors.

ENVIRONMENTAL DISCLAIMER: The value estimated in this report is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions. The appraiser is not an expert in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of and inquiries about the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous materials and environmental conditions on or around the property that would negatively affect its value. This appraiser is aware of the "Environmental Clean-Up Responsibility Act" which imposes pre-conditions on the sale of industrial establishments which use hazardous substances. This appraisal does not take into account the possibility of the ECRA application. If it applies to the subject property the "cost to cure" would be a deduction from the value indicated in this report.

This appraisal has been made in conformity with and is subject to the requirements of the Code of Ethics and Standards of Professional Practice and Conduct of the National Association of Independent Fee Appraisers.

### THE OTTEAU APPRAISAL GROUP, INC.

42

## CERTIFICATION OF THE APPRAISER

I certify that, to the best of my knowledge and belief:

- the statements of fact contained in this report are true and correct.

- the reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions.

- I have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

- my engagement in this assignment was not contingent upon developing or reporting predetermined results.

- my compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- my analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

- I have made a personal inspection of the property that is the subject of this report.

- Jessica L. Curcio provided significant real property appraisal assistance to the person(s) signing this certification.

Christopher J. Otteau
SLRREA, #42RC00170800

Niels V. Guldbjerg, Vice President
IFAS, SCGREA, #42RG00128000
*Acting as review appraiser only*

*THE OTTEAU APPRAISAL GROUP, INC.*

43

## PROFESSIONAL QUALIFICATIONS
## CHRISTOPHER J. OTTEAU

Actively engaged in the appraisal of real estate since 2002
State Certified Real Estate Appraiser in the State of NJ (#42RC00170800)
Senior Appraiser - The Otteau Appraisal Group, Inc.
Licensed Real Estate Sales Person in the State of New Jersey

**EDUCATION:**

Bachelor of Arts degree – Rutgers University
Fundamentals of Real Estate Appraisal – American School of Business
Uniform Standards of Professional Practice (USPAP) – American School of Business
Appraising Two to Four Family Income Properties – American School of Business
Appraising a Condominium, PUD or Cooperative – American School of Business
Uniform Standards of Professional Practice (USPAP) 7hour update– American School of Business
Real Estate Market Analysis and Highest and Best Use- American School of Business
Property Inspection: An Appraiser's Guide- American School of Business
Uniform Standards of Professional Appraisal Practice (USPAP) 7hour update– American School of Business

## APPRAISAL SERVICES PERFORMED FOR THE FOLLOWING CLIENTS:

Access Relocation Center
Allegiance Bank Of North America
All Points Relocation Service, Inc.
America's MoneyLine, Inc
American Capital Mortgage Bankers
Ameriban, Inc.
Apraisal Management Co.
Amboy National Bank
Anheuser Busch
Advanced Mortgage Concepts
Associated Mortgage Company, Inc.
Argent Mortgage
Founders Mortgage
First Savings Bank, SLA
First Metropolitan Mortgage
Fairview Mortgage Corp.
E-Loan, Inc.
Capital First Mortgage
Countrywide Home Loans, Inc.
Chase Home Finance
JP Morgan Chase & Co.
Chase Manhattan Mortgage Corp.
Chelsea dale Appraisal & Settlement
Cornerstone Relocation Management, Inc.
CTX National Lending Center
Dana Capital
EDS Relocation Business Services
Empire Equity Group
Executive Relocation
Fannie Mae
Fidelity Valuation Services
Finance America
First Savings Bank
Graebel Relocation Services
Huntington Mortgage Company
Internet Mortgage
Investors Mortgage
JNH Manville Corporation
LandAmerica One Stop
The Lending Source
Mercado Funding Group
Market Intelligence, Inc.
Madison Community Bank
Magyar Bank
Meridian Residential Capital

Millenium Home Mortgage
Mobility Services International
Mobility Advocates
Morgan Funding Corporation
Mortgage Loan Solutions, LLC
National Wholesale Lending
National Bank of Kansas City
National Property Advisors
National Relocation, Inc.
New Century Mortgage
New Jersey Mortgage Lending Service
North American Savings Bank
New Millennium Bank
Novartis Pharmaceuticals
One Source Relocation
PHC Advisors
Porch Light Mortgage, LLC.
Primacy Relocation, LLC.
Provident Capital Mortgage Corporation
Prudential Relocation
REC Mortgage Company
RelocAction
Unity Bank
TFS Mortgage
Suntrust First Financial
Sovereign Bank
Shore Community Bank
Sunwest Mobility
Prioirty Processing Services
PNB Financial
Unity Bank
The Manhattan Mortgage Company
The WHR Group
Wachovia Bank
Washington Mutual Bank
Wells Fargo Home Mortgage, Inc.
Weichert Relocation
Valuation Administrators Ltd.
Yardville National Bank

*THE OTTEAU APPRAISAL GROUP, INC.*

44

## PROFESSIONAL QUALIFICATIONS
### NIELS V. GULDBJERG, SCGREA, IFAS

Actively engaged in the appraisal of real estate since 1984
Vice President, The Otteau Appraisal Group, Inc.
State Certified General Real Estate Appraiser in the State of New Jersey (#42RG00128900)
Approved Appraiser for the New Jersey Department of Transportation
Approved Appraiser for the New Jersey Department of Environmental Protection - Green Acres Program
Member, National Association of Independent Fee Appraisers; IFAS Commercial designation
Licensed Real Estate Salesman in the State of New Jersey
Expert real estate valuation testimony given at the Municipal and State levels.

### EXPERT TESTIMONY
Superior Court, County of Mercer                    Middlesex County Board of Taxation
Superior Court, County of Middlesex                 Bridgewater Township Planning Board
Superior Court, County of Monmouth                  Madison Township Planning Board
Mercer County Board of Taxation

### EDUCATIONAL BACKGROUND:
Real Estate Principles - Garden State School of Real Estate
Course 101 - Introduction to Appraising Real Property - SREA
Residential Real Estate Appraising - NAIFA
Residential Cost Approach - NAIFA
Uniform Residential Appraisal Report Seminar - SREA
Relocation Appraisal Seminar - ERC
Uniform Standards of Professional Appraisal Practice - NAIFA (1992)
Property Tax Administration - Rutgers University
Techniques of Income Property Appraising - NAIFA
Condemnation Appraising - NAIFA
Course 120 - Appraisal Procedures - Appraisal Institute
Understanding Limited Appraisals and Reporting Options - Appraisal Institute
Relocation Appraisal Workshop - PHH Network Services (1996)
How to Prepare & Review Commercial Appraisal Reports - The North Jersey School of Real Estate (1997)
Uniform Standards of Professional Appraisal Practice - Business Learning Center, Inc. (1997)
Internet for Appraisers - Business Learning Center, Inc. (1997)
Appraisal of Nursing Facilities - Appraisal Institute (1999)
Partial Interest Valuation - Divided - Appraisal Institute (1999)
Internet Search Strategies for R.E. Appraisers - Appraisal Institute (1999)
Appraising From Blueprints and Specifications - Appraisal Institute (1999)
Green Acres Appraisal Conference - Dept. of Environmental Protection, Green Acres Program (2001)
Impact of Wetlands on Property Development - NAIFA (2001)
Analyzing Operating Expenses - Appraisal Institute (2001)
Uniform Standards of Professional Appraisal Practice - McKissock Data Systems (2001)
Income Capitalization - McKissock Data Systems (2001)
57th Annual Princeton Conference- Metro New Jersey Chapter of the Appraisal Institute (2003)
Detrimental Conditions in Real Estate- Appraisal Institute (2003)
Feasibility, Market Value, Investment Timing: Option Value- Appraisal Institute (2003)
Construction Detail and Trends-McKissock Data Systems (2003)
National USPAP Update- McKissock Data Systems (2005)
Construction Detail and Trends- McKissock Data Systems (2005)
Information Technology & The Appraiser- McKissock Systems (2005)
Appraising for the Secondary Market- McKissock Systems (2005)

The National Association of Independent Fee Appraisers has a mandatory program of continuing education for designated
members. I have successfully completed this program for the cycle ending December 31, 2007.

*THE OTTEAU APPRAISAL GROUP, INC.*

**PROFESSIONAL QUALIFICATIONS: NIELS V. GULDBJERG, SCGREA, IFAS** (continued)
**Appraisal and Consulting Services Performed for the Following Clients:**

**THE FORTUNE 500**

Abbott Laboratories
Alcoa
American Home Products
Amoco Oil Co.
Anheuser Busch Companies
Armstrong World Industries
Bristol-Myers Squibb
Brown-Forman
Carter-Wallace
Circuit City Group
Digital Equipment Corporation
E. I. duPont de Nemours
Eastman Kodak Company
Eli Lilly Company
ExxonMobil
F.M.C. Corporation
Foster Wheeler
General Motors Corporation
Hercules Incorporated
Marriott Corporation
McGraw Hill
Merck
Nabisco
Pharmacia & Upjohn
Procter and Gamble
Prudential Insurance Co.
Raychem Corp.
Rhone-Poulenc Rorer
Sara Lee Bakery
Schering-Plough
State Farm Insurance
Time Warner
W.R. Grace
Westinghouse Electric Corporation

**FINANCIAL INSTITUTIONS**

Amboy National Bank
Bank of New York
Bank of Oklahoma
Bank of St. Louis
Barclay's Bank PLC
Broadway National Bank
Chase Home Mortgage Corporation
JP Morgan Chase
Connecticut National Bank
Countrywide Financial
Citigroup
The Dun and Bradstreet Corporation
Federal Home Loan Mortgage Corp.
Federal National Mortgage Assoc.
Fleet
First Savings Bank
General Electric Credit Corporation
General Motors Acceptance Corp.
Goldman, Sachs
Morgan Guaranty Trust Company
New Millenium Bank

North Fork Bank
PNC Bank
Philadelphia National Bank
Pittsburgh National Bank
Resolution Trust Corp. (RTC)
Sovereign Bank
Texas Commerce Bank
Unity Bank
Yardville Bank
OceanFirst Bank
Washington Mutual
Wachovia
Wells Fargo Bank

**RELOCATION MANAGEMENT COMPANIES**

Appraisal Management Company (AMCO)
Cendant
Cornerstone Relocation
Executive Relocation Corp.
GMAC Global Relocation Services
Primacy Relocation
Prudential Relocation Mgmt. Service
RE/MAX International Relocation
Valuation Administrators
Weichert Relocation

**MISCELLANEOUS**

ADP
Bausch & Lomb
CSX Transportation
Ciba-Geigy Corporation
Cigna Corporation
Frito-Lay
Gulf Oil
Honeywell
Janssen Pharmaceuticals
Kemper Insurance Group
Kraft-General Foods
Marion Merrel Dow
McDonald's Corporation
Nationwide Insurance Co.
Nestle USA
Princeton University
Public Service Electric & Gas
Salvation Army
Siemens Corporation
Sony Corporation of America

**GOVERNMENTAL**

Branchburg Township
East Brunswick Township
Marlboro Township
Middlesex County Improvement Authority
Monroe Township
New Jersey Green Acres
Washington Township

*THE OTTEAU APPRAISAL GROUP, INC.*

# EXHIBIT "B"

PART V

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON**

| | |
|---|---|
| In re: | Chapter 11 |
| SOLOMON DWEK, et. als., | Case No.: 07-11757(KCF) |
| Debtors. | |

---

**BRIEF IN SUPPORT OF AMBOY NATIONAL BANK'S
MOTION FOR AN ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY
WITH RESPECT TO REAL PROPERTY KNOWN AS 1001 NORWOOD AVENUE
UNITS 1-8, LONG BRANCH, NEW JERSEY**

---

HILL WALLACK LLP
202 Carnegie Center
Princeton, New Jersey 08543
(609) 924-0808
Attorneys for Amboy National Bank

Of Counsel and on the Brief:
Elizabeth K. Holdren (EKH5457)

Dated:  January 24, 2008

## TABLE OF CONTENTS

Table of Authorities.................................................................................ii

Preliminary Statement..............................................................................1

Statement of Facts...................................................................................2

Legal Argument.......................................................................................3

      POINT 1

      AMBOY IS ENTITLED TO RELIEF
      FROM THE AUTOMATIC STAY
      PURSUANT TO SECTION 362(d)(2) OF THE
      BANKRUPTCY CODE AS DWEK INCOME
      HAS NO EQUITY IN THE SUBJECT REAL PROPERTY
      FOR THE ESTATE AND THE PROPERTY IS
      NOT NECESSARY TO AN EFFECTIVE REORGANIZATION.........................3

      POINT II

      AMBOY IS ENTITLED TO RELIEF
      FROM THE AUTOMATIC STAY
      PURSUANT TO SECTION 362(d)(1) OF THE
      BANKRUPTCY CODE FOR CAUSE, INCLUDING THE LACK
      OF ADEQUATE PROTECTION.................................................................8

Conclusion...............................................................................................9

i

## TABLE OF AUTHORITIES

**Cases**                                                                        **Page**

Claughton v. Mixson, 33 F.3d 4 (4th Cir. 1994)...................................................8

In re Borbidge, 81 B.R. 332 (Bankr.E.D.Pa. 1988)..............................................8

In re Colonial Ctr., Inc., 156 B.R. 452 (Bankr.E.D.Pa. 1993)..............................4

In re Dunes Casino Hotel, 69 B.R. 784 (Bankr.D.N.J. 1986)...............................4

In re Hanley, 102 B.R. 36 (W.D.Pa. 1989)...........................................................4

In re Indian Palms Associates, Ltd., 61 F.3d 197 (3rd Cir.1995)....................3, 4, 5

In re LDN Corp., 191 B.R. 320 (Bankr.E.D.Va. 1996)........................................8

In re Rosen, 208 B.R. 345 (Bankr.D.N.J. 1997)...................................................8

In re South County Realty, Inc. II, 69 B.R. 611 (Bankr.M.D.Fla. 1987)..............4

In re Swedeland Dev. Group, Inc., 16 F.3d 552 (3rd Cir. 1994)...........................6

In re Wilson, 116 F.3d 87 (3rd Cir 1997)...............................................................8

La Jolla Mortg. Fund v. Rancho El Cajon Assocs.,
    18 B.R. 283 (Bankr.S.D.Calif. 1982)..............................................................4

Matter of Henry, 173 B.R. 878 (Bankr.D.N.J. 1993)............................................8

Nazareth Nat'l Bank & Trust Co. v. Trina-Dee, Inc. (In re Trina-Dee, Inc.),
    26 B.R. 152 (Bankr.E.D.Pa. 1983)..................................................................4

North East Fed. Savs. & Loan Assoc. v. Mikole Devels., Inc.
    (In re Mikole Devels., Inc.), 14 B.R. 524 (Bankr.E.D.Pa. 1981)...................4

Robbins v. Robbins (In re Robbins), 964 F.2d 342 (4th Cir. 1992)......................8

Pistole v. Mellor (In re Mellor), 734 F.2d 1396 (9th Cir. 1984)..........................4

State Employee Retirement Fund v. Gardner (In re Gardner),
    14 B.R. 455 (Bankr.E.D.Pa. 1981)..................................................................4

Stewart v. Gurley, 745 F.2d 1194 (9th Cir. 1984)..........................................................3, 5

United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.
    484 U.S. 365 (1988)..........................................................................................6

**Code Sections**                                                                                                    **Page**

Section 362..........................................................................................................passim

## PRELIMINARY STATEMENT

Amboy National Bank ("Amboy") brings the within Motion for relief from the automatic stay with respect to real property known as 1001 Norwood Avenue, Units 1-8, Long Branch, New Jersey (the "Property") pursuant to Sections 362(d)(1) and (d)(2) of the Code.

Amboy is entitled to relief from the automatic stay under Section 362(d)(2) of the Code. The debtor, Dwek Income, LLC ("Dwek Income"), does not have any equity in the subject real property, being a single condominium building, consisting of eight units, located in the City of Long Branch, Monmouth County, New Jersey. Further, the Property is not necessary to an effective reorganization.

First, there is no equity in the Property for the estate. Based on Amboy's first mortgage lien, along with the second mortgage of BRT Realty Trust ("BRT"), there is a deficit of over $5,500,000.00. This is without including any other liens on the Property, and also does not include costs of sale. As a result, it is without question that Dwek Income does not have equity in the Property for the estate under Section 362(d)(2)(A).

Second, the Property is not necessary to an effective reorganization under Section 362(d)(2)(B). The Property is a single condominium building, which does not have any equity for the estate.

Amboy is also entitled to relief from the stay for cause under Section 362(d)(1) of the Code. In addition to the lack of equity in the Property, Amboy is not receiving adequate protection payments from Dwek Income. Amboy has not received any payments under the Note, from rentals or otherwise, since January 29, 2007.

1

## STATEMENT OF FACTS

Amboy relies on the Certification of Peter W. Davis ("Davis Cert."), Senior Vice President of Amboy, submitted simultaneously herewith with respect to the facts of the within matter as they relate to the within Motion, which, along with the Exhibits thereto, are incorporated by reference herein.

2

## LEGAL ARGUMENT

### POINT I

### AMBOY IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d)(2) OF THE BANKRUPTCY CODE AS DWEK INCOME HAS NO EQUITY IN THE SUBJECT REAL PROPERTY FOR THE ESTATE AND THE PROPERTY IS NOT NECESSARY TO AN EFFECTIVE REORGANIZATION

Section 362(d) of the Bankruptcy Code provides the circumstances in which a creditor is entitled to relief from the automatic stay. Sections 362(d)(2) provides:

> (d)    On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (2)    with respect to a stay of an act against property under subsection (a) of this section, if –
>
> (A)    the debtor does not have an equity in such property; and
>
> (B)    such property is not necessary to an effective reorganization [emphasis added]

Amboy is entitled to relief from the automatic stay pursuant to Section 362(d)(2) as there is no equity in the Property and the Property is not necessary to an effective reorganization. As set forth in Section 362(g), Amboy has the burden of proof on the issue of Dwek Income's equity in the Mortgaged Premises, while Dwek Income has the burden of proof on all other issues.

With regard to the first step of the Section 362(d)(2) test, there is no equity in the Property. The classic test for determining equity under section 362(d)(2) focuses on a comparison between the total liens against the property and the property's current value. In re Indian Palms Associates, Ltd., 61 F.3d 197, 206-207 (3rd Cir.1995) citing Stewart v. Gurley, 745

3

F.2d 1194, 1195 (9th Cir. 1984), In re Hanley, 102 B.R. 36, 37 (W.D.Pa. 1989), In re Colonial
Ctr., Inc., 156 B.R. 452, 460 (Bankr.E.D.Pa. 1993), La Jolla Mortg. Fund v. Rancho El Cajon
Assocs., 18 B.R. 283, 290 (Bankr.S.D.Calif. 1982), State Employee Retirement Fund v. Gardner
(In re Gardner), 14 B.R. 455, 456 (Bankr.E.D.Pa. 1981), North East Fed. Savs. & Loan Assoc. v.
Mikole Devels., Inc. (In re Mikole Devels., Inc.), 14 B.R. 524, 524 (Bankr.E.D.Pa. 1981), All
encumbrances are totaled to determine equity whether or not all lienholders have requested relief
from the stay. Indian Palms at 207 quoting Nazareth Nat'l Bank & Trust Co. v. Trina-Dee, Inc.
(In re Trina-Dee, Inc.), 26 B.R. 152, 154 (Bankr.E.D.Pa. 1983). All liens are considered in
calculating equity under Section 362(d)(2) because the equity analysis in this Section focuses on
"the value, above all secured claims against the property, that can be realized from the sale of the
property for the benefit of all unsecured creditors." See Indian Palms at 207 quoting Pistole v.
Mellor (In re Mellor), 734 F.2d 1396, 1400 (9th Cir. 1984).

A determination of an "equity cushion" under Section 362(d)(1) differs from that for
"equity" under Section 362(d)(2) in that the former is concerned with the value of the property
above the amount owed to the creditor with a secured claim and the latter is concerned with the
value above all secured claims against the property. See Indian Palms at 207-208 citing Colonial
Center at 459-60, In re South County Realty, Inc. II, 69 B.R. 611, 614 (Bankr.M.D.Fla. 1987)
and In re Dunes Casino Hotel, 69 B.R. 784, 793-94 (Bankr.D.N.J. 1986). The language of
Section 362(d)(2)(A) simply refers to the debtor's "equity," which has been defined as 'the
amount or value of a property above the total liens or charges;' it does not refer to the debtor's
equity as against the only plaintiff-lienholder seeking to lift the stay or persons holding liens
senior to that of the plaintiff-lienholder. See Indian Palms at 208.

4

A definition of equity that requires consideration of all secured liens comports with the purpose of section 362(d)(2) analysis and strikes the proper balance among the secured creditors', the unsecured creditors', and the debtor's interests. See Id. The basic purpose behind Chapter 11 of the Bankruptcy Code is to offer protection to the insolvent debtor who seeks rehabilitation through a plan of reorganization. See Id. To the extent that property is of no benefit to the debtor, because the debtor retains no equity in it and the property is unnecessary to an effective reorganization, only the junior lienholders will benefit by avoiding foreclosure, at the expense of senior lienholders. See Id. citing Stewart at 1196 ("Unless the debtor can demonstrate that the property is necessary to an effective reorganization, the property is of no value to him. Refusing to grant relief from the automatic stay under those circumstances would only promote the junior lienholders' interests over those of the senior lienholder.").

Furthermore, the language of Section 362(d)(2) is mandatory; when both factors necessary for relief under Section 362(d)(2) are met "the court shall grant relief." See Id. citing 11 U.S.C. § 362(d)(2). Excluding the claims of even objecting junior lienholders from the equity calculation when the subsection (d)(2) factors are otherwise met would contravene the plain language of that provision. See Id.

In the present case, as elucidated in Indian Palms (supra), the value of the Property is well below the total liens or charges against it. As a result, Dwek Income does not have equity in the Property, thus satisfying the first element of Section 362(d)(2).

Through February 19, 2008, Amboy will be owed a total of $1,843,671.57 from Dwek Income with respect to the subject Note. See Davis Cert., ¶ 20. In addition, there is a second

5

mortgage on the Property held by BRT. As of June 11, 2007, the amount due to BRT totaled not less than $6,044,928.83. See Id., ¶ 21-22.

The Appraisal values the Property at $2,300,000.00. See Id., ¶ 23. Therefore, without even considering the costs of sale, and accounting only for the amounts due to Amboy and BRT, there is deficit in the Property in the amount of $5,588,600.40. See Id. ¶ 24. Given the foregoing, it is without question that Dwek Income does not have equity in the Property for the estate under Section 362(d)(2)(A).

Moreover, the Property is not necessary to an effective reorganization under Section 362(d)(2)(B). To this end, inasmuch as there is no equity in the Property, Dwek Income has the burden to prove that the Property is necessary to an effective reorganization to maintain the automatic stay. See In re Swedeland Dev. Group, Inc., 16 F.3d 552, 567 (3rd Cir. 1994) and see United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375 (1988). In so proving, the Debtor must do more than make a mere assertion to this effect or show that "there is conceivably to be an effective reorganization." See Id. citing Timbers at 375. Rather, it has to show "that the property is essential for an effective reorganization that is in prospect." See Id. citing Timbers at 376.

In the present case, the Property is not necessary to an effective reorganization. The Property is a single condominium building, consisting of eight units. There is no equity in the Property for the estate. See Davis Cert., ¶ 24. As such, it cannot be necessary for an effective reorganization under Section 362(d)(2)(B). Because Dwek Income does not have any equity in the Property, and because the Property is not necessary to an effective reorganization, Amboy is

6

entitled to relief from the automatic stay with regard to the Property under Section 362(d)(2) of the Bankruptcy Code.

**POINT II**

**AMBOY IS ENTITLED TO RELIEF
FROM THE AUTOMATIC STAY
PURSUANT TO SECTION 362(d)(1) OF THE
BANKRUPTCY CODE FOR CAUSE, INCLUDING THE LACK
OF ADEQUATE PROTECTION**

Amboy is also entitled to relief from the automatic stay with regard to the Property under

Section 362(d)(1) of the Bankruptcy Code for cause.  Section 362(d)(1) of the Bankruptcy Code

provides:

> (d)    On request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of this section, such
> as by terminating, annulling, modifying, or conditioning such stay--
>
> (1)    for cause, including the lack of adequate protection of an interest in
> property of such party in interest;

Section 362(d)(1) of the Code requires relief from the automatic stay for cause.  What

constitutes "cause" under Section 362(d)(1) giving way to relief is not specifically defined by the

Code and is determined on a case by case basis.  In re Rosen, 208 B.R. 345, 355 (Bankr.D.N.J.

1997) citing Claughton v. Mixson, 33 F.3d 4, 5 (4th Cir. 1994), Matter of Henry, 173 B.R. 878,

882 (Bankr.D.N.J. 1993) and In re Borbidge, 81 B.R. 332, 335 (Bankr.E.D.Pa. 1988) and see In

re LDN Corp., 191 B.R. 320, 323 (Bankr.E.D.Va. 1996) citing Robbins v. Robbins (In re

Robbins), 964 F.2d 342, 345 (4th Cir. 1992) and see In re Wilson, 116 F.3d 87, 90 (3rd Cir

1997).

As detailed above, there is no equity in the Property.  See Davis Cert., ¶ 24.

Additionally, Amboy is not receiving adequate protection payments from Dwek Income.  No

payments have been received with respect to the Note on the Property since January 29, 2007.

See Id., ¶ 27.

8

The lack of equity and the failure to make adequate protection payments to Amboy demonstrate that Amboy is not adequately protected.  See Id., ¶ 27.  As a result, this case falls squarely within the definition of "cause" under the Bankruptcy Code.  Therefore, Amboy is entitled to relief from the automatic stay for cause under Section 362(d)(1) of the Code to proceed with its State law rights and remedies.  See Id., ¶ 28.

## CONCLUSION

For the foregoing reasons, Amboy has demonstrated that it is entitled to relief from the automatic stay pursuant to Sections 362(d)(1) and (d)(2) of the Bankruptcy Code with respect to the Property.

Respectfully submitted,
HILL WALLACK LLP

By:    /s/ Elizabeth K. Holdren
        Elizabeth K. Holdren

Dated: January 24, 2008

9

# EXHIBIT "C"



**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
VICINAGE OF TRENTON**

| | |
|---|---|
| **HILL WALLACK LLP**<br>202 Carnegie Center<br>Princeton, New Jersey 08543-5226<br>EKH5457<br>Attorneys for Amboy National Bank | Chapter 11 |
| In Re:<br><br>SOLOMON DWEK, et. als.,<br><br>     Debtors. | Case No.:   07-11757(KCF)<br>Hearing Date: <u>February 19, 2008 at 10:00 a.m.</u><br>Judge:     <u>Kathryn C. Ferguson, U.S.B.J.</u> |

**ORDER MODIFYING AUTOMATIC STAY WITH RESPECT TO CERTAIN
REAL PROPERTY OWNED BY DWEK INCOME, LLC**

    The relief set forth on the following pages, numbered two (2) is hereby **ORDERED**.

**DATED: 2/25/2008**

                             Honorable Kathryn C. Ferguson
                             United States Bankruptcy Judge

(Page 2)

Debtors: Solomon Dwek et als.

Case No: 07-11757 (KCF)

Caption of Order: ORDER VACATING AUTOMATIC STAY

Upon the motion of Hill Wallack LLP, attorneys for Amboy National Bank ("Amboy"), under Bankruptcy Code section 362(d) for relief from the automatic stay as to certain property as hereinafter set forth, and for cause shown, it is

ORDERED that the automatic stay is modified to permit the movant to institute or resume and prosecute to conclusion one or more actions in the court(s) of appropriate jurisdiction to foreclose the mortgage(s) held by the movant, up through and including foreclosure judgment only, to pursue the movant's rights in the following:

Real Property more fully described as:

Land and Premises commonly known as 1001 Norwood Avenue, Units 1-8, Long Branch, New Jersey

Land and Premises known as Lots 25.01-25.08 and Block 8, as shown on the Tax Map of the City of Long Branch, County of Monmouth, State of New Jersey

Personal property more fully described as:

It is further ORDERED that the movant may join the Debtors, Solomon Dwek and Dwek Income, LLC(the "Debtors") and the Chapter11 Trustee, as defendants in its action(s) irrespective of any conversion to any other chapter of the Bankruptcy Code.

The movant shall serve this order via ordinary mail on the Debtors, the Debtors' attorney, the Trustee and any other party who entered an appearance on the motion unless said party was served by the court via electronic filing.

*Approved by Judge Kathryn C. Ferguson  February 25, 2008*

EXHIBIT "D"

HILL WALLACK LLP
202 Carnegie Center
Princeton, New Jersey 08543
(609) 924-0808
Attorneys for Plaintiff,
Amboy Bank f/k/a Amboy National Bank

RECEIVED/FILED
SUPERIOR COURT

2008 MAR 14 P 12:41

| | |
|---|---|
| AMBOY BANK F/K/A AMBOY NATIONAL BANK, <br><br> Plaintiff, <br><br> vs. <br><br> DWEK INCOME, LLC, a New Jersey limited liability company, BRT REALTY TRUST, a Massachusetts business trust, WASHINGTON MUTUAL BANK, ASBURY WINDOW FACTORY and CHARLES A STANZIALE, JR., TRUSTEE of DWEK INCOME, LLC, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION MONMOUTH COUNTY <br><br> DOCKET NO. F-9244-08 <br><br> <u>Civil</u> <u>Action</u> <br><br> AMENDED COMPLAINT FOR FORECLOSURE |

The Plaintiff, Amboy Bank f/k/a Amboy National Bank ("Amboy"), with a place of business located at 3590 U.S. Highway 9 South, Old Bridge, Middlesex County, New Jersey, by way of Amended Complaint For Foreclosure says:

<u>FIRST COUNT</u>

1.    On May 20, 2004, Dwek Properties, LLC ("Dwek Properties") executed and delivered to Amboy a Note in the original principal amount of One Million Six Hundred Fifty Thousand and 00/100 Dollars ($1,650,000.00) (the "Note").

2.    Payments of interest only were due and payable under the Note on the 20th day of each month commencing on June 20, 2004 and monthly thereafter until May 20, 2006 (the "Conversion Date").

- 1 -

3.    Subject to there being no event of default thereunder, interest accrued under the Note at the rate of the JP Mortgage Chase Prime Rate in effect at the time plus one percent (1%) per annum from the date of the execution of the Note for the first two (2) years of the term of the Note.

4.    After the first two (2) years after the Note is executed and subject to there being no event of default thereunder, interest accrues under the Note at 250 basis points above the index rounded upward to the nearest one-eighth (1/8) of one percent (1%).  The index is the Federal Home Loan Bank of New York Five (5) Year Amortizing Advances Rates as published three (3) days prior to the Conversion Date.

5.    Commencing on the Conversion Date, payments of principal and interest were due and payable on the 20th day of each month as determined pursuant to the terms of the Note, through and including May 20, 2011, when the unpaid balance of principal and interest, together with any other amounts due and owing under the terms of the Note, would become due and payable.

6.    In order to secure its obligations under the Note, on May 20, 2004, Dwek Properties executed and delivered a Mortgage And Security Agreement to Amboy on the real property known as 1001 Norwood Avenue, Units 1, 2, 3, 4, 5, 6, 7 and 8, Deal Manor, a Condominium also known as Lots 25.01, 25.02, 25.03, 25.04, 25.05, 25.06, 25.07 and 25.08, Block 8 on the Tax Map of the City of Long Branch, Monmouth County, New Jersey (the "Property"), which Mortgage was recorded on June 4, 2004 in Mortgage Book OR-8368, Page 7929&c in the Office of the Monmouth County Clerk (the "Mortgage").  A metes and bounds description of the Property is attached hereto as Schedule A.

- 2 -

7.     The Mortgage is a first purchase money mortgage.

8.     In order to further ensure payment under the Note, on May 20, 2004, Dwek Properties executed and delivered an Absolute Assignment of Leases and Rents for the Property (the "ALR"), which ALR was recorded on June 4, 2004 in Mortgage Book OR-8368, Page 7941&c in the Office of the Monmouth County Clerk.

9.     On February 15, 2006, Dwek Properties executed and delivered a Deed to the Property to Dwek Income, LLC ("Dwek Income") which Deed was recorded on March 23, 2006 in Deed Book OR-8550, Page 9443&c in the Office of the Monmouth County Clerk. Since the recording the Deed to Dwek Income, it has remained the record owner of the Property to date.

10.     On February 15, 2006, Dwek Properties, Amboy and Dwek Income executed and entered into an Assumption of Mortgage Liability Agreement (the "Assumption Agreement") wherein Dwek Income assumed the liability of Dwek Properties under the Note and Mortgage.

11.     The Assumption Agreement provides that the Property shall remain in all respects subject to the Mortgage. It further provides that nothing therein shall effect or be construed to effect the Note, Mortgage, or other loan documents.

12.     Pursuant to an Order entered by Judge Alexander D. Lehrer, J.S.C. in the Superior Court of New Jersey case, <u>PNC Bank v. Solomon Dwek, et als.</u>, Docket No. MON-C-133-06 (the "State Court Case"), dated January 31, 2007, the period during which interest only payments under the Note were to be made was extended to March 31, 2007 (the "Maturity Date"), on which date all remaining amounts owed under the Note became due and payable to Amboy.

13.     The Note and Mortgage provide without limitation that it is an event of default thereunder if: there is a default in any payment due thereunder; if the borrower fails to pay in full upon maturity; or if the borrower fails to comply with any provision contained in the Note or Mortgage.

14.     The Note provides that, in the event of a default, the unpaid balance of the principal sum of the Note and interest thereon shall immediately become due and payable, at the election of Amboy.

15.     The Note and Mortgage provide in relevant part that in the event of default, Amboy shall have all the rights and remedies set forth in the loan documents or available at law including but not limited to the right to take possession of the Property, including the collection of rents and profits, to have a court appoint a receiver, to commence a foreclosure action resulting in the sale of the Property to reduce the obligations under the Note and Mortgage, to sue for any sums owed to Amboy by the borrower, and to proceed against all Guarantors.

16.     The Note provides that in the event it is not paid in full on the Maturity Date (as defined in the Note"), and all payments prior thereto have been made, then upon the Maturity Date, it shall convert and become a demand note with interest at the rate of two percent (2.0%) per annum in excess of the annual rate in effect at the time of maturity payable on the 20th day of each month until demand for payment has been made.

17.     The Note provides that if there is a default thereunder which continues for 30 days, the interest rate shall increase to an annual amount equal to two percent (2.0%) in excess of the rate thereunder.

18.    The Note provides that Dwek Properties and through the Assumption Agreement Dwek Income shall pay a late charge of five percent (5%) for each dollar of each payment fifteen (15) days in arrears.

19.    The Note provides that Dwek Properties and through the Assumption Agreement Dwek Income is responsible for Amboy's costs of collection and litigation together with reasonable attorneys fees.

20.    Dwek Income defaulted under the terms of the Note and Mortgage by, without limitation, failing to pay the amounts due thereunder in full upon maturity on March 31, 2007.

21.    As a result of Dwek Income's default under the Note and Mortgage, Amboy has elected to proceed to Sheriff's Sale on the Property through a foreclosure proceeding and to acquire possession of the Property.

22.    The following instruments appear of record which effect or may effect the Property, all of which instruments are subordinate to the lien of the Mortgage:

a.    BRT Realty Trust, a Massachusetts business trust ("BRT") is made a party defendant herein as a result of a Mortgage, Security Agreement And Assignment Of Leases and And Rents (the "BRT Mortgage") granted to it by Dwek Properties on the Property on December 22, 2005 in the original principal amount of $7,000,000.00, which BRT Mortgage was recorded on January 3, 2006 in the Office of the Monmouth County Clerk in Mortgage Book OR-8530, Page 708&c. The BRT Mortgage encumbers other properties in addition to the Property.

b.    BRT is also made a party defendant herein as a result of an Assignment Of Leases And Rents (the "BRT ALR") granted to it by Dwek Properties on the Property on December 22,

- 5 -

2005, which BRT ALR was recorded on January 3, 2006 in the Office of the Monmouth County Clerk in Mortgage Book OR-8530, Page 787&c.

    c.    BRT is also made a party defendant herein as a result of a Notice of Lis Pendens dated August 10, 2006 with respect to litigation entitled <u>BRT Realty Trust v. Jemar Enterprises, L.L.C., et. als.,</u> Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. F-8884-06 (the "BRT Foreclosure"), which seeks to foreclose the BRT Mortgage on the Property. The Notice of Lis Pendens was recorded on August 15, 2006 in the Office of the Monmouth County Clerk under Instrument Number 2006122041.

    d.    BRT is also made a party defendant herein as a result of a Cross-Collateralization Agreement between BRT, Dwek Properties and other unrelated parties to this action, in which in part, the Property was used to secure obligations owing by the signatories to the Cross-Collateralization Agreement to BRT (the "BRT Agreement"). The BRT Agreement was recorded on February 23, 2006 in the Office of the Monmouth County Clerk in Mortgage Book OR-8544, Page 773&c.

    e.    Washington Mutual Bank ("Wamu") is made a party defendant herein as a result of a Mortgage, Security Agreement, Assignment Of Leases And Rents And Fixture Filing in the original principal amount of $1,800,000.00 (the "Wamu Mortgage") on the Property given to it by 1001 Norwood, LLC, which is dated April 7, 2006 and which was recorded on May 11, 2006 in the Office of the Monmouth County Clerk in Mortgage Book OR-8562, Page 4037&c. Since February 15, 2006, Dwek Income, not 1001 Norwood, LLC has been the record title owner of the Property.

f.    Asbury Window Factory ("AWF") is made a party defendant herein as a result of a Claim of Lien/Construction Lien dated June 15, 2006 against Dwek Income in the principal amount of $1,912.00 which was recorded against the Property on June 16, 2006 in the Office of the Monmouth County Clerk in Mortgage Book OR-8571, Page 9224&c.

g.    Charles A. Stanziale, Jr., Trustee is made a party defendant herein as a result of the filing by Dwek Income for bankruptcy under Chapter 11 of the Bankruptcy Code on October 12, 2007 under Case No. 07-16068(KCF) in the United States Bankruptcy Court, District Of New Jersey and his appointment as the Chapter 11 Trustee in Dwek Income's bankruptcy case by Order dated May 22, 2007. Dwek Income's bankruptcy case was procedurally consolidated with the Chapter 11 bankruptcy case of <u>Solomon Dwek</u>, under Case No. 07-11757(KCF) in the United States Bankruptcy Court, District Of New Jersey.   On February 25, 2008, Amboy obtained an Order modifying the automatic stay to continue with this foreclosure action through the entry of a foreclosure judgment and to name Charles A. Stanziale, Jr., Trustee of Dwek Income as a party herein.

23.    Any interest in or lien on the Property held by Dwek Income, its grantees, assigns or subsequent lien holders or encumbrancers, if any, is subject and subordinate to the lien of the Mortgage.

24.    The Property is commercial and the Mortgage is not a "residential mortgage" as defined under the <u>Fair Foreclosure Act</u>, and as such, is not subject to its requirements regarding Notices of Intention.

WHEREFORE, Amboy demands judgment:

a.     Fixing the amount due on the Mortgage;

b.     Barring and foreclosing the defendants of all equity of redemption in and to the Property;

c.     Directing that Amboy be paid the amount due as provided in the Mortgage, together with interest and costs;

d.     Adjudging that the Property be sold according to law to satisfy the amount due to Amboy on the Mortgage; and

e.     Appointing a receiver for the Property.

## SECOND COUNT

1.     Amboy repeats and realleges the allegations contained in the First Count as if the same were set forth at length herein.

2.     By the terms of the Mortgage, Amboy, its assignee or the purchaser at Sheriff's Sale herein is entitled to possession of the Property.

3.     Dwek Income and Charles A. Stanziale, Jr., Trustee of Dwek Income and those holding under them, have since April 1, 2007 deprived Amboy of possession of the Property.

WHEREFORE, Amboy demands judgment against defendants:

a.     Possession of the Property for Amboy and/or any purchaser at Sheriff's Sale;

b.     Damages for mesne profits; and

c.    Costs.

HILL WALLACK LLP
Attorneys for Plaintiff,
Amboy Bank f/k/a Amboy National Bank

By:    _____
Michael Kahme

Dated: March 13, 2008

## CERTIFICATION

I hereby certify, pursuant to R.4:5-1, that the within lawsuit is not the subject of any pending action or arbitration proceeding, nor is there any action or arbitration proceeding contemplated except for the bankruptcy case of Dwek Income, LLC, 07-16068(KCF) procedurally consolidated with the bankruptcy case of Solomon Dwek, Case No. 07-11757(KCF), in which on February 25, 2008 Amboy obtained an Order granting it relief from the automatic stay to foreclose on the Property through the entry of the foreclosure judgment.

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the statements made by me are willfully false, I am subject to punishment.

Michael Kahme

Dated: March 13, 2008

- 10 -

RULE 4:64-1(a) CERTIFICATION

The undersigned hereby certifies that Amboy has received and reviewed a title search of the public record for the purpose of identifying any lienholder or other persons and entities with an interest in the property that is subject to this foreclosure.

The undersigned hereby certifies that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
Michael Kahme

Dated: March 13, 2008

- 11 -

## SCHEDULE A
## DESCRIPTION

ALL that certain tract, lot and parcel of land lying and being in the City of Long Branch, County of Monmouth and State of New Jersey, being more particularly described as follows:

BEGINNING at a point at the Northeasterly intersection of North Lincoln Avenue (56' ROW) and Norwood Avenue (50' ROW) and from said point of beginning running; thence

(1) Along the Northerly line of said North Lincoln Avenue, South 72 degrees 40 minutes East, a distance of 106.08 feet to a point; thence

(2) North 17 degrees 20 minutes East, a distance of 169.95 feet to a point; thence

(3) North 72 degrees 40 minutes West, a distance of 163.87 feet to a point in the Easterly line of Norwood Avenue; thence

(4) Along same, South 01 degrees 27 minutes East, a distance of 179.51 feet to a point, being the point and place of BEGINNING.

THE above being further known and described as Units 1, 2, 3, 4, 5, 6, 7 and 8 within a condominium property known as "Deal Manor, a Condominium", as defined under the provisions of the Condominium Act of the State of New Jersey (N.J.S.A. 46:8B-1 et seq. as amended) and established by the Master Deed, dated -/-/1987 and recorded December 23, 1987 in the Monmouth County Clerk's Office as Deed Book 4816, Page 896, and as may hereinafter be lawfully amended. Together with the undivided percentage interest in and to the limited common elements and common elements, as more particularly set forth in the said Master Deed, and subject to the terms of the By-Laws of the Condominium Association also contained therein.

THE above description was made in accordance with a survey prepared by, Thomas P. Santry, P.A., dated October 23, 2003.

Note For Information Only:
The land referred to in this Commitment is commonly known as Lot(s) 25.01-25.08, Block 8 on the Tax Map, City of Long Branch, in the County of Monmouth.

CHICAGO TITLE INSURANCE COMPANY